1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

W HOLDING CO., INC., et al.,

    Plaintiffs,

      v.

CHARTIS INSURANCE COMPANY-
PUERTO RICO, et al.,

    Defendants.

Civil No. 11-2271 (GAG)

**OPINION AND ORDER**

      Presently before the court is a motion for remand filed by the former directors and officers of a failed bank under receivership of the Federal Deposit Insurance Corporation ("FDIC") (Docket No. 16). The FDIC opposed the motion (Docket No. 23). A reply was subsequently filed (Docket No. 40) and a surreply was tendered (Docket No. 43-1). After reviewing these submissions and the pertinent law, the court **DENIES** the motion for remand at Docket No. 16.

    **I.**     **Factual and Procedural Background**

      On April 30, 2010, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Westernbank Puerto Rico ("Westernbank") and appointed the FDIC as receiver of the failed bank. (See Docket No. 1-5.) W Holding Company, Inc. ("W Holding") is the bank holding company of the now defunct Westernbank. (See Docket No. 26-1 at 2 ¶ 3.) Frank Stipes Garcia, Juan Frontera Garcia, Hector Del Rio Torres, William Vidal Carvajal, Cesar Ruiz Rodriguez and Pedro Dominguez Zayas ("Individual Plaintiffs") are former members of the Board of Directors and/or officers of Westernbank. (See Docket No. 26-1 at 2 ¶ 4.)

      The present case was filed in the Puerto Rico Court of First Instance on October 6, 2011 ("State Court Action") by W Holding and Individual Plaintiffs (collectively "Plaintiffs") against Chartis Insurance Company of Puerto Rico ("Chartis"). (See Docket No. 26-1.) Plaintiffs sought declaratory judgment regarding their rights to coverage under the director and officer insurance policies issued by Chartis "for claims and/or complaints that the [FDIC] is pursuing and intends to

**Civil No. 11-2271 (GAG)**                    2

1   pursue against the plaintiffs."[1]  (See id. at 2-3 ¶ 6.)

2       On December 30, 2011, the FDIC filed a complaint in intervention in the State Court Action

3   (Docket No. 1-4) pursuant to Puerto Rico's Direct Action Statute, P.R. Laws Ann. tit. 26, §§ 2001,

4   2003, and removed it to federal court pursuant to 12 U.S.C. § 1819 (Docket No. 1).  The FDIC's

5   complaint in intervention included damages claims for Individual Plaintiffs' gross negligence in the

6   discharge of their duties as directors and officers of Westernbank.  (See Docket No. 1-4 at 2.)

7       Individual Plaintiffs filed a motion for remand (Docket No. 16) challenging the FDIC's

8   removal of the State Court Action arguing: (1) the FDIC was never a "party" for purposes of removal

9   under 12 U.S.C. § 1819; and (2) this court lacks jurisdiction because the FDIC has no right to

10  intervene in the insurance coverage dispute.  The FDIC opposed (Docket No. 23).  A reply and

11  surreply were subsequently filed (Docket Nos. 40 & 43-1).

12  **II.    Applicable Law and Analysis**

13      **A.    The FDIC's "Party" Status**

14      Any civil action in which the FDIC is a party is "deemed to arise under the laws of the United

15  States."  12 U.S.C. § 1819(b)(2)(A).  The FDIC has a statutory right to remove any action, suit or

16  proceeding to which it is a party within ninety (90) days of becoming a party, pursuant to 12 U.S.C.

17  §1819(b)(2)(B).  Accordingly, the FDIC must have been a party to the State Court Action in order

18  to properly remove this action to federal court.

19      The case at bar presents a peculiar situation because the FDIC was neither a plaintiff nor a

20  defendant in the State Court Action, and was never substituted as such, prior to removal.  Rather,

21  the FDIC moved to intervene pursuant to Puerto Rico's Direct Action Statute, and removed the State

22  Court Action to federal court before its petition for intervention was ruled upon.  The initial question

23  before the court is whether the FDIC became a "party" to the action with the filing of its complaint

24  in intervention.  The court finds in the affirmative.

25  _____

26

27      [1] Both Individual Plaintiffs and the FDIC assert Chartis issued policies of director and officer liability insurance covering Westernbank's former officers and directors, including Individual

28  Plaintiffs, for their liabilities to Westernbank and the FDIC as its receiver.  (See Docket Nos. 1-4 at 1-2; 26-1 at 2-3 ¶ 6.)

1    According to Puerto Rico Rule of Civil Procedure 21.1 ("PR Rule 21.1"), P.R. Laws Ann.

2    tit. 32, app. V, Rule 21.1, upon timely application, a person has the right to intervene in an action:

3    (a) when the law or the Puerto Rico Rules of Civil Procedure confer an unconditional right to

4    intervene; or (b) when the applicant claims a right or interest in the property or issue that is the

5    object of the action, and that right or interest may, as a practical matter, be impaired by the final

6    disposition of the action.  P.R. Laws Ann. tit. 32, app. V, Rule 21.1 (translations ours)[2].  Because

7    no argument was made that the FDIC holds an unconditional right to intervene, the court will focus

8    on Section (b) of PR Rule 21.1 ("PR Rule 21.1(b)").

9    PR Rule 21.1(b) corresponds in part to Federal Rule of Civil Procedure 24(a)(2) ("Federal

10   Rule 24(a)(2)").  Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 769 (1981), 11 P.R. Offic.

11   Trans. 970 (1981) (P.R. Nov. 17, 1981); see Ready Mix Concrete v. R. Arellano & Co., 110 D.P.R.

12   869 (1981), 10 P.R. Offic. Trans. 1136 (1981) (P.R. Apr. 21, 1981) (noting PR Rule 21 derives from

13   Federal Rule 24).   In interpreting PR Rule 21.1, the Puerto Rico Supreme Court has looked to

14   federal caselaw and treatises.  See Chase Manhattan Bank, 111 D.P.R. at 770; Ready Mix Concrete,

15   110 D.P.R. at 873.   Therefore, the court applies federal caselaw in its analysis of PR Rule 21.1(b).

16   See Carroll v. Xerox Corp., 294 F.3d 231, 237 n.3 (1st Cir. 2002) (applying federal analytical model

17   where statutory definitions under federal and state law were virtually identical and state has looked

18   to federal case law to assist in interpreting a statute).

19                          **1.     Timeliness of Intervention**

20   Before anything else, the court will address the timeliness of the intervention.  See R&G

21

---

22        [2] The Puerto Rico Rules of Civil Procedure were amended in 2009.  See P.R. Laws Ann. tit.

23   32, app. V.  As of the day of this opinion, there is no English translation for the 2009 Rules. The
     court initially sought to cite the 1979 Rules, as the only change to the language of PR Rule 21.1 is

24   the word "*pudiere*" for the word "*pueda*," which is ultimately a variation of the verb tense.
     However, upon further research, the undersigned, being fully bilingual, notes there is a discrepancy

25   between the 1979 version of PR Rule 21.1 and its English translation.  According to PR Rule 21.1,
     in both the 1979 and the 2009 versions, "*cualquier persona tendrá derecho a intervenir en un*

26   *pleito,*" which translates to "any person *shall have the right* to intervene in an action."  The 1979
     English translation reads "anyone *shall be permitted* to intervene."  P.R. Laws Ann. tit. 32, app. III,

27   Rule 21.1.

28

Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) ("[W]hen intervention is at issue, timeliness is the prevenient question." (citations omitted) (internal quotation marks omitted)).  Individual Plaintiffs contend the FDIC's application to intervene was untimely, in that it unnecessarily delays judicial proceedings, because it should have been filed immediately after Individual Plaintiffs filed the State Court Action.  (See Docket No. 16 at 5-6.)

"The timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances." R&G Mortg. Corp., 584 F.3d at 7 (citation omitted).  The court should look at the status of the litigation at the time intervention is requested.  Id.  "As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." Id. The First Circuit has outlined four factors to inform the timeliness inquiry:

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

Id.  The court must appraise each of these factors "in light of the posture of the case at the time the motion is made."  Id.  (citing Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008)).

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." R&G Mortg. Corp., 584 F.3d at 8 (citations omitted).  There is no fixed time frame, in terms of days or months, to determine whether a motion is promptly filed.  Id.  "The passage of time is measured in relative, not absolute terms . . . . [W]hat may constitute reasonably prompt action in one situation may be unreasonably dilatory in another." Id.  "[T]he timeliness requirement is often applied less strictly with respect to intervention as of right."  Id.

After considering the arguments, the court finds Individual Plaintiffs' argument fails.  In the present case, notwithstanding the fact that the State Court Action was filed on October 6, 2011, the case was still in its initial stages at the time the FDIC moved to intervene on December 30, 2011. Chartis' answer to the complaint was not due until January 16, 2012.  (See Docket No. 16 at 5.)  The FDIC was not informed of the State Court Action until October 26, 2011, and was not provided with the complaint and exhibits until November 23, 2011.  (See Docket Nos. 23-1 and 40 at 7.)

Furthermore, in early December, Individual Plaintiffs and the FDIC briefly engaged in discussions that delayed the filing of the intervention.[3]  (See Docket Nos. 16 at 5 n.4; 23 at 7.)  Once the FDIC was made aware of the State Court Action, it acted diligently to protect its interests.  Thus, the court finds the FDIC's complaint in intervention was timely filed.

### 2.    The FDIC's Interest

Having found the intervention was timely, the court looks to the FDIC's purported interest in the action.  In order to intervene as of right, the FDIC must have asserted a right or interest in the property or matter that is the object of the litigation, and show that said interest or right may actually be affected by the final disposition of the case.

The court's analysis does not require the court to examine the nature of the interest in question.  See Dagget v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104 (1st Cir. 1999); Chase Manhattan Bank, 111 D.P.R. 767.  The test to be used is of a more practical nature.  Dagget, 172 F.3d at 110 (citing Atlantis Dev. Corp. v. United States, 379 F.2d 818, 824-25 (5th Cir. 1967));  Chase Manhattan Bank, 111 D.P.R. at 770 (citation omitted).  The First Circuit has emphasized that "there is no precise and authoritative definition of the interest required to sustain a right to intervene," yet "the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants."  Conservation Law Found. of New England v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992) (quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989)) (internal quotation marks omitted).

The FDIC moved to intervene, pursuant to Puerto Rico's Direct Action Statute, claiming a substantive right and a cause of action against Chartis for recovery of approximately $176 million in damages from the proceeds of the insurance policies.  (See Docket No. 1-4 at 2.)  Under Puerto Rico's Direct Action Statute,

[t]he insurer issuing a policy insuring any person against loss or damage through

---

[3]  The FDIC claims that: (1) after it informed Individual Plaintiffs in early December 2011 of its intention to intervene, the latter's attorneys requested the FDIC delay its intervention to allow for mediation with Chartis; (2) Individual Plaintiffs informed it of Chartis' refusal on December 30, 2011; and (3) it intervened and removed on that same day.  (See Docket No. 23 at 7.)

> legal liability for bodily injury, death, or damage to property of a third person, shall become liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence, nor shall it depend upon said judgment.

P.R. Laws Ann. tit. 26, § 2001. An insurer's direct liability is not contingent on payment by the insured or on the issuance of final judgment. Trigo v. The Travelers Ins. Co., 91 D.P.R. 868 (1965), 91 P.R.R. 843, 849 (1965). Furthermore, a person sustaining damages has the option of a direct action against the insurer in accordance with the terms and limitations of the insured's policy. P.R. Laws Ann. tit. 26, § 2003. In other words, Puerto Rico law creates a substantive claim against an insurer that is separate and distinct from any claim a plaintiff may have against an insured. San Miguel v. Nesco Redondo, S.E., 394 F. Supp. 2d 416, 421 (D.P.R. 2005) (citing De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 122 (1st Cir. 1991)). This direct action may be brought solely against the insurer or against the insurer and the insured jointly. P.R. Laws Ann. tit. 26, § 2003.

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989), establishes that the FDIC, as conservator or receiver, succeeds to "all the rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(ii). Thus, the FDIC succeeded to all the rights and assets of Westernbank, including Westernbank's rights and claims against Individual Plaintiffs as former directors and officers, and Westernbank's rights, interests and claims in and to the policies against Chartis.

The FDIC has a right to sue Chartis directly for claims against Individual Plaintiffs covered by the director and officer insurance policies pursuant to Puerto Rico's Direct Action Statute. See Garcia v. N. Assurance Co., 92 P.R.R. 236, 246 (1965) (holding injured party has cause of action and right of action against insurer where he has cause of action and right of action against insured). Necessarily, in order for the FDIC to properly preserve its right to sue under the direct action statute, it must demonstrate the policies cover Individual Plaintiffs. If the policies issued by Chartis do not cover Individual Plaintiffs, the FDIC may not sue Chartis under Puerto Rico's Direct Action Statute.

Consequently, the court finds the FDIC does have an interest in the coverage action and that the same would be impaired by the final disposition of the action.

Because the FDIC has met the intervention as of right requirements of PR Rule 21.1(b), it intervened as a party in interest in the suit.  Accordingly, the removal was effectuated pursuant to 12 U.S.C. §1819(b)(2)(B).

### B.    Federal Jurisdiction

Notwithstanding the court's finding that the FDIC acted within federal statutory limits in removing the State Court Action to federal court, the removal is subject to being stricken by the federal district court.  See Arends v. Eurobank and Trust Co., 146 F.R.D. 42, 47 (D.P.R. 1993) (citing 12 U.S.C. § 1819(b)(2)(B); 28 U.S.C. § 1447(c)).  Individual Plaintiffs contend this court lacks jurisdiction because the FDIC has no right to intervene in the insurance coverage dispute.

"In determining whether the intervention should be stricken or dismissed, the court will be guided by federal law."  Arends, 146 F.R.D. at 47 (citations omitted) (internal quotation marks omitted).  Federal Rule 24(a)(2) requires the putative intervenor establish:

> (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by an existing party.

R&G Mortg. Corp., 584 F.3d at 7 (citations omitted); FED.R.CIV.P. 24(a)(2).  Each of these preconditions must be met.  R&G Mortg. Corp., 584 F.3d at 7.  Failure to meet any of the requirements precludes an applicant's intervention as of right.  Travelers Indem. Co., 884 F.2d at 637.

The first three requirements under Federal Rule 24(a)(2) correspond to the requirements under PR Rule 21.1(b).  The court already addressed these requirements pursuant to federal standards, and found the FDIC had met all three.  Therefore, the court shall focus on whether Individual Plaintiffs adequately represent the FDIC's interests.

### 1.    Adequate Representation

The fourth factor of Federal Rule 24(a)(2) requires "[a]n intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate."  B.

Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006) (citations omitted). Where the goals of the applicants are the same as those of the plaintiff or defendant, a rebuttable presumption applies. Id. at 546 (citations omitted). "[T]o overcome the presumption, the intervenor need only offer 'an adequate explanation as to why' it is not sufficiently represented by the named party." Id. (citing Maine v. Dir., U.S. Fish and Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001)). Inadequate representation may be shown by demonstrating that the intervenor's interests "are sufficiently different in kind or degree from those of the named party." B. Fernandez & Hnos., Inc., 440 F.3d at 546 (citations omitted).

In the case at bar, it might appear that Individual Plaintiffs and the FDIC seek the same objective in the coverage action, i.e. insurance coverage over the FDIC's claims against Individual Plaintiffs. However, as the FDIC correctly points out while establishing inadequacy of representation, Puerto Rico's Direct Action Statute affords it the advantage of presenting both liability and coverage claims in a single action. The FDIC's liability claims are premised on Individual Plaintiffs' gross negligence in the discharge of their duties. (See Docket No. 1-4). Individual Plaintiffs cannot possibly prosecute the FDIC's liability claims against themselves. Accordingly, the FDIC's interest will not be adequately represented by Individual Plaintiffs.

Having satisfied each of the four Federal Rule 24(a)(2) factors, the court finds the FDIC may intervene in the lawsuit by right.

### III.    Conclusion

For the reasons set forth above, the court **DENIES** Individual Plaintiffs' motion to remand at Docket No. 16.

**SO ORDERED**.

In San Juan, Puerto Rico this 24th day of February, 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge