IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

W HOLDING CO., INC., et al,

Plaintiffs,

v.                                              Civil No. 11-2271 (GAG)

CHARTIS INSUR. CO.-PUERTO RICO, et al,

Defendants.

**OPINION AND ORDER**

This case stands in a long line of claims brought by the Federal Deposit Insurance Corporation ("FDIC") against directors and officers of banks throughout the United States. To date, the FDIC has filed thirty-three such suits in its capacity as a receiver. In sum, the FDIC became Westernbank's receiver on April 30, 2010. W Holding Company ("W Holding") owned all outstanding shares of Westernbank's corporate stock when the FDIC assumed receivership. (Docket No. 182, ¶ 1.) The FDIC alleges Westernbank's directors and officers ("D&O's") irresponsibly governed Westernbank's loan approvals, thereby violating several Puerto Rico and federal laws.

The D&O's purchased liability insurance from Chartis Insurance Company of Puerto Rico ("Chartis"). When the FDIC took over as receiver, the D&O's sought coverage under their Chartis policy, and Chartis denied the D&Os' requests. W Holding and the D&O's brought suit to enforce the agreement. (See Docket No. 26-1.) The FDIC intervened, levying various claims against several D&O's, their conjugal partnerships, and trustees for negligence, breach of fiduciary duties,

**Civil No. 11-2271 (GAG)**

fraudulent conveyances, and adverse domination, as well as against Chartis and other insurers who provided excess policies to the D&O's for enforcement of such policies.

I.      **Background**

The FDIC intervened in a suit brought in the Puerto Rico Commonwealth Court by W Holding and the D&O's against Chartis for declarations of coverage under liability policies, pursuant to the Puerto Rico Direct Action Statute. (Id., ¶¶ 10, 28.) The FDIC, as Westernbank's receiver, seeks recovery of $176.02 million in damages from former Westernbank D&O's and their conjugal partnerships[1] for twenty-one allegedly grossly negligent commercial real estate, construction, and asset-based loans and transactions approved and administered from January 28, 2004, through November 19, 2009. (Docket No. 182, ¶¶ 2-3.) The FDIC also requests the court to enforce contracts for liability coverage between the D&O's and Chartis, as well as excess liability policies with XL Speciality Insurance Company ("XL"), Liberty Mutual Insurance Company ("Liberty"), and Ace Insurance Company ("Ace"). (Id., ¶¶ 53-55.) Lastly, the FDIC names Luis Bartoleme Rivera-Cuebas, Carlos Gonzalez-Alonso, and Jane Doe in their capacities as trustees of the Socio Cultural Conservation Trust, the Dominguez Sotomayor Family Trust, and the CT Family Trust, respectively, for administering funds procured through allegedly fraudulent transfers. (Id., ¶¶ 55(A)-55(C).)

The FDIC's complaint alleges several acts of purported gross negligence, such as

---

[1] The D&O's comprise Frank C. Stipes-Garcia, Juan Carlos Frontera-Garcia, Hector L. Del Rio-Torres, William M. Vidal-Carvajal, Cesar A. Ruiz-Rodriguez, and Pedro R. Dominguez-Zayas. The complaint lays out their respective roles within Westernbank during the timeframe of the alleged grossly negligent behavior. Certain D&O's served on Westernbank's Senior Lending Committee ("SLC") and Senior Credit Committee ("SCC"). The FDIC asserts claims against the following former D&O's, as well: Jose Biaggi-Landron, Ricardo Cortina-Cruz, Miguel A. Vazquez-Seijo, Julia Fuentes del Collado, Mario A. Ramirez-Matos, and Cornelius Tamboer. The conjugal partnerships joined also include Marlene Cruz-Caballero, Lilliam Diaz-Cabassa, Gladys Barletta-Segarra, Hannalore Schmidt-Michels, Sonia Sotomayor-Vicenty, the partner of Jose Biaggi-Landron (referred to as Jane Doe in the complaint), Elizabeth Aldebol de Cortina, Sharon McDowell-Nixon, and Olga Morales-Perez. (See id. ¶¶ 22-52.)

**Civil No. 11-2271 (GAG)**

Westernbank's violations of loan-to-value ratio limits, lack of required borrower equity, inadequate real estate appraisals, insufficient analyses of collateral or inadequate collateral, and insufficient borrower repayment information and repayment sources. (Id., ¶ 5.) The FDIC also asserts that the D&O's increased, extended, and renewed expired and deteriorating loans to enable continued funding of interest reserves, thereby delaying losses and defaults and increasing the losses on the loans. (Id.)

The FDIC claims Westernbank's officers violated major loan terms by "administering and funding the construction and asset-based loans." Specifically, the FDIC states that the officers "continued funding asset-based loans despite receipt of reports showing dilution," violated "borrower covenants and loan agreements," approved ineligible collateral, engaged in unilateral and unauthorized waiver of key borrower financial covenants relating to working capital, disregarded net adjusted equity value and cash flow ratios, manipulated loan monitoring systems, funded loans despite borrower defaults, and extended expired loans. (Id. at 6.) The FDIC also alleges that the directors "failed to heed and act upon examiner and auditor warnings of deficiencies in commercial lending and administration." (Id. at 8; see also ¶ 58 (exceeding ratio limits); ¶ 59 (loan approval despite internal admonishment of "severe deficiencies"); ¶¶ 60-63 (detailing alleged disregard of regulator warnings); ¶ 64 (D&O acknowledgment of malfeasance); ¶¶ 69-76 (levying specific allegations against the D&O's), and; ¶ 84 (summarizing alleged gross negligence).)

The FDIC discusses in detail several loans that allegedly led to the $176.02 million in losses issued to Museum Towers, LP ("Museum Towers"), Yasscar Development Corporation ("Yasscar Development"), Yasscar Caguas Development Corporation ("Yasscar Caguas"), Sabana Del Palmar, Inc. ("Sabana"), Plaza CCD Development Corporation ("Plaza CCD"), Inyx, Inc. ("Inyx"), and Intercoffee, Inc. ("Intercoffee"). The complaint details why and how the loan approvals violated various internal policies, which D&O approved the loan and at what stage the D&O granted approval or administered the financing, and the accountable percentage of the aggregate $176.02 million loss. (Id., ¶¶ 77-80.)

3

**Civil No. 11-2271 (GAG)**

The FDIC asserts seven claims in its complaint: (1) gross negligence; (2) breach of fiduciary duty against Tamboer; (3) adverse domination; (4)-(6) fraudulent transfers against Stipes, Tamboer, and Dominguez, and; (7) direct action claims against the insurance carriers. (Docket No. 182, ¶¶ 83–100.) Presently before the court are seven motions to dismiss the FDIC's complaint filed by the D&O's and their conjugal partnerships. (Docket Nos. 196, 198, 199, 200, 202, 205, & 291.) For the reasons stated herein, after reviewing the parties' memoranda of law, submissions, and attachments thereto, the court **DENIES** all motions to dismiss.

## II.     Motion to Dismiss Standard

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678-79 (quoting Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679

**Civil No. 11-2271 (GAG)**

(quoting FED. R. CIV. P. 8(a)(2)).

**III.   Discussion**

    1.    <u>Counts 1-3: Gross Negligence, Fiduciary Duty, Delayed Discovery & Adverse Domination</u>

The D&Os' motions to dismiss the FDIC's claims for negligence are **DENIED**. (Docket Nos. 196, 198, 199, 200, 202, 205, & 291.) The FDIC must demonstrate the D&O's were grossly negligent, as directors and officers are shielded from ordinary negligence claims under Puerto Rico's Business Judgment Rule.[2] See W Holding, Inc. v. Chartis Insur. Co., P.R., 845 F. Supp. 2d 422, 429 (D.P.R. 2012). To reiterate, the FDIC states sufficient facts to allege a plausible claim for gross negligence, thereby satisfying <u>Twombly</u> and <u>Iqbal</u>. Therefore, any claim arising under ordinary negligence is dismissed. The court considers the allegations and corresponding motions to dismiss in turn.

    **A.**    **The FDIC's Complaint Sufficiently Alleges Gross Negligence**

The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") imposes personal liability on directors or officers of insured depository institutions for gross negligence.

---

[2] P.R. LAW ANN. 14 § 3563 states,

> The directors and officers shall be bound to dedicate to the affairs of the corporation and to the exercise of their duties the attention and care which in a similar position and under analogous circumstances a responsible and competent director or officer would execute in applying his/her business judgment in good faith or his/her best judgment in the case of nonprofit corporations. Only <u>gross negligence</u> in the exercise of the duties and obligations mentioned above shall result in personal liability (emphasis added).

The statute does not distinguish between directors and officers in imposing a gross negligence threshold for liability. Therefore, the court assesses directors and officers equally.

**Civil No. 11-2271 (GAG)**

Section 1821(k) of FIRREA provides that the definition of gross negligence should be grounded in state law. Puerto Rico models its corporate statutes after Delaware corporate law. See Wylie v. Stipes, 797 F. Supp. 2d 183, 196 (D.P.R. 2012) (citing Marquis Theatre Corp. v. Condado Mini Cinema, 846 F.2d 86, 91 (1st Cir. 1988)). Gross negligence constitutes a difficult threshold to reach. In assessing gross negligence claims, a reviewing court looks "for evidence as to whether a board has acted in a deliberate and knowledgeable way in identifying and exploring alternatives." Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 66 (Del. 1989). Gross negligence "involves a devil-may-care attitude or indifference to duty amounting to recklessness." Zimmerman v. Crothall, 2012 Del. Ch. LEXIS 64, at *20 (Del. Ch. Mar. 5, 2012) (citing In re Lear Corp. Shareholder Litig., 2005 Del. Ch. LEXIS 133, 2005 WL 2130607, at *4 (Del. Ch. Aug. 26, 2005)). Gross negligence constitutes "reckless indifference or actions that are without the bounds of reason." McPadden v. Sidhu, 964 A.2d 1262, 1274 (Del. Ch. 2008). The "intentional dereliction of a known duty," furthermore, "is a higher standard of wrongdoing than gross negligence or recklessness." In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 67 (Del. Ch. 2005).

Parallel FDIC actions against various directors and officers guide the court in its analysis. Although FIRREA dictates that state-based gross negligence doctrine governs claims against directors and officers, and the facts of each case differ, these cases nonetheless assist the court. See e.g., FDIC v. Briscoe, No. 11-CV-2303 (N.D. Ga. Aug. 14, 2012); FDIC v. Willetts, No. 7:11-DV-165, 2012 U.S. Dist. LEXIS 55363 (E.D.N.C. Apr. 13, 2012); FDIC v. Skow, No. 11-111 (N.D. Ga. Feb. 27, 2012); FDIC v. Spangler, No. 10-CV-4288 (N.D. Ill. Dec. 22, 2011); FDIC v. Saphir, No. 10-7009 (N.D. Ill. Sept. 1, 2011).

In Briscoe, the FDIC alleged violations of law and regulations; failure to establish, enforce, and follow loan policies; inadequate investigation; failure to heed regulatory warnings; loans to non-creditworthy borrowers; inadequate financial information; inadequate loan documentation; unsecured and undersecured loans; inadequate or non-existent appraisals; failure to perfect and maintain collateral; diversion of loan proceeds; improper loan repayment programs; improper loan extensions and renewables; inadequate collection procedures; improper selection and supervision of officers;

**Civil No. 11-2271 (GAG)**

improper investment and liquidity policy compliance; improper maintenance of capital-to-asset ratio; insider loans; and failure to properly exercise management and supervision duties. See slip op. at 12-13. The court found that the complaint alleged sufficient facts for gross negligence and requested the FDIC to replead sufficient facts as to each specific D&O in the group. Id. at 16, 19.

In Spangler, the FDIC alleged that "Loan Committee Defendants failed to follow the bank's written lending policies and ensure prudent underwriting in approving the 'Loss Loans.' The Loan Committee allegedly approved loans without current and complete financial information on the borrower and guarantor and without obtaining a full guarantee on the loans." See slip op. at 4-5. The FDIC also alleged failure to assess repayment abilities of borrowers and creditworthiness before allowing generous interest reserves, as well as funding loans that were not financially feasible, failure to address repeated regulatory warnings about the state of the bank, and breach of commitments to regulators that the bank would limit total loans. Id. at 5, 10. The court recognized Illinois's gross negligence standard as "very great negligence," rejecting a "recklessness definition." Id. at 8.

In denying the motion to dismiss, the court noted, "[I]t is not clear that Defendants' action can be chalked up to 'a recession.' While it is too early in the case to know whether the evidence will show that Defendants too were victims of the recession, the amended complaint does not attempt to hold the Loan Committee Defendants accountable for failing to foresee future economic developments." Id. at 11. The Spangler court considered vagueness claims, noting that the defendants claimed the allegations were "nothing but vague assertions that officers and directors did not conform to a loan policy or get a personal guarantee." Id. at 12. The court found this argument unconvincing, ruling that the FDIC met the gross negligence standard.

In Saphir, Judge Pallmeyer found sufficient pleadings for gross negligence for alleged failure to adequately implement and supervise loan programs, voting to approve the allegedly toxic loans, failing to increase the bank's reserves, and approving large dividend and incentive payments that depleted the bank's capital. See slip op. at 10. The court was not "troubled by the FDIC's purported failure to say 'how' or 'why' the Defendants' conduct deviated from the applicable standard of care, or to attach [the bank's] charter . . ." Id. at 12.

**Civil No. 11-2271 (GAG)**

In Skow, the court found sufficient allegations of gross negligence where the FDIC asserted that the directors and officers "deliberately pursued a speculative, high-growth lending strategy, the risks of which were compounded by their failure to implement sound lending practices or to exercise appropriate oversight over loan officers and the lending function," and failed to heed regulator warnings. See slip op. at 12-13.

Lastly, in Willetts, the court denied the defendants' 12(b)(6) motion where the FDIC alleged that "directors were repeatedly warned about regulator violations and were advised that loans were being made in violation of the loan policy but took no action." See 2012 U.S. Dist. LEXIS 55363, at *12. The FDIC also contended that "many loans were approved after an inappropriate level of review," and that the bank was improperly structured, lacked feasibility studies, overstated value, and lacked sufficient appraisal bases. Id. at *12-13.

In the instant case, the FDIC alleges "funding of loans in the face of repeated borrower defaults, ineligible collateral, cash diversions, and violations of fundamental loan terms and covenants in order to continue to collect interest and derive short term profits," "failure to obtain appraisals . . . in violation of bank policy . . .," "failure to require compliance with loan to value ratio limits as required by bank policy," "failure to disclose personal interests in a loan or borrower, and self dealing [sic]," and failure to "heed and act upon escalating examiner and auditor warnings of deficiencies in commercial lending and administration." (See Docket No. 233 at 2-3) (citing Docket No. 182 at ¶¶ 4, 56, 57, 80(D), 84; 5, 58, 77, 80(A), (B), (F), (G), and (H); 5, 58, 77, 80(A), (F), (G), and (H); 5, 77, 80(C)-(E); 7, 80(F), 82; 8, 60-63, 68, 69, & 84, respectively); see also Docket No. 182, ¶¶ 66-67, 79, 80(d) (sufficiently alleging breach of banking procedure against Ruiz). The similarities between the allegations against the Westernbank D&O's and those in Illinois, North Carolina, and Georgia are overwhelmingly evident. The FDIC's allegations exceed the requirements set forth in Iqbal and Twombly.

A critical distinction between the Delaware and Illinois-Georgia-North Carolina standards for gross negligence lies in Delaware's strict definition and merits mention. Where some states find gross negligence does not quite encompass recklessness, Delaware embraces it. Reckless

indifference outside the bounds of reason and a devil-may-care attitude certainly necessitate proffers of egregiousness beyond those required in other jurisdictions recognizing gross negligence. Nonetheless, the FDIC alleges facts questioning "whether a board has acted in a deliberate and knowledgeable way in identifying and exploring alternatives" analogous to those encountered by our sister courts in denying their respective motions to dismiss. See Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 66 (Del. 1989). The FDIC supplements its bottom-line allegation of a grossly negligent loss of $176 million with over 90 pages of fact and law that unquestionably put the defendants on notice of exactly that which they are accused. Furthermore, the motions to dismiss do not specifically address Tamboer's alleged breach of fiduciary duty beyond their objections to the FDIC's claims for gross negligence; thus, nor shall the court.

Lastly, the D&O's in both this and several other FDIC-D&O cases argue that vagueness in the complaint precludes individual directors and officers from understanding with certainty for which actions the FDIC holds them accountable. Indeed, the Briscoe court required the FDIC to amend its complaint to specify which allegedly negligent actions were attributed to which director or officer. See slip op. at 19. Here, however, the FDIC explicitly chronicles which director or officer approved which purportedly grossly negligent loan, when the approval occurred, whether the loan constituted an initial loan, additional credit, extension of construction loan, or post-approval administration and funding. (See Docket No. 182, ¶ 79.) The FDIC subsequently discusses in extensive detail the various pitfalls in the D&Os' approval of the loans. (Id. at ¶ 80.) The FDIC's memorandum opposing the various motions to dismiss delves further into specific allegations of wrongdoing and need not be recited here. (See Docket No. 233 at 9-16.) Several of the D&O's have also filed individual motions to dismiss. Although these motions adopt by incorporation the D&O's motion discussed above, they raise separate concerns that the court considers below and ultimately **DENIES**.

> i. Insurers on behalf of D&O's & Conjugal Partnerships [196]

The claims set forth in this motion to dismiss are addressed in count 7.

**Civil No. 11-2271 (GAG)**

### ii. Stipes, Frontera, Del Rio, Vidal, Ruiz, & Dominguez [198]

This motion alleges issue preclusion pursuant to this court's decision in Wylie v. Stipes. 797 F. Supp. 2d 193, 194 (D.P.R. 2011). Issue preclusion "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action . . ., even when different causes of action are involved." Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205-06 (1st Cir. 2005). The D&O's argue the Wylie plaintiffs brought derivative claims for breaches of fiduciary duties based on allegedly negligent failure to implement adequate internal controls at Westernbank, the issue of negligence was essential to judgment, and the court dismissed the action on summary judgment. (See Docket No. 198 at 34-35.)

This allegation lacks merit. Wylie brought a shareholder derivative suit against certain D&O's of W Holding for alleged Sarbanes-Oxley violations, breach of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of the Puerto Rico General Corporations Law of 1995. 797 F. Supp. 2d at 194. The court considered the appropriateness of a Special Litigation Commission's determination to quash the derivative suit. The court analyzed the SLC members' ability to independently assess plaintiff's claims, allegations of improper delegation, the thoroughness of the SLC's investigation, and the reasonableness of the SLC's findings. Id. at 200-205. To the extent the D&O's consider granting summary judgment on the "reasonableness of the SLC's findings" preclusive, the standard bears repeating to dispel such a notion. The court determined whether "the report of the committee appears to be comprehensive and well documented and gives indication of a reasonable and thorough investigation of the plaintiff's allegations." Id. at 201. The court issued no judgment as to the D&O's purported negligence, let alone mentioned the word "negligence" once; rather, it listed the various factors to consider in assessing the reasonableness of the SLC's recommendation, which included whether the directors should have known that violations of law were occurring and took no steps in good faith to prevent the breach. Id. at 202. For estoppel purposes, the relevant issue the court decided in Wylie is whether the SLC presented reasonable recommendations based on certain criteria used to determine if the SLC could plausibly find a lack of oversight. Finding reasonableness in the recommendation does not entail

**Civil No. 11-2271 (GAG)**

a final decision on whether the D&O's engaged in reckless behavior with a devil-may-care attitude resulting in $176 million in losses. Consequently, the court rejects this argument.

### iii. Barletta, Schmidt, Sotomayor, Diaz, & Cruz [199] and McDowell [205]

The conjugal partners of the D&O's assert that claims against them should be dismissed because they are not liable under FIRREA or Puerto Rico law. To reiterate, FIRREA adopts state law standards. Therefore, the court need only assess whether the claims against the conjugal partnerships plausibly entitle the FDIC to relief according to Puerto Rico law.

This motion to dismiss first asserts the spouses cannot be subjected to personal liability. (Docket No. 199 at 2.) The FDIC clarifies it "does not assert any individual liability of the spouses beyond their interests in the conjugal partnerships." (See Docket No. 233 at 25) (citing Docket No. 182, ¶ 28.) Therefore, the only questions remaining concern the conjugal partnerships' liability. The movants claim the partnerships' liability for acts of one spouse is subsidiary under Puerto Rico law and the court should exclude them from the present action until adverse judgment against the D&O's. Each spouse, as an individual, is not responsible for all the obligations of the conjugal partnership. However, when a spouse's negligent conduct generates economic benefits for the partnership, the partnership is liable for the resulting damages. See Lugo Montalvo v. González Mañón, 104 D.P.R. 372, 378 (P.R. 1975); Sepúlveda v Maldonado, 108 D.P.R. 530, 534 (P.R. 1979). The conjugal partnership will not be liable when no economic benefit for the partnership exists, when the spouse was involved in an illegal act that constitutes a crime of intention, and when the damages are caused by a spouse while acting as a public employee performing official duties, such as a violation of civil rights or sexual harassment. See generally Rosario v. Distribuidora Kikuet, Inc., 151 D.P.R. 634, 648 (P.R. 2000). Here, the complaint and reply name the partnerships, placing them on notice that elements of the partnerships may have engaged in a course of negligent conduct exposing them to liability. Therefore, the partnerships are properly included.

### iv. Fuentes [200], Biaggi [202], and Aldebol [291]

The court addresses these issues in Part A and Part B of this Section.

11

### B. Statutes of Limitation and Adverse Domination

Preliminarily, the court observes that the FDIC timely files this suit under FIRREA. The FDIC's statute of limitations for any action in tort is the longer of the three-year period beginning on the date the claim accrues; or the period applicable under State law. See 12. U.S.C. § 1821 (d)(14)(A)(ii). The FDIC assumed receivership of Westernbank on April 30, 2010. Therefore, no question exists as to whether the FDIC timely files this suit under its federal limitations period.

#### i. Statute of Limitations

The D&O's assert that a one-year statute of limitations bars negligence claims of the allegedly negligent loans and that codification of the Business Judgment Rule limitations period should not apply because it does not constitute "liability created by law." These arguments are inapposite. Actions against directors or stockholders enjoy a three-year statute of limitations.[3] Liability created by statute seemingly constitutes a liability created by law. See Platt v. Wilmot, 193 U.S. 602, 613 (1904) (finding that contract liability arising under statute constitutes "liability created by statute.") Distinguishing "liability created by statute" from "liability created by law," which applies to the Puerto Rico statute at issue here, offends common sense. Legislatures create new laws or create new statutes by codifying common law. The court understands that "at law" invokes the common law; however, in this instance, the Puerto Rico legislature codified a common law principle. It appears, thus, that the Business Judgment Rule in Puerto Rico falls under the auspices of both common law and statutory law. Either way, the liability at issue here arose under law. Plaintiff-Officers also contend that the statute encompasses only directors and not officers. Indeed, the wording only references directors and stockholders. The court reserves judgment on this issue, as the officers are nonetheless amenable to suit for gross negligence because adverse domination and delayed discovery rules toll the limitations period.

---

[3] Actions against directors or stockholders of corporations must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached or the liability was created. See P.R. LAWS ANN. 32 § 261.

12

### ii. Adverse Domination & Delayed Discovery

Adverse domination is "an equitable doctrine which operates to toll the statute of limitations for a corporation's claims against its officers or directors when the persons in charge of the corporation cannot be expected to pursue claims adverse to their own interests." In re Payroll Express Corp., 186 F.3d 196, 205 (2nd Cir. 1999). This court decided the seminal case on adverse domination in FDIC v. Bird. 516 F. Supp. 647 (D.P.R. 1981). In Bird, the district court crafted the principle the court follows today: "Control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to 'initiate any action contrary to their own interests.'" FSLIC v. Williams, 599 F. Supp. 1184, 1194 (D. Md.) (quoting Bird, 516 F. Supp. at 652). Several courts adopt this rationale and cite Bird to justify their decisions. See e.g., FDIC v. Manatt, 723 F. Supp. 99, 105 (E.D. Ark. 1989); FDIC v. Appling, 992 F.2d 1109, 1115 (10th Cir. 1993); FDIC v. Paul, 735 F. Supp. 375, 377-78 (1990); Resolution Trust Corp. v. Fiala, 870 F. Supp 962, 972-73 (E.D. Mo. 1990) (citing cases).

The Supreme Court has squarely rejected developing federal common law to govern the standard of care used to measure the legal propriety of the conduct of directors, holding instead that state common law principles govern liability in tort. See Atherton v. FDIC, 519 U.S. 213, 217-26 (1997); see also O'Melveny & Myers v. FDIC, 512 U.S. 79, 89 (1994). In O'Melveny & Myers, the Court rebuffed the "runaway tendencies of 'federal common law' untethered to a genuinely identifiable (as opposed to a judicially constructed)" law, finding that "extraordinary cases" warrant judicial creation of a federal rule. 512 U.S. at 89. While the FDIC alleges gross negligence pursuant to P.R. LAWS ANN. 14 § 3563 rather than common law tort, negligence principles sound in both and, therefore, merit consideration of whether Bird's rationale constitutes federal common law or state common law. The answer is that the original opinion created federal common law prior to the Court's holding in O'Melveny & Myers. But Puerto Rico jurisprudence tolling statutes of limitation for delayed discovery sufficiently embraces the principles espoused in Bird. The First Circuit recognizes that Puerto Rico adheres to this rationale, holding that a statute of limitations "does not

**Civil No. 11-2271 (GAG)**

begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit." Villarini-Garcia v. Hosp. Del Maestro, 8 F.3d 81, 84 (1st Cir.1993) (citing Santiago Hodge v. Parke Davis & Co., 909 F.2d 628, 632-33 (1st Cir.1993) (discussing Colon Prieto v. Geigel, 115 P.R. 232, 247 (P.R. 1984))).

The D&O's also argue that adverse domination should only apply to claims sounding in fraud; however, the Bird court weighed negligence claims in implementing adverse domination. Distinguishing negligence from fraud here would defeat the core purpose of the doctrine. Regardless of the D&Os' intent, if putative plaintiffs are not situated to become aware of egregious lending practices and the corporation neglects to sue the directors and officers, a harm arises necessitating tolling. To toll the statute on the ground of adverse domination, "at least once the facts giving rise to . . . liability are known, plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue." Int'l Inv. Trust v. Cornfeld, 619 F.2d 909, 930 (2nd Cir. 1980) (quoting Int'l Ry. of Cent. Am. v. United Fruit Co., 373 F.2d 408, 412-17 (2nd Cir. 1967)). Although the D&O's expressly reject the principle of adverse domination, the complaint states and the D&O's acknowledge that the restated Form 10-K filed by the W Holding Board on March 16, 2009, placed any putative plaintiffs on notice of ostensibly grossly negligent action. The FDIC's reference to Form 10-K and the D&O's acknowledgment that the form disclosed potential dereliction of duty sufficiently raises the right to relief above a speculative level.

Adverse domination and lack of disclosure toll the limitations period for any grossly negligent actor, whether or not employed by Westernbank when it published the Form 10-K or when the FDIC assumed receivership. Thus, Fuentes and Biaggi are not exempt. Excluding D&O's under this rationale would reward grossly negligent actors who simply foresee potential litigation and resign. Following discovery, the D&O's may proffer evidence revealing practices discoverable prior to the Form 10-K filing on March 16, 2009 not obfuscated by adverse domination, so as to start running the three-year clock at an earlier date.

    2.    <u>Counts 4-6: Fraudulent Conveyance – Stipes, Tamboer, and Dominguez</u>

14

**Civil No. 11-2271 (GAG)**

The court **DENIES** motions to dismiss regarding fraudulent conveyances attributed to Stipes and Dominguez.[4] The FDIC may avoid a transfer of any interest of an institution-affiliated party, or any person who the FDIC determines is a debtor of the institution if such party or person made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution or the FDIC. See 12 U.S.C. § 1821(d)(17). The statute requires: 1) the fraudulent transferor be an institution-affiliated party or debtor, and; 2) the transferor performs the transfer with the intent to hinder, delay, or defraud Westernbank or the FDIC. Stipes and Dominguez assert that the FDIC fails to establish either prong.

The D&O's contest whether the FDIC appropriately categorizes Stipes and Dominguez as debtors or institution-affiliated parties, calling to question the FDIC's interpretation of 12 U.S.C. § 1821(d)(17). Stipes and Dominguez comprise institution-affiliated parties because they were directors and officers of the institution during the purportedly negligent actions for which the FDIC seeks damages. The D&O's argue that because they were not affiliated at the time of conveyance, the statute does not apply to them. However, the court finds RTC v. Greif persuasive. 906 F. Supp. 1457, 1465 (D. Kan. 1995) (finding statutory authority under Section 1821(d)(17) to determine that former directors and officers are institution-affiliated parties). Holding otherwise would permit the D&O's to shield themselves from liability simply by resigning.

The question thus becomes one of concurrence – whether the FDIC may simultaneously allege fraudulent conveyance without a judgment against the D&O's. The court finds such action permissible under the federal scheme, but questions of ripeness arise for allegations under state law. Sucesion Almazan v. Lopez holds that a petitioner must be "really and truly a lawful creditor of defendants." 20 P.R.R. 502, 506 (P.R. 1914). Section 1821(d)(17), furthermore, permits the FDIC to determine who "is a debtor of the institution." While this provision hardly bestows omnipotence on the FDIC to simply label the D&O's "debtors," claims for arbitrary and capricious interpretation

---

[4] The D&Os' do not address Tamboer's alleged fraudulent conveyance; thus, neither shall the court.

**Civil No. 11-2271 (GAG)**

are more appropriate at the summary judgment stage. In any case, the <u>Lopez</u> court found that if plaintiffs obtain judgment during the course of an action for rescission, "this would be a circumstance in corroboration of the right of the plaintiff." <u>Id.</u> If the trier of fact finds the D&O's liable for gross negligence, the FDIC justifiably dubs Stipes and Dominguez debtors. In contrast, the fraudulent conveyance claims necessarily falter if the FDIC fails to sufficiently demonstrate gross negligence. Therefore, the FDIC satisfies the first prong of Section 1821(d)(17).

Secondly, the FDIC must allege an intent to hinder, defraud, or delay. The First Circuit recognizes that courts often find fraudulent conveyances through circumstantial evidence. <u>See e.g.</u>, <u>Max Sugarman Funeral Home, Inc. v. A.D.B. Investors</u>, 926 F.2d 1248, 1254 (1st Cir.1991). At this stage, the court finds the allegations of badges of fraud in the complaint sufficient to make out a claim for an intent to defraud, hinder, or delay, particularly because Stipes is the primary beneficiary of the trust into which he completed the allegedly fraudulent transfer. (<u>See</u> Docket No. 182 at 30-33.) Discovery is necessary to clarify these questions; thus, the D&O's motion to dismiss is **DENIED**.

3. <u>Count 7: Insurers' Motions to Dismiss</u>

Chartis, ACE, XL Speciality, and Liberty (collectively "Insurers") move to dismiss the FDIC's claims against them for enforcement of the D&Os' liability insurance policies, and Chartis moves to dismiss the D&O's claims against it for enforcement of the D&Os' liability insurance policies. (Docket No. 197.) The court **DENIES** both motions.

The Insurers claim the Insured v. Insured Exclusion[5] precludes the FDIC from bringing suit to recover on the D&Os' policies. The Seventh Circuit succinctly describes the Exclusion. "Director and officer liability insurance policies commonly feature so-called insured vs. insured exclusions that exclude from coverage losses for claims brought by one 'insured' against another

---

[5] The Exclusion in Section 4(i) of the Chartis-D&O Policy reads, "The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured : . . .which is brought by, on behalf of or in the right of, an Organization or any Insured Person other than an Employee of an Organization, in any respect and whether or not collusive." (Docket No. 197-4 at 9.)

16

**Civil No. 11-2271 (GAG)**

'insured,'" which includes "current and former [D&O's] as well as the corporation itself . . . to limit moral hazard. Without such an exclusion, a D&O policy could require the insurer to pay for the business mistakes of insured directors and officers if the corporation . . . or if former officers or directors brought suit . . ." Miller v. St. Paul Mercury Ins. Co., 683 F.3d 871, 872 (7th Cir. 2012).

Where a regulatory agency asserts claims against insured directors and officers on behalf of both the insured organization and third-party interests, the applicability of the Exclusion is ambiguous. Fed. Ins. Co. v. Hawaiian Elec. Indus. Inc., No. 94-00125, 1995 WL 1916123, 7 (D. Haw. Dec. 15, 1995). "A majority of better-reasoned opinions holds that the 'insured v. insured' exclusion does not unambiguously exclude suits by the FDIC from coverage." Peter D. Rosenthal, Have Bank Regulators Been Missing the Forest for the Public Policy Tree? The Case for Contract-Based Arguments in the Litigation of Regulatory Exclusions in Director and Officer Liability Policies, 75 B.U. L. REV. 155, 173 (1995). Several cases support this notion. See e.g., FDIC v. Am. Cas. Co. of Reading, 814 F. Supp. 1021, 1026 (D. Wyo. 1991) ("Finally, the Court is not convinced that the FDIC, acting as receiver, is in the same position as the institution. While the FDIC steps into the shoes of the predecessor bank, it is nonetheless in the unique position of representing the interests of itself, shareholders, and all other creditors.") (citations omitted); FDIC v. Zaborac, 773 F. Supp. 137, 144 (C.D. Ill. 1991) ("In this case, the FDIC does not merely stand in the shoes of [the bank], it can also stand in the shoes of the shareholders; therefore, as a shareholder, it has the independent authority to bring a suit against American Casualty."); Branning v. CNA Ins. Cos., 721 F. Supp. 1180, 1184 (W.D. Wash. 1989) ("The court finds, however, that [the] FSLIC does not merely stand in the shoes of Home Savings. By statute, [the] FSLIC represents depositors, shareholders, creditors and the federal insurance fund as well as the failed institution."); Am. Cas. Co. of Reading v. FSLIC, 704 F. Supp. 898, 901 (E.D. Ark. 1989) ("Moreover, because the FSLIC is required to marshal the assets of a failed institution for the benefit of its depositors and creditors and to minimize payouts from the insurance fund, it is motivated to bring suit by interests distinctly different from that of an institution which has remained solvent.").

However, the Insurers maintain the appropriate course of action requires applying the

**Civil No. 11-2271 (GAG)**

Exclusion to FDIC claims. See Hyde v. Fidelity & Deposit Co., 23 F. Supp. 2d 630, 634 (D. Md. 1998); see also Mt. Hawley Ins. Co. v. FSLIC, 695 F. Supp. 469, 484 (C.D. Cal. 1987); Powell v. Am. Cas. Co. of Reading, 772 F. Supp. 1188, 1191 (W.D. Okla. 1991) (holding that the "insured vs. insured" exclusion applies to actions brought by the FDIC "which stands in the shoes of the . . . [b]ank in prosecuting claims."). The Insurers assert that the FDIC stands directly in Westernbank's shoes and should therefore be precluded from bringing suit under the Exclusion. See also Fid. & Deposit Co. of Md. v. Conner, 973 F.2d 1236, 1240 (5th Cir. 1992) (holding that an "insured vs. insured" exclusion applied to the FDIC when the complaint filed by the FDIC made "no attempt to show an independent breach of duty towards the bank's depositors or shareholders.").

With these differences in mind, the court turns to the purpose of the Exclusion, the complaint, and the specific terms in the policy for guidance. The obvious intent behind the Exclusion is to protect insurance companies from collusive suits among insured parties. See Michael D. Sousa, Making Sense of the Bramble-Filled Thicket: the "Insured v. Insured" Exclusion in the Bankruptcy Context, 23 BANK. DEV. J. 365, 391 (2007) (citing Fid. & Dep. Co. of Md. v. Zandstra, 756 F. Supp. 429, 431 (N.D. Cal. 1990)). Here, the FDIC reaps no benefits comparable to those enjoyed by collusive actors who seek to swindle insurance companies.

The policy, however, encompasses claims "brought by, on behalf of or in the right of, an Organization or any Insured Person, . . . whether or not collusive." (See Docket No. 197 at 9) (emphasis added). The court must assess whether FDIC brings suit on behalf of or in the right of an "Organization," as defined in the policy. The policy defines "Organization" as the named entity, each subsidiary, and debtors in bankruptcy proceedings. (See Docket No. 197-4 at 7-8.) Accordingly, the court finds that the FDIC's course of conduct does not run afoul of this provision and adopts the rationale espoused in Branning and Am. Cas. Co. of Reading v. FSLIC that the Exclusion does not preclude the FDIC from seeking redress from the Insurers.

The FDIC establishes in its complaint that it "succeeds to the rights, claims, titles, powers,

**Civil No. 11-2271 (GAG)**

privileges, and assets of Westernbank and its stockholders, members, account holders, depositors, officers, or directors . . ." (Docket No. 182 at ¶ 21.) The Exclusion and relevant terms in the policy therefore preclude suit on behalf of the members, officers, and directors. The Exclusion also ostensibly prevents the FDIC from bringing suit on behalf of Westernbank's shareholders, who consist only of W Holding, a plaintiff to this case. Entertaining such a claim would contradict the purpose of the Exclusion by cloaking collusion in an FDIC action. Nonetheless, the FDIC mollifies these concerns by suing on behalf of depositors, account holders, and a depleted insurance fund. The FDIC's role as a regulator sufficiently distinguishes it from those whom the parties intended to prevent from bringing claims under the Exclusion. Therefore, the Insurers' motion to dismiss FDIC's claims is **DENIED**.

**IV. Conclusion**

For the abovementioned reasons, the court **DENIES** all motions to dismiss [196, 198, 199, 200, 202, 205, 291].

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of October 2012.

/S/ Gustavo A. Gelpí

GUSTAVO A. GELPI

United States District Judge