**UNITED STATES DISTRICT COURT,**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| W HOLDING COMPANY, INC., FRANK STIPES GARCIA, JUAN C. FRONTERA GARCIA, HECTOR DEL RIO TORRES, WILLIAM VIDAL CARVAJAL, CESAR RUIZ AND PEDRO R. DOMINGUEZ ZAYAS | ) ) ) ) ) ) | CIVIL ACTION NO. 11-02271 (GAG) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CHARTIS INSURANCE COMPANY OF PUERTO RICO, | ) ) ) | |
| Defendants, | ) ) ) | |

**DEFENDANT CHARTIS INSURANCE COMPANY'S**
**ANSWER TO PLAINTIFFS' PETITION, AFFIRMATIVE DEFENSES,**
**COUNTERCLAIMS AND CROSS-CLAIMS**

NOW COMES the Defendant Chartis Insurance Company – Puerto Rico ("Chartis"), by and through its counsel, and for its Answer to Plaintiff's Petition, Affirmative Defenses, Counterclaims and Cross-Claims, and states as follows:

**ANSWER**

The Parties

1.      That in the case before us, the Plaintiff is comprised of W Holding Company, Inc., Frank Stipes Garcia, Juan C. Frontera García, Héctor Del Río Torres, William Vidal Carvajal, Cesar Ruiz Rodríguez, and Pedro R. Domínguez Zayas.

**ANSWER:**   **Chartis states that the Complaint speaks for itself and therefore denies any allegations inconsistent therewith.**

2.      That in compliance with the Rules of Administration of the Court of First Instance, following are the mailing addresses and telephone numbers of the co-plaintiffs: W

**Error! Unknown document property name.**

Holding Company, Inc., Apartado [P.O. Box] 2045, Mayaguez, Puerto Rico 00681, Tel. 787-833-1656; Frank Stipes García, Apartado 2045, Mayaguez, Puerto Rico 00681, Tel. 787-383-9378; Juan C. Frontera García, Apartado 3133, Mayaguez, Puerto Rico 00681, Tel 787-832-4645; Héctor Del Río Torres, Apartado 455, Mayaguez, Puerto Rico 00681, Tel. 787-365-2135; William Vidal Carajal, 255 Ave. Ponce de León, M.C.S. Plaza, Oficina 801, San Juan, Puerto Rico 00917, Tel. 787-399-6415; Cesar Ruiz Rodríguez, Avenida Los Maestros Número 13, Urbanización Hostos, Mayaguez, Puerto Rico 00682, Tel. 787-614-5678; and Pedro R. Dominguez Zayas, Calle Marquesa Numero 1706, Urbanización Valle Real, Ponce, Puerto Rico 0716, Tel. 787-385-1820.

**ANSWER:   Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 2 and, therefore, denies the same.**

3.      That co-plaintiff W Holding Company, Inc. is a corporation with the capacity to file suit or be sued, established and operating under the laws of the Commonwealth of Puerto Rico.  This Plaintiff is the holding company and former owner of the banking institution known in Puerto Rico as Westernbank.

**ANSWER:   Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 3 and, therefore, denies the same.**

4.      That co-plaintiffs Frank Stipes Garcia, Juan C. Frontera García, Héctor Del Río Torres, William Vidal Carvajal, Cesar Ruiz Rodríguez, and Pedro R. Domínguez Zayas served as members of the Board of Directors and/or officers of Westernbank.

**ANSWER:   Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 2 and, therefore, denies the same.**

5.      That the defendant Chartis Insurance Company of Puerto Rico, formerly known as American International Insurance Company of Puerto Rico, is an insurance company with the capacity to sue or be sued, and was established and/or operates under the laws of the Commonwealth of Puerto Rico.

**ANSWER:      Chartis admits the allegations contained in Paragraph 5.**

Nature of the Proceedings

6.      This is a petition for declaratory judgment on insurance policy coverage against Chartis Insurance Company of Puerto Rico, which sold Director and officer (D&O) insurance polices for each of the plaintiffs.  The defendant denied providing coverage under any of said D&O policies for claims and/or lawsuits that the Federal Deposit Insurance Corporation (FDIC) is engaged in and expects to bring against the plaintiffs.  Consequently, the plaintiffs ask for a declaration of their rights to coverage under these insurance policies, together with any additional compensation that this Honorable Court deems fair and appropriate.  As a question of fact and law, the clauses from the polices that this Honorable Court must interpret are the following:  1 (coverage A); 2(b); 2(g); 2(k); 2(p); 2(q); 2(s); and 2(v).

**ANSWER:      Chartis denies the allegations contained in Paragraph 6 as said allegations are conclusions of law.**

7.      Civil Procedure Rule 59 regulates the mechanism of declaratory judgment in our jurisdiction.  The origin of this Rule is found in the Uniform Declaratory Judgments Act approved in Puerto Rico via Law No. 47 of April 25, 1931, published in 32 L.P.R.A. sections 2991 to 3006.  It is acknowledged that this concerns a statute establishing new remedies, provided to remove uncertainty and contribute to achieving social harmony.  It gives the opportunity to deal earlier with certain impending causes of action through a previous statement

of rights.  Precisely, it concerns a remedy prior to actually going ahead with a conventional cause of action, but one which must present an actionable controversy.  See Moscoso vs. Rivera, 76 d.p.r. 481, 489 (1954) and Asoc. Alcaldes vs. Contralor,  176 D.P.R. 150, 158 (2009).  This mechanism is used frequently in Puerto Rico and has been endorsed by our Supreme Court.  See Fernando Sierra Verdecía, Declaratory Judgments and Decrees, I Rev. Jur. U.P.R. 193 (1932); José Ramírez Santibañez, Declaratory Judgments, I Rev. Col. Abog. P.R. 56 (1935); Dennis Martínez Irizzary, Declaratory Judgments-Appropriateness of this Solution to Establish lack of Paternity, XV Rev. Col. Abog., P.R. 90 (1954); Vicente Ortiz Colon, Declaratory Judgments in the Determination of Filiation Rights, XXV Re. Jur. U.P.R. 154 (1955-1956); Charana vs. Pueblo, 109 D.P.R. 641 (1980); C.I.A. P.R. vs. A.A.A. 131 D.P.R. 735 (1992); and Neighborhood Assoc. of Villa Caparra vs. Catholic Church, 117 D.P.R. 346, 355, No. 8 (1986).

**ANSWER:**    **Chartis denies the allegations contained in Paragraph 7 as said allegations are conclusions of law.**

8.    Our Supreme Court has said that the objective of Civil Procedure Rule 59 is to provide citizens with the procedural mechanism to reach a solution, through which the merits of any claim are explained before the courts, which claim may potentially be jeopardized if put on hold.  In addition, it should be used when it allows a situation of uncertainty or insecurity with regard to rights to be ended.  See Suárez vs. C.E.E., 163 D.P.R. 347 (2004), and Sánchez vs. Sec. de Justicia, 157 D.P.R. 360 (2002).

**ANSWER:**    **Chartis denies the allegations contained in Paragraph 8 as said allegations are conclusions of law.**

9.    Civil Procedure Rule 59.1 tells us when a declaratory sentence is appropriate.  In this sense, it establishes that "the Court of First Instance will have authority to declare rights,

statuses and other legal relationships even though another solution is or may be advised." In addition, it establishes that "the form and effects of the declaration can be positive or negative, and it will have the same effectiveness and force as judgments of final decisions." It also tells us that "independently of the provisions of Rule 37, the court will be able to order a quick view of a declaratory judgment legal dispute, giving it preference on the calendar."

**ANSWER:**   **Chartis that Civil Procedure Rule 59.1 speaks for itself and, therefore, denies any allegations inconsistent therewith.  In further answering, Chartis denies the remaining allegations contained in Paragraph 9 as said allegations are conclusions of law.**

10.    Rule 59.2 of Civil Procedure regulates who can request a declaratory judgment, the power of interpretation and the exercise of one's authority.  With regard to the first matter, paragraph (a) states that "any person involved in…a written contract or other documents comprising a contract, or whose rights, status or other legal relationships were affected by a …contract or an exemption, may petition for a decision regarding any disagreement in the interpretation or validity of [said] …contract...and in addition that a declaration of the rights, statuses or other legal relationships that are derived from them be pronounced." Rule 59 specifically establishes that "a contract may be interpreted before or after it has been infringed on." In the case before us, what is precisely being disputed is the interpretation of an insurance contract.  See Delgado Rodriguez vs. Rivera Silveiro, 173 D.P.R. 150, 162 (2008), in which the mechanism of the declaratory judgment was allowed in order to examine the actual contractual situation between the parties.  On the authority of this Honorable Court to interpret a written contract in which there is a disagreement in how the latter is interpreted, see Llopis vs. Arburúa, 72 D.P.R. 609 (1951); and Quiñones vs. Rodríguez, 58 D.P.R. 217 (1941).

**ANSWER:**     Chartis states that Civil Procedure Rule 59.2 speaks for itself and, therefore, denies any allegations inconsistent therewith.   In further answering, Chartis denies the remaining allegations contained in Paragraph 10 as said allegations are conclusions of law.

11.     Civil Procedure Rule 59.2 (c) allows "any proceeding in which a declaratory solution is requested, as long as a judgment or decree is able to end the controversy or clear up any uncertainty." In the case at hand, the declaratory judgment is requested specifically to end the current dispute on policy coverage that exists between the plaintiffs and the defendant.  The judgment, once issued, will be able to end said dispute and even more, will clear up the uncertainty currently existing between the parties.  Suárez vs. C.E.E., above, page 354, states that it is important, in order for a declaratory judgment to be issued, that the alleged facts show that there is a substantial controversy between the parties, that they have opposing legal interests, that prior damage to the same is not necessary, and that what is important is to have the intention to dispel the policy uncertainty and help eliminate any discord.   In the same regard, see Rafael Hernández Colón, Práctica Jurídica: Derecho Procesal Civil (Civil Procedural Law), San Juan, Ed. Michie of Puerto Rico, 1997, page 448.

**ANSWER:**     Chartis states that Civil Procedure Rule 59.2 speaks for itself and, therefore, denies any allegations inconsistent therewith.   In further answering, Chartis denies the remaining allegations contained in Paragraph 11 as said allegations are conclusions of law.

12.     In the case before us, there is no reason or motive for this Honorable Court to deny issuing and recording a declaratory judgment with regard to the dispute between the parties. Once the judgment is issued, as indicated above, this will "end the uncertainty or dispute that brought about the proceedings."  See Civil Procedure Rule 59.3.

**ANSWER:**     Chartis states that Civil Procedure Rule 59.3 speaks for itself and, therefore, denies any allegations inconsistent therewith.   In further answering, Chartis denies the remaining allegations contained in Paragraph 12 as said allegations are conclusions of law.

13.     In the case before us, all of those persons who have or allege to have some interest that can be affected by the judgment have been included as parties.   Meaning, those who have been included here as plaintiffs are W Holding Company, Inc., which as we have said is the holding company and former owner of Westernbank, and the directors and/or officers sued by the FDIC.   The insurance company who issued the policies has been included as defendant.   This has fulfilled the requirements of Civil Procedure Rule 59.5.

**ANSWER:**     Chartis admits it is an insurance company and that it issued policies to W Holding Company Inc.   In further Answering, Chartis denies the allegations contained in Paragraph 13 as said allegations are conclusions of law and/or that Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 13 and, therefore, denies the same.

14.     In the case before us, the validity of a municipal ordinance or exemption is not discussed, therefore, it is not necessary to include any municipality nor notify the Department of Justice of one.   See Civil Procedures Rules 2.13 and 59.5.

**ANSWER:**     Chartis states that Civil Procedure Rules 2.13 and 59.5 speak for themselves and, therefore, denies any allegations inconsistent therewith.   In further answering, Chartis denies the remaining allegations contained in Paragraph 14 as said allegations are conclusions of law.

15.     That in accordance with current law, when the terms of a contract are clear and leave no doubt regarding the intentions of the contracting parties, as is the case in the policy, the

parties must pay attention to and comply with the literal meaning of the clauses.  See Art. 1233 of the Civil Code, 31 L.P.R.A. section 3471.  On the other hand, if any clause of the contract should allow for different interpretations, it should be understood in the sense that is most appropriate for it be effective.   Art. 1236 of the Civil Code, 31 L.P.R.A. section 3474. Furthermore, it must not be forgotten that the policy the defendant issued in favor of the plaintiffs is a typical standard form contract and therefore any clause that presents some degree of ambiguity must be interpreted in favor of the latter rather than the former.  Remember that Art. 1240 of the Civil Code, 31 L.P.R.A. section 3478, establishes, simply and clearly, that "the interpretation of the ambiguous clauses of a contract must not favor the party that caused the ambiguity."  Puerto Rican doctrine is clear in the sense that vague or ambiguous clauses prepared by one of the parties or companies in a document signed by the parties must be interpreted against the party that prepared the, -- Cooperativa La Sagrada Familia vs. Castillo, 107 D.P.R. 405 (1978); Zequeira vs. C.R.U.V., 83 D.P.R. 878 (1961) – or that produces the printed form, -- Prieto vs. Hull Dobbs Co.  88 D.P.R. 420 (1964); Torres vs. P.R. Racing Corp., 40 D.P.R. 441 (1930) – especially in standard form contracts, -- Herrera vs. First National City Bank, 103 D.P.R. 163 (1974); and C.R.U.V. vs. Peña Ubiles, 95 D.P.R. 311 (1967) –and especially in insurance contracts.  In Barreras vs. Santana, 87 D.P.R. 227, 231 (1963), our Supreme Court told us that "it is general rule in the area of contracts that if the text of a contract is vague or ambiguous, its interpretation must not favor the party that caused this …" The following line added that "this rule is even more valid than normal in the field of insurance." On page 232 it is added that "the aforementioned necessary general rule that ambiguity in the writing of contracts must not favor the party who caused it works, as we said, more rigorously in the case of insurance contracts which are standard form contracts.  They are considered such both in a civil

law as well as in Anglo-Saxon common law." For ratification of this doctrine, see BPPR vs. Sucn. Talavera, 174 D.P.R. 686 (2008); González vs. Cooperativa de Seguros de Vida de Puerto Rico, 117 D.P.R. 659 (1986), and León Ortíz vs. Comisión Industrial, 101 D.P.R. 781 (1973).

**ANSWER:    Chartis states that those Civil Code articles and case law set forth in Paragraph 15 speak for themselves and, therefore, denies any allegations inconsistent therewith.  In further answering, Chartis denies the remaining allegations contained in Paragraph 15 as said allegations are conclusions of law.**

16.    To provide an example, we invite this Honorable Court to examine the policies and it will note that in the claims covered, at no time is any from the FDIC excluded.  It cannot be forgotten that the latter is the regulatory entity and most typically intervenes with banks, their officers and directors; and moreover, it supervises its daily operations and ensures deposits. Therefore, if one wanted to exclude from the policies any investigation or request from the FDIC, it would have been easy to anticipate this an include said exclusion, as it is very easy to predict.  Interpreting the policies as the defendant is trying to interpret them would be supporting a contradiction.  Remember that the right "to require impossible, absurd, useless or unnecessary things" does not exist." Pueblo vs. Andreu González, 105 D.P.R. 315, 321 (1976); Pueblo vs. Pagan Díaz, 111 D.P.R. 608, 622 (1981); Ramos Acosta and Others vs. Caparra Dairy, 116 D.P.R. 60, 71 No. 7 (1985); Pueblo vs. Acabá Raíces,  118 D.P.R. 369, 374 (1987).

**ANSWER:    Chartis denies the allegations contained in Paragraph 16.**

17.    A comparison of the policies shows that the coverage of the same in favor of the plaintiffs is 50 million dollars per year. This policy was extremely costly.  Expecting now, that the coverage is needed, that there is no coverage is a contradiction. Moreover, this position

violates the legal, economic and social purposes for which the policies were acquired. Soriano Tavárez vs. Rivera Anaya, 108 D.P.R. 664, 671 (1979).

**ANSWER:    Chartis denies the allegations contained in Paragraph 17.**

Statement of Facts

18.    W Holding is the holding company and former owner of Westernbank, which was a bank legally established in Puerto Rico.  The FDIC mainly regulated the banking operations of Westernbank.  Frank Stipes García, Juan C. Frontera García, Hector Del Río Torres, William Vidal Carvajal, Cesar Ruiz Rodriguez, and Pedro R. Domínguez Zayas were officers and/or directors of Westernbank.

**ANSWER:    Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 18 and therefore denies the same.**

19.    On April 30, 2010, the Office of the Commissioner of Financial Institutions of Puerto Rico (OCFI) ordered the closing and in fact closed Westernbank for alleged failure to comply with certain provisions specified in an order previously stipulated between Westernbank and the FDIC. The OCFI designated the FDIC as holder of Westernbank.

**ANSWER:    Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 19 and therefore denies the same.**

20.    The Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989), gives the FDIC, as holder of Westernbank, broad authority to submit demands in its own interest as regulatory agency and creditor, as well as claims on behalf of third party depositors and creditors, and claims to protect the public interest in the interstate banking system. In fact, as a regulatory agency, legally created and appointed, the FDIC is not limited to taking possession of the bank, but rather it takes over in all claims of "any

shareholder, member, account holder, depositor, officer, or director" of the bank. Art. 12 of the Code of the United States, Paragraph 1821 (d).

**ANSWER:    Chartis states that those codes and acts set forth in Paragraph 20 speak for themselves and, therefore, denies any allegations inconsistent therewith.   In further answering, Chartis denies the remaining allegations contained in Paragraph 20 as said allegations are conclusions of law.**

21.    On December 17, 2010, the FDIC initiated an investigation and gave notice of a lawsuit directed at various former employees, officers and/or directors of Westernbank, acting within its legal capacity. The FDIC indicated that it intends to initiate legal proceedings in the near future against the plaintiffs, employees, officers and/or directors of Westernbank. The FDIC's investigation and its express intention to bring a lawsuit against the plaintiffs is known as "the FDIC Lawsuit."

**ANSWER:    Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 21 and, therefore, denies the same.**

22.    The defendant issued the following Director Liability and Reimbursement to the Organization Insurance Policies (hereinafter, the "Policies"):

(1)    Policy Number 024-1000605, effective for the period from November 15, 2006, to November 15, 2007 ("Policy 2006-2007").  A copy of Policy 2006-2007 is attached, marked as Exhibit 1.

(2)    Policy Number 024-1000605-2, effective for the period from November 30, 2007, to November 30, 2008 ("Policy 2007-2008").  A copy of Policy 2007-2008 is attached, marked as Exhibit 2.

(3)    Policy Number 024-001001078, effective fro the period from December 31, 2008, to December 31, 2009 ("Policy 2008-2099").  A copy of Policy 2008-2009 is attached, marked as Exhibit 3.

(4)    Policy Number 024-001001291, effective for the period from December 31, 2009, to December 31, 2010 ("Policy 2009-2010). A copy of Policy 2009-2010 is attached, marked as Exhibit 4. [1]

**ANSWER:** **Chartis admits that it issued "Executive Liability and Organization Reimbursement Insurance Policies" to W Holding Company Inc., and Chartis further admits:**

    **(1)**    **Policy Number 024-1000605, was effective for the period from November 15, 2006, to November 15, 2007;**

    **(2)**    **Policy Number 024-1000605-2, was effective for the period from November 30, 2007, to November 30, 2008;**

    **(3)**    **Policy Number 024-001001078, was effective from the period from December 31, 2008, to December 31, 2009;**

    **(4)**    **Policy Number 024-001001291, was effective for the period from December 31, 2009, to December 31, 2010.**

**In further Answering, Chartis denies the remaining allegations not expressly admitted herein, and Chartis further denies that Exhibits 1, 2, 3 and 4 are true and correct copies of the policies.**

23.    One can see by reading these Policies that they are D&O policies, which provide insurance coverage for lawsuits related to supposed acts attributable to the plaintiffs while they were acting in their capacity as directors, officers, employees or staff of W Holding, and its subsidiaries, including Westernbank.

**ANSWER:** **Chartis states that the policies referenced in Paragraph 23 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

---

[1] The policies from 2006-2007, 2007-2008, 2008-2009, and 2009-2010 will be referred to collectively as the "Policies."

24.     Section 1 of each one of the policies under "COVERAGE A: DIRECTORS AND OFFICERS LIABILITY INSURANCE," provides coverage to each one of the insured as follows:

> This policy will pay the Non-Indemnifiable Loss of any Insured Person that arises from a Lawsuit brought against this Insured Person for any Unlawful Act by the Insured Person.

**ANSWER:     Chartis states that the policies referenced in Paragraph 24 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

25.     Each one of the Policies defines "Insured Person" by referring to any "Executive of an Organization," which includes any "past, present and future director, officer, trustee (except fiduciaries in cases of bankruptcy) who was duly elected or appointed." See Section 2(k) and (q) of Exhibits 1 to 4.

**ANSWER:     Chartis states that the policies referenced in Paragraph 25 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

26.     Each one of the Policies defines "Organization" as including "the Named Organization," which is W Holding, and "each Subsidiary," which is Westernbank.  See Section 2(v) of Exhibits 1 to 4.

**ANSWER:     Chartis states that the policies referenced in Paragraph 26 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

27.     Each one of the Policies defines "Lawsuit" in the sense of:

(1)     a written claim for financial, non-financial or preventive compensation;

(2)     civil, penal, administrative, regulatory or arbitration proceedings to *[obtain]* financial, non-financial or preventive compensation, initiated through: (i) notification of a lawsuit or similar document; (ii) the issuing of criminal charges, deposition or similar document (in the case of criminal proceedings); or (iii) the receipt or submission of a list of charges; or

(3)      a Petition for Investigation.

See Section 2(b) of Exhibits 1 to 4.  The Policies provide coverage and require that all losses be paid resulting from any "Lawsuit" against the directors, officers, employees or staff of Westernbank.  The term "Loss" is defined in the Policies, in part, as follows:  "Loss means damages…Defense expenses..." See Section 2(s) of Exhibits 1 to 4.

**ANSWER:   Chartis states that the policies referenced in Paragraph 27 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

28.    The Policies define the term "Defense Expenses" as follows:

> Fees, costs and expenses that are reasonable and necessary, accepted by the Insurer (including premiums for any appeal bond, seizure bond or similar bond that arises from a finding or covered judgment, but without any obligation to request or provide any of these bonds) and which arise exclusively from the investigation, valuation, defense and/or appeal of a Lawsuit against an Insured, but excluding any remuneration of any Insured Person or any Employee of an Organization. The Defense Expenses do not include fees, costs or expenses incurred before the first Lawsuit is brought against an Insured.

See Section 2(g) of Exhibits 1-4.

**ANSWER:   Chartis states that the policies referenced in Paragraph 28 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

29.    Therefore, the Policies obligate the defendant to pay for any loss, including defense expenses, within the limit of the coverage, that arise from lawsuits based on the alleged conduct of the directors, officers and/or employees of Westernbank.

**ANSWER:   Chartis states that the policies referenced in Paragraph 29 speak for themselves and, therefore, denies any allegations inconsistent therewith.**

30.    The FDIC lawsuit is a suit covered under the Policies, based on supposed conduct attributed to the directors, officers and employees of Westernbank, as defined in the policies.

**ANSWER:     Chartis denies the allegations contained in Paragraph 30.**

31.     On December 27, 2010, the current plaintiffs notified the defendant of the request for coverage under the 2009-2010 Policy, because of the FDIC lawsuit. A copy and translation of the notification of December 27, 2010 is attached and marked.

**ANSWER:     Chartis states that the Plaintiffs December 27, 2010 notification speaks for itself and, therefore, denies any allegations inconsistent therewith.   Chartis admits the December 27, 2010 letter attached as an exhibit is a true and correct copy of the said letter.**

32.     On May 2, 2011, the defendant responded to the plaintiffs, informing them that it denied coverage for the FDIC lawsuit[2].  A copy and translation of this letter of May 2, 2011, is attached and marked as Exhibit 6.

**ANSWER:     Chartis states that its May 2, 2011 response letter speaks for itself and, therefore, denies any allegations inconsistent therewith.  Chartis admits the May 2, 2011 letter attached as an exhibit is a true and correct copy of the said letter.**

33.     The plaintiffs have at all times complied with all of the terms and obligations of the Policies. This includes having paid all of the corresponding premiums, as well as having complied with all of the obligations and conditions required under these policies to obtain coverage.

**ANSWER:     Chartis denies the allegations contained in Paragraph 33.**

34.     The policies require that any dispute under the same must be resolved through mediation or arbitration, as elected by the insured.  The insured, now the plaintiffs, duly notified

---

[2] The defendant alleges that FDIC lawsuit pertains to the period of the 2006-2007 policy instead of the period from 2009-2010.  The defendant also reserves the right to deny coverage under the policy of 2009-2010.  The Plaintiffs' rights to coverage under the two policies must therefore be determined, as well as for under the policies of 2007-2008 and 2008-2009, given that the FDIC Lawsuit could be also included under these coverage periods.  As there is not difference whatsoever in the coverage or in the decisive terms of the Policies, a unified determination can be made.

the defendant that they elected to resolve this dispute through mediation, as provided in the Policies. Remember that the public policy in Puerto Rico is one aimed at promoting this mechanism. See McGregor-Doniger vs. Superior Court, 98 D.P.R. 864,869 (1970); U.C.P.R. vs. Triangle Engineering Corp., 136 D.P.R. 133, 141 {1994}. Nevertheless, in the case at hand this policy cannot be followed, since the defendant has refused to allow the dispute to be resolved through said mechanism.  See Exhibit 7, a document that proves that the defendant by its actions expressly renounced this mechanism, freely and voluntarily. This is another indication that the only mechanism which the plaintiffs have at this time to resolve the dispute between the parties is the declaratory judgment

**ANSWER:   Chartis states that the policies speak for themselves and, therefore, denies any allegations inconsistent therewith.  In further answering, Chartis denies the remaining allegations contained in Paragraph 34 as said allegations are conclusions of law.**

35.    That the plaintiffs, as of December 17, 2010, have had to incur expenses for legal representation, due to the defendant's refusal to provide coverage.

**ANSWER:   Chartis lacks sufficient information and knowledge to either admit or deny the allegations in Paragraph 35 and, therefore, denies the same.**

36.    That the defendant, in accordance with the terms and conditions of the Policies, must answer not only for the FDIC lawsuit, but for any other proceeding, including this document, that is covered under those Policies.

**ANSWER:   Chartis denies the remaining allegations contained in Paragraph 36 as said allegations are conclusions of law.**

37.     That the defendant has acted and continues to act rashly, and therefore, in accordance with Civil Procedure Rule 44, it must be obliged to pay the costs and fees for these proceedings.

**ANSWER:**     **Chartis denies the allegations contained in Paragraph 33.**

WHEREFORE, the Defendant, Chartis Insurance Company – Puerto Rico, prays that Plaintiffs Petition be dismissed, with prejudice, and that judgment be entered in its favor and against Intervening Plaintiff, including the award of costs wrongfully incurred in the defense of this matter, and for any other relief this Court deems just and appropriate.

### AFFIRMATIVE DEFENSES

NOW COMES the Defendant Chartis and for its Affirmative Defenses to Plaintiffs Petition, states as follows:

**Affirmative Defense No. 1**

1.     Chartis issued an Executive Liability and Organization Reimbursement Insurance Policy, Policy No. 024-001001291 to W Holding effective from December 31, 2009 to December 31, 2010 (the "2009-10 Policy").   Chartis also issued an Executive Liability and Organization Reimbursement Insurance Policy, Policy No. 024-1000605 to W Holding effective from November 15, 2006 to November 15, 2007 (the "2006-07 Policy")

2.     On or about December 30, 2011, the FDIC filed its Intervening Complaint – which was almost a year after the Chartis 2009-10 Policy Period expired.   The allegations set forth in the FDIC's Intervening Complaint are alleging, arising out of, based upon or attributable facts alleged in certain previously filed lawsuits, including (1) *Samuel Hildenbrand v. W Holding Company, Inc., et al.*, case no. 07-1886, filed before the United States District Court, District of Puerto Rico; (2) *Josefina Saavedra v. W Holding Company, Inc., et al.,* case no. 07-1931, filed

before the United States District Court, District of Puerto Rico; (3) *Hunter Wylie v. Frank C. Stipes, et al.,* case no. 08-1036, filed before the United States District Court, District of Puerto Rico; and (4) *Jack Kachkar, et al v. Westernbank Puerto Rico*, case no. 08-2427, removed from Florida state court to the United States District Court, District of Puerto Rico (collectively hereinafter, the "Prior Lawsuits"). The Prior Lawsuits were filed and notified by W Holding under Chartis' 2006-07 Policy.

3.      Section 7(b) of the 2006-07 Policy provides, "If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then a Claim which is subsequently made against an Insured and reported to the Insurer, alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered related to the first Claim and made at the time such notice was given."

4.      Section 5 (the Limit of Liability) of the 2006-07 Policy provides that "a Claim which is made subsequent to the Policy Period...and which, pursuant to Clause 7(b) or 7(c), is considered made during the Policy Period...shall also be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations."

5.      As a result of Section 7(b) and Section 5, the FDIC's Intervening Complaint is "alleging, arising out of, based upon or attributable to the facts alleged in" the Prior Lawsuits, "or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged in" the Prior Lawsuits, whereby the FDIC's Intervening Complaint shall be considered related to the Prior Lawsuits and made during the 2006-07 Policy and, therefore, shall be subject to one aggregate Limit of Liability under the 2006-07 Policy.

**Affirmative Defense No. 2**

1.      Section 4(i) of the 2006-07 Policy and the 2009-10 Policy contain the following Exclusion: "The insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: which is brought by, on behalf of or in the right of, an Organization…".  This exclusion is referred to as the "Insured v. Insured Exclusion."

2.      As a Receiver of Westernbank, the FDIC's claims against the directors and officers of Westernbank are "on behalf of" or "in the right of" Westernbank.

3.      Accordingly, the Insured v. Insured Exclusion in the 2006-07 or, alternatively, in the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.

**Affirmative Defense No. 3**

1.      By Endorsement, the 2006-07 Policy and the 2009-10 Policy excludes any claim alleging, arising out of, etc., Westernbank or its directors, officers and employees' "performance of professional services for others for a fee…".  This exclusion is referred to as the "Professional Services Exclusion."

2.      The directors, officers and employees of Westernbank provided loans to third parties for which Westernbank received fees.  The directors, officers and employees responsible for generating and administering these loans disregarded Westernbank's policies and procedures by approving the loans without adequate information and, therefore, violated Westernbank's policies and procedures.

3.      Accordingly, the Professional Services Exclusion of the 2006-07 Policy or, alternatively, the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.

**Affirmative Defense No. 4**

1.     By Endorsement, the 2006-07 Policy and the 2009-10 Policy specifically provides that Chartis "shall not be liable to make any payment for loss in connection with any 'claim(s)', notices, events, proceedings, investigations, or actions:  (1) arising from, in whole or in part, any of items (1) to (5) below (collectively, the 'Listed Items'); or (2) alleging in whole or in part any 'wrongful act', underlying facts, circumstances, acts or omissions in any way relating to any Listed Item(s), including, but not limited to any 'securities claim(s)' which is brought by, or on behalf of any individual(s)/entity(ies) that purchased securities of W Holdings:…LISTED ITEMS…(2)…Corporate Loan Obligations including their valuation…" and including "any claim alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any disclosure, restatement, retraction, amendment or revision of in part or in whole in:…(i) any document or statement filed or submitted or required to be filed with or submitted to the SEC or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's, 20F's or similar annual or quarterly reports); or (ii) any written or oral statement made regarding the assets, revenues, sales or financial condition of the Organization, resulting from, arising out, based upon or attributable to any Listed Item…"  This Exclusion is referred to as the "Specific Matters Exclusion."

2.     The allegations set forth in the FDIC's Intervening Complaint relate to Westernbank's loan obligations and their valuation.

3.     Accordingly, the Specific Matters Exclusion of the 2006-07 Policy or alternatively, the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.

**<u>Affirmative Defense No. 5</u>**

1.      Pursuant to the 2006-07 Policy and the 2009-10 Policy, W. Holding and its directors and officers were required to submit an application for insurance (the "Application"). Specifically, Question 9.(a) of the Application states: "No Director or Officer has knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy except as follows:"  The Insured responded "None" to Question 9.(a).

2.      The Application further states: "It is agreed that with respect to Questions 9 and 10 above, that if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage."  This Exclusion is referred to as the "Known Claim Exclusion."

3.      The FDIC's Intervening Complaint alleges misconduct by the directors, officers and employees of Westernbank that occurred well before the inception of the 2006-07 Policy inception date of November 15, 2006, including but not limited to wrongful extension of loans, ignoring FDIC's warnings and reports, and loans that were improper when made.

4.      In the alternative, the FDIC's Intervening Complaint alleges misconduct by the directors, officers and employees of Westernbank that occurred well before the inception of the 2009-10 Policy inception date of December 31, 2009, including but not limited to wrongful extension of loans, ignoring FDIC's warnings and reports, and loans that were improper when made.

5.      Accordingly, the Known Claim Exclusion in the 2006-07 Policy or, alternatively, in the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.

**Affirmative Defense No. 6**

1.     On December 17, 2010, the FDIC's counsel sent a letter to the directors and officers of Westernbank, Chartis, and others (the "FDIC Letter").   Chartis acknowledged the FDIC Letter as a "Claim" under the 2006-07 Policy (*see*, Affirmative Defense No. 1).

2.     On or about December 30, 2011, the FDIC filed its Intervening Complaint – which was almost a year after the Chartis 2009-10 Policy Period expired.   Thereafter, the FDIC filed an Amended Complaint which, for the first time, included allegations of fraudulent transfers by the director and officer defendants.   These Wrongful Acts were first alleged more than 16 months after the expiration of the 2009-10 Policy are not "related back" to the FDIC Letter and, therefore, are not covered under the Chartis Policies.

**<u>Affirmative Defense No. 7</u>**

The Chartis Policies contain a retention that must be satisfied before the policy is implicated, including $1,000,000 under the 2006-07 Policy and alternatively, $500,000 under the 2009-10 Policy.

**<u>Affirmative Defense No. 8</u>**

The Chartis Policies expressly exclude coverage for any Claim against an Insured arising out of or resulting, directly or indirectly: (1) from any gaining of any profit or advantage to which they were not entitled; (2) any payments to an Insured Person or any renumeration without the previous approval of the stockholders or members of the Organization; (3) any criminal or fraudulent act, error or omission, or any intentional or knowing violation of the law by the Insured Person.

**<u>Affirmative Defense No. 9</u>**

The Chartis Policies exclude coverage for any Claim against an Insured alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts

alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

**Affirmative Defense No. 10**

The Chartis Policies' definition of "Loss" does not include the Defense Costs, settlements or judgments being sought in the FDIC Lawsuit including, but not limited to, the causes of action for fraudulent conveyances, disgorgement, restitution, or any matters uninsurable under the law.

**Affirmative Defense No. 11**

The Chartis Policies' definition of "Insured" and/or "Wrongful Act" does not include the Defense Costs, settlements or judgments being sought in the FDIC Lawsuit including, but not limited to, the causes of action for fraudulent conveyances when said director, officer, or employee is not acting in their capacity as director, officer, or employee.

**Affirmative Defense No. 12**

The Chartis Policies do not provide coverage for any Loss to the lawful spouse or other legally recognized domestic partner if the Claim is for any actual or alleged act, error or omission of such spouse or domestic partner.

**Affirmative Defense No. 13**

The Chartis Policies' definition of "Insured" does not include the trustees of any family trust of the directors, officers, or employees.

**Affirmative Defense No. 14**

The Chartis Policies only provide coverage for a "Claim first made" during the Policy Period.  The Intervening Complaint filed by the FDIC is not a "Claim first made" during the 2007-08 Policy, the 2008-09 Policy, nor the 2009-10 Policy.

**Affirmative Defense No. 15**

The Limit of Liability under the 2006-07 Policy is $20 million.  To date, Chartis has paid or is obligated to pay millions in Defense Costs related to the *Hildenbrand* Lawsuit and the Intervening Complaint.  To the extent any further Defense Costs, settlements and/or judgments are paid related to the *Hildenbrand* Lawsuit and/or the Intervening Complaint, the Chartis 2006-07 Limit of Liability could be exhausted – under which circumstances Chartis would have no further liability under the 2006-07 Policy for either the *Hildenbrand* Lawsuit and/or the Intervening Complaint, or any other Claims under said policy.

**Affirmative Defense No. 16**

Pending final resolution of the Intervening Complaint and discovery related to the same, Chartis expressly reserves (and does not waive) any and all of its rights, remedies and defenses at law, in equity and under the policies including, but not limited to, the right to raise any of the terms, conditions, exclusions and/or endorsements to the policies as warranted.

**CHARTIS' COUNTERCLAIMS
AND CROSS-CLAIMS**

NOW COMES the Defendant Chartis, by and through its counsel, and for its Counterclaims against W Holding Company, Inc., Frank Stipes Garcia, Juan C. Frontera García, Héctor Del Río Torres, William Vidal Carvajal, Cesar Ruiz Rodríguez, and Pedro R. Domínguez Zayas (collectively, the "Counter-Defendants"), and its Cross-Claims against Marlene Cruz Caballero, and Frontera-Cruz is the Conjugal Partnership formed by Frontera and Marlene Cruz Caballero; Lilliam Diaz Cabassa, and Del Rio-Diaz is the Conjugal Partnership formed by Del Rio and Lilliam Diaz Cabassa; Gladys Barletta Segarra, and Vidal-Barletta is the Conjugal Partnership formed by Vidal and Gladys Barletta Segarra; Hannalore Schmidt Michels, and Ruiz-Schmidt is the Conjugal Partnership formed by Ruiz and Hannalore Schmidt Michels;

Sonia Sotomayor Vicenty, and Dominguez-Sotomayor is the Conjugal Partnership formed by Dominguez and Sonia Sotomayor Vicenty; Jose M. Biaggi Landron, his spouse Jane Doe, and Biaggi-Doe is the Conjugal Partnership formed by Biaggi and Jane Doe; Ricardo Cortina Cruz, his spouse Elizabeth Aldebol de Cortina, and Cortina-Aldebol is the Conjugal Partnership formed by Cortina and Elizabeth Aldebol de Cortina; Miguel A. Vazquez Seijo, his spouse Sharon McDowell Nixon, and Vazquez-McDowell is the Conjugal Partnership formed by Vazquez and Sharon McDowell Nixon; Julia Fuentes del Collado, Mario A. Ramirez Matos; Cornelius Tamboer, his wife Olga Morales Perez, and Tamboer-Morales is the Conjugal Partnership formed by Tamboer and Olga Morales Perez (collectively the "Cross-Defendants"), and states as follows:

1.      Intervening Plaintiff, the FDIC, brought captioned lawsuit against the Counter-Defendants and the Cross-Defendants and, based on Puerto Rico's direct action statute, also against Chartis and various other insurers, seeking insurance coverage for claims set forth in the captioned lawsuit (the "Intervening Complaint").  In addition, the Counter-Defendants have filed a lawsuit against Chartis (now removed and consolidated with the Intervening Complaint) wherein the Counter-Defendants seek coverage under the Chartis policies for the allegations of the Intervening Complaint.

2.      The Intervening Complaint alleges that the Counter-Defendants and the Cross-Defendants breached their duties to Westernbank thereby causing damages through various alleged acts and omissions, including but not limited to, generating and administering loans without regard for the Bank's policies and procedures by approving loans without adequate information.

3.      Chartis issued an Executive Liability and Organization Reimbursement Insurance Policy, Policy No. 024-1000605 to W Holding effective from November 15, 2006 to November 15, 2007 (the "2006-07 Policy").  Westernbank is a "Subsidiary" of W Holding and, thereby, qualifies as an "Organization" under the Policy.  A true and correct copy of 2006-07 Policy is attached hereto as Exhibit 1.

4.      Chartis also issued an Executive Liability and Organization Reimbursement Insurance Policy, Policy No. 024-001001291 to W Holding effective from December 31, 2009 to December 31, 2010 (the "2009-10 Policy").  Westernbank is a "Subsidiary" of W Holding and, thereby, qualifies as an "Organization" under the Policy.  A true and correct copy of 2009-10 Policy is attached hereto as Exhibit 2.

5.      The 2006-07 Policy and the 2009-10 Policy provide:

> *Advancement and Repayment*: Under Coverages A, B and C of this policy, except as hereinafter stated, the Insurer shall advance, excess of any applicable retention amount, covered Defense Costs, no later than ninety (90) days after the receipt by the Insurer of such defense bills.  <u>Such advance payments by the Insurer shall be repaid to the Insurer by each and every Insured Person or Organization, severally according to their respective interests, in the event and to the extent that any such Insured Persons or Organization shall not be entitled under this policy to payment of such Loss</u>.  (Emphasis added.)

Moreover, by this Court's Docket Entry Order dated July 3, 2012, this Court stated:

> ORDER GRANTING 147 Motion for Miscellaneous Relief (advance defense costs). PR law requires insurers to advance defense costs if there is even a remote possibility that a claim ultimately will be covered.  <u>This ruling is without prejudice of Chartis eventually being entitled to repayment</u>. (Emphasis added.)

6.      Based on the causes of action set forth below in this Counterclaim and Cross-Claim, there is no coverage under the Chartis policies for the Intervening Complaint and Chartis

is entitled to the repayment by the Counter-Defendants and the Cross-Defendants of all monies advanced to them related to the defense costs relating to the Intervening Complaint.

## COUNT I
### (All Counter-Defendants and Cross-Defendants)

7.     Chartis re-states and re-alleges Paragraphs 1 through 6 of this the Counterclaim and Cross-Claim as and for Paragraph 7 of Count I.

8.     On or about December 30, 2011, the FDIC filed its Intervening Complaint – which was almost a year after the Chartis 2009-10 Policy Period expired.  The allegations set forth in the FDIC's Intervening Complaint are alleging, arising out of, based upon or attributable facts alleged in certain previously filed lawsuits, including (1) *Samuel Hildenbrand v. W Holding Company, Inc., et al.*, case no. 07-1886, filed before the United States District Court, District of Puerto Rico; (2) *Josefina Saavedra v. W Holding Company, Inc., et al.,* case no. 07-1931, filed before the United States District Court, District of Puerto Rico; (3) *Hunter Wylie v. Frank C. Stipes, et al.,* case no. 08-1036, filed before the United States District Court, District of Puerto Rico; and (4) *Jack Kachkar, et al v. Westernbank Puerto Rico*, case no. 08-2427, removed from Florida state court to the United States District Court, District of Puerto Rico (collectively hereinafter, the "Prior Lawsuits").  The Prior Lawsuits were filed and notified by W Holding under the 2006-07 Policy.

9.     Section 7(b) of the 2006-07 Policy provides, "If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then a Claim which is subsequently made against an Insured and reported to the Insurer, alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged in the Claim of

which such notice has been given, shall be considered related to the first Claim and made at the time such notice was given."

10.     Section 5 (the Limit of Liability) of the 2006-07 Policy provides that "a Claim which is made subsequent to the Policy Period...and which, pursuant to Clause 7(b) or 7(c), is considered made during the Policy Period...shall also be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations."

11.     As a result of Section 7(b) and Section 5, the FDIC's Intervening Complaint is "alleging, arising out of, based upon or attributable to the facts alleged in" the Prior Lawsuits, "or alleging any Wrongful Act which is the same or related to any Wrongful Act alleged in" the Prior Lawsuits, whereby the FDIC's Intervening Complaint shall be considered related to the Prior Lawsuits and made during the 2006-07 Policy and, therefore, shall be subject to one aggregate Limit of Liability under the 2006-07 Policy.

12.     The Limit of Liability under the 2006-07 Policy is $20 million.  To date, Chartis has paid or is obligated to pay millions in Defense Costs related to the *Hildenbrand* Lawsuit and the Intervening Complaint.   To the extent any further Defense Costs, settlements and/or judgments are paid related to the *Hildenbrand* Lawsuit and/or the Intervening Complaint, the Chartis 2006-07 Limit of Liability could be exhausted – under which circumstances Chartis would have no further liability under the 2006-07 Policy for either the *Hildenbrand* Lawsuit and the Intervening Complaint, or any other Claims under said policy.

### COUNT II
**(All Counter-Defendants and Cross-Defendants)**

13.     Chartis re-states and re-alleges Paragraphs 1 through 12 of this the Counterclaim and Cross-Claim as and for Paragraph 13 of Count II.

14.     Section 4(i) of 2006-07 Policy and the 2009-10 Policy contains the following Exclusion: "The insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: which is brought by, on behalf of or in the right of, an Organization. . ."  This exclusion is referred to as the "Insured v. Insured Exclusion."

15.     As a Receiver, the claims by FDIC against the directors and officers of Westernbank are "on behalf of" or "in the right of" Westernbank.

16.     Accordingly, the Insured v. Insured Exclusion in the 2006-07 Policy or, alternatively, in 2009-10 Policy bars the coverage sought by the FDIC in its Intervening Complaint.  Consequently, Chartis is entitled to repayment of all of its Defense Costs paid to the Counter-Defendants and the Cross-Defendants and related to the Intervening Complaint.

### COUNT III
**(All Counter-Defendants and Cross-Defendants)**

17.     Chartis re-states and re-alleges Paragraphs 1 through 16 of this the Counterclaim and Cross-Claim as and for Paragraph 17 of Count III.

18.     By Endorsement, the 2006-07 Policy and the 2009-10 Policy excludes any claim alleging, arising out of, etc., Westernbank or its directors, officers and employees' "performance of professional services for others for a fee. . ."  This exclusion is referred to as the "Professional Services Exclusion."

19.     The directors, officers and employees of Westernbank provided loans to third parties for which Westernbank received fees.

20.     The directors, officers and employees responsible for generating and administering these loans disregarded Westernbank's policies and procedures by approving the loans without adequate information and, therefore, knowingly violated Westernbank's policies and procedures.

21.     Accordingly, the Professional Services Exclusion of the 2006-07 Policy or, alternatively, the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.    Consequently, Chartis is entitled to repayment of all of its Defense Costs paid to the Counter-Defendants and the Cross-Defendants and related to the Intervening Complaint.

## COUNT IV
### (All Counter-Defendants and Cross-Defendants)

22.     Chartis re-states and re-alleges Paragraphs 1 through 21of this Counterclaim and Cross-Claim as and for Paragraph 22 of Count IV.

23.     By Endorsement, the 2006-07 Policy and the 2009-10 Policy specifically provides that Chartis "shall not be liable to make any payment for loss in connection with any 'claim(s)', notices, events, proceedings, investigations, or actions:  (1) arising from, in whole or in part, any of items (1) to (5) below (collectively, the 'Listed Items'); or (2) alleging in whole or in part any 'wrongful act', underlying facts, circumstances, acts or omissions in any way relating to any Listed Item(s), including, but not limited to any 'securities claim(s)' which is brought by, or on behalf of any individual(s)/entity(ies) that purchased securities of W Holdings:…LISTED ITEMS…(2)…Corporate Loan Obligations including their valuation…"and including "any claim alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to any disclosure, restatement, retraction, amendment or revision of in part or in whole in:…(i) any document or statement filed or submitted or required to be filed with or submitted to the SEC or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's, 20F's or similar annual or quarterly reports); or (ii) any written or oral statement made regarding the assets, revenues, sales or financial condition of the Organization, resulting from, arising out, based upon or attributable to any Listed Item…"  This Exclusion is referred to as the "Specific Matters Exclusion."

24.     The allegations set forth in the FDIC's Intervening Complaint relate to Westernbank's loan obligations and their valuation.

25.     Accordingly, the Specific Matters Exclusion of the 2006-07 Policy or, alternatively, the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint.  Consequently, Chartis is entitled to repayment of all of its Defense Costs paid to the Counter-Defendants and the Cross-Defendants and related to the Intervening Complaint.

## COUNT V
### (All Counter-Defendants and Cross-Defendants)

26.     Chartis re-states and re-alleges Paragraphs 1 through 25 of this Counterclaim and Cross-Claim as and for Paragraph 26 of Count V.

27.     Pursuant to the 2006-07 Policy and the 2009-10 Policy, W. Holding and its directors and officers were required to submit an application for insurance (the "Application"). Specifically, Question 9.(a) of the Application states: "No Director or Officer has knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy except as follows:"  The Insured responded "None" to Question 9.(a).

28.     The Application further states: "It is agreed that with respect to Questions 9 and 10 above, that if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage."  This Exclusion is referred to as the "Known Claim Exclusion."

29.     The FDIC's Intervening Complaint alleges misconduct by the directors, officers and employees of Westernbank that occurred well before the inception of the 2006-07 Policy inception date of November 15, 2006, including but not limited to wrongful extension of loans, ignoring FDIC's warnings and reports, and loans that were improper when made.

30.     The FDIC's Intervening Complaint alleges misconduct by the directors, officers and employees of Westernbank that occurred well before the inception of the 2009-10 Policy inception date of December 31, 2009, including but not limited to wrongful extension of loans, ignoring FDIC's warnings and reports, and loans that were improper when made

31.     Accordingly, the Known Claim Exclusion in the 2006-07 Policy or, alternatively the 2009-10 Policy bars the coverage sought by the FDIC in the Intervening Complaint. Consequently, Chartis is entitled to repayment of all of its Defense Costs paid to the Counter-Defendants and the Cross-Defendants and related to the Intervening Complaint.

## COUNT VI
### (W Holding Company Inc.)

32.     Chartis re-states and re-alleges Paragraphs 1 through 31 of this Counterclaim and Cross-Claim as and for Paragraph 32 of Count VI.

33.     W Holding Company Inc. ("W Holding") has not filed for bankruptcy.  On information and belief, W Holding still has monies available (1) to pay as indemnification to the various individual defendants for their defense fees, costs and expenses related to the Intervening Complaint; and (2) to pay as its contractually required 20% Co-Insurance under the 2006-07 Policy for the *Hildenbrand* Lawsuit.

34.     By Endorsement, W Holding is required to pay 20% Co-Insurance for a Securities Claim.  The *Hildenbrand* Lawsuit constitutes a "Securities Claim" under the 2006-07 Policy.  W Holding has not paid its 20% Co-Insurance pursuant to the 2006-07 Policy. The Endorsement provides:

> In the event the Organization [W Holding] refuses to pay applicable coinsurance due to Financial Insolvency, then the Insurer shall commence advancing Defense Costs of Insured Persons pursuant to the other terms, conditions and exclusions of this policy, and such Insured Persons shall have no obligation to

pay coinsurance, provided that the Insurer shall be entitled to recover the amount of coinsurance applicable to such Defense Costs from the Organization [W Holding] pursuant to Clause 13. SUBROGATION.

The third paragraph of Clause 13 SUBROGATION is hereby deleted and replaced with the following:

In the event that the Insurer shall for any reason pay Indemnifiable Loss on behalf of an Insured Person, the Insurer shall have the contractual right hereunder to recover from the Organization the amount of such Loss equal to the amount of the Retention and/or coinsurance not satisfied by the Organization and shall be subrogated to the rights of the Insured Persons hereunder.

35.    W Holding has refused to pay its 20% Co-Insurance due to Financial Insolvency. On behalf of the individual Counter-Defendants and Cross-Defendants, Chartis has been paying Indemnifiable Loss[3] related to the Intervening Complaint and the Prior Lawsuits (including the *Hildenbrand* Lawsuit).  In addition, W Holding has failed to pay the 20% Co-Insurance related to the *Hildenbrand* Lawsuit.

36.    Pleading solely in the alternative, the 2009-10 Policy requires a $500,000 Retention for all Claims (other than Securities or Employment Practices Claims).  Specifically, Item 4(c) of the Declarations of the 2009-10 Policy provides: "RETENTION:…All other Claims: $500,000.00". The Intervening Complaint thereby requires a $500,000 Retention and W Holding has not yet satisfied the $500,000 retention under the 2009-10 Policy.

37.    Accordingly, Chartis seeks a judgment against W Holding (1) equal to the amount of 20% Co-Insurance that W Holding has failed to pay related to the *Hildenbrand* Lawsuit; and (2) pleading solely in the alternative, equal to the amount of the unpaid $500,000 Retention

---

[3]      The 2006-07 Policy defines "Indemnifiable Loss" as, in relevant part: "Loss for which an Organization…is permitted or required to indemnify an Insured Person pursuant to… the charter, by-laws, operating agreement or similar documents of an Organization."  For the purposes of the 2006-07 Policy, the definition further states, "[f]or the purposes of determining whether Loss constitutes Indemnifiable Loss, the Organization shall be conclusively deemed to have indemnified Insured Persons to the maximum extent that an Organization is permitted or required to provide such indemnification pursuant to… the charter, by-laws, operating agreement or similar documents of an Organization…".

under the 2009-10 Policy.  To date, Chartis has paid millions in "Indemnifiable Loss on behalf of an Insured Person" related to the *Hildenbrand* Lawsuit.

WHEREFORE, Chartis respectfully requests that this Court dismiss with prejudice the lawsuit filed by the Counter-Defendants, as well as dismiss with prejudice the FDIC's Intervening Complaint; issue a Declaration that FDIC and the Counter-Defendants and Cross-Defendants are not entitled to insurance overage under the Chartis Policies; that Chartis is entitled to repayment of all of its Defense Costs paid to the Counter-Defendants and the Cross-Defendants and related to the Intervening Complaint; that Chartis is entitled to a judgment equal to the amount of 20% Co-Insurance that W Holding has failed to pay related to the *Hildenbrand* Lawsuit; pleading solely in the alternative, that Chartis is entitled to a judgment against W Holding equal to the amount of the unpaid $500,000 Retention under the 2009-10 Policy; that Chartis is entitled to all costs associated with defending this matter; and for any other relief that this Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

**For Chartis Insurance Company**          /s/ Fernando Sabater-Clavell
**of Puerto Rico**                          **Fernando Sabater-Clavell, Esq.**

                                           /s/ Luis N. Saldaña
                                           **Luis N. Saldaña, Esq.**

                                           **Saldaña, Carvajal & Vélez-Rivé, P.S.C**.
                                           166 Constitución Avenue
                                           San Juan, P.R. 00901
                                           Tel. 787-289-9250 / Fax 787-289-9253

                                           **James K. Thurston, Esq.**
                                           **Anjali Das, Esq.**
                                           **Wilson Elser Moskowitz Edelman &**
                                               **Dicker LLP**
                                           55 W. Monroe Street, Suite 3800
                                           Chicago, IL. 60603
                                           Tel. 312-821-6125 / Fax 312-704-0550

E-mail: james.thurston@wilsonelser.com
E-mail: anjali.das@wilsonelser.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on November 7th, 2012, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of Puerto Rico using the CM/ECF system which will send notification of such filing to all counsel and parties of record**.**