IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**W HOLDING CO., INC., et al.,**

**Plaintiffs,**

**v.**                                            Civil No. 11-2271 (GAG)

**AIG INSUR. CO.**, **et al.,**

**Defendants.**

**OPINION AND ORDER**

The Federal Deposit Insurance Corporation ("FDIC") brought a fraudulent transfer claim against Ricardo Acosta-Martinez ("Acosta" or "Trustee") and Cornelius Tamboer ("Tamboer"), a former Westernbank director. (Docket No. 182.) Acosta, but not Tamboer, moved to dismiss. (Docket No. 442.) For the following reasons, the court **DENIES** the motion to dismiss at Docket No. 442.

**I.    Factual Background**

The court discussed the underlying facts of this case when ruling on several motions to dismiss. (See Docket No. 304 at 1-4.) The specific details of Acosta's motion to dismiss concern Tamboer's allegedly fraudulent transfer of $3.55 million to the "CT Family Trust." (See Docket No. 182 at 31.) The FDIC claims Tamboer transferred the money "[o]n or about December 1, 2010, over seven months after FDIC was appointed Receiver of Westernbank . . . ." (Id.) The FDIC's complaint names "Jane Doe" as the CT Family Trust's trustee. (See id.) Acosta admits he serves as Trustee for the CT Family Trust, but asserts that he was not served with process until after the court issued an opinion and order in October 2012 denying similar motions. (See Docket No. 442

**Civil No. 11-2271 (GAG)**

at 3.)

The FDIC alleges, "At the time of the asset transfers, Tamboer knew of his liabilities to FDIC arising from his grossly negligent acts and breach of fiduciary duty as a former director of Westernbank, and of his liabilities to other creditors." (Id.) The FDIC continues, "At the time of the transfers, Tamboer was a debtor of FDIC and other creditors and was insolvent in that he lacked assets sufficient to pay FDIC's claims against him. Tamboer made the transfers in fraud of FDIC." (Id.) The FDIC claims it was "injured by the transfers because they are designed so as to hinder and prevent FDIC from recovering on its claims against Tamboer. FDIC has no other remedy to recover on its claims against Tamboer." (Id. at 32.) The FDIC seeks judgment "invalidating, voiding, and rescinding the transfers under both Puerto Rico and federal law." (Id.)

The court also previously addressed the fraudulent transfer claims against other former directors. (See Docket No. 304 at 14-16) (ruling on Dominguez's and Stipes's motions to dismiss). The court denied the motions to dismiss because the FDIC sufficiently alleged facts to plausibly state a claim for relief under 12 U.S.C. § 1821(d)(17)(A), the FDIC's federal vehicle for challenging purportedly fraudulent transfers. (Id.) Acosta claims the court should dismiss the fraudulent transfer claim because the FDIC, pursuant to Puerto Rico law, does not hold the requisite "due and payable claim" against Tamboer. (See Docket No. 442 at 3.) Dismissal on this ground would merit dismissal of all pending fraudulent transfer claims.

The court did not consider Tamboer's allegedly fraudulent transfer because he did not move to dismiss it. (See id. at 15 n.4.) For reasons previously stated, which are supplemented below, the court **DENIES** Acosta's motion to dismiss at Docket No. 442. (See Docket No. 304 at 14-16.)

**II.    Motion to Dismiss Standard**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

**Civil No. 11-2271 (GAG)**

which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678-79 (quoting Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**III.   Section 1821(d)(17) Creates a Distinct Federal Cause of Action for Fraudulent Transfer**

12 U.S.C. § 1821(d)(17) gives the FDIC power to pursue fraudulent transfers against its debtors or institution-affiliated parties who make transfers with the intent to hinder, defraud, or delay recovery of debts owed to the FDIC. See 12 U.S.C. § 1821(d)(17)(A). Only three years after its codification, the First Circuit opined, "It is unclear whether . . . Section 1821(d)(17) embodies a separate federal fraudulent conveyance law, or whether it merely codifies state law." FDIC v. Anchor Props., 13 F.3d 27, 31 n.11 (1st Cir. 1994) (internal citations omitted) (internal quotation marks omitted). No First Circuit case since Anchor Properties has elucidated whether Section 1821(d)(17) creates a distinct federal right of action or looks to state law for its application.[1]

---

[1] The Trustee points to FDIC v. Houde, in which the First Circuit interpreted 12 U.S.C. § 1821(d)(2)(A) as a federal scheme that uses state law to show "its entitlement to sue on a transferred

3

**Civil No. 11-2271 (GAG)**

asset like [a] Note." 90 F.3d 600, 604 (1st Cir. 1996). The First Circuit relied on Supreme Court precedent in holding that "matters left unaddressed in [Section 1821(d)] are controlled by state law." Id. (citing O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994)). In Houde, however, the First Circuit interpreted Section 1821(d)(2)(A), not Section 1821(d)(17)(A), and O'Melveny & Myers provides for application of "state law *except where some provision in the extensive framework of [§ 1821(d)] provides otherwise*." 512 U.S. at 87 (emphasis added). Section 1821(d)(17)(A) creates such a framework:

> The Corporation, as conservator or receiver for any insured depository institution, and any conservator appointed by the Comptroller of the Currency may avoid a transfer of 1) any interest of 2) an institution-affiliated party, or any person who the Corporation or conservator determines is a debtor of the institution, in property, or any obligation incurred by such party or person, 3) that was made within 5 years of the date on which the Corporation or conservator was appointed conservator or receiver 4) if such party or person voluntarily or involuntarily made such transfer or incurred such liability 5) with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.

12 U.S.C. § 1821(d)(17)(A) (numbers added). Sometimes, the elements of state fraudulent transfer laws mirror Section 1821(d)(17)(A). In such cases, courts refrain from determining whether a separate federal regime exists or state law governs. See Anchor Props., 13 F.3d at 31 n.11 ("Because we can see no material difference between the [Massachusetts state and federal fraudulent transfer laws], our conclusions apply with equal strength under either law."). Puerto Rico fraudulent transfer law, however, does not parallel Section 1821(d)(17). While the federal law permits the FDIC to deem any party a debtor, the Trustee notes and the previous opinion and order explains that a party must be a true creditor with a due and payable claim before bringing a fraudulent transfer law. (See Docket No. 304 at 14-16.) Regardless, the court finds that Congress clearly meant to distinguish the FDIC's power to pursue a fraudulent transfer claim from Puerto Rico's fraudulent transfer scheme.

The Trustee also cites RTC v. Spagnoli to substantiate that state law governs Section 1821(d)(17) claims. 811 F. Supp. 1005, 1016 (D.N.J. 1993). However, the Spagnoli court simply *used* state law to interpret the elements of the plainly worded federal regime. Id. The court even noted the distinction between New Jersey fraudulent transfer law and Section 1821(d)(17). See id. at 1016 n.4 ("Under New Jersey law, once the Court finds that the transfers were made with intent to hinder, delay, or defraud . . . the transfers can be set aside and the Court need not investigate whether value was given," while explaining that the federal regime burdens the transferee "to provide that value was given for the transfer.") (internal citations omitted) (internal quotation marks omitted). The court merely used state jurisprudence clarifying how to "prove that value was given for" a transfer under Section 1821(d)(17). Id. at 1016.

**Civil No. 11-2271 (GAG)**

The benefits of the plain meaning of the statute and nearly two decades of persuasive jurisprudence, however, allow the court to conclude that Section 1821(d)(17) creates a distinct federal framework.

The District of Columbia compiled the opinions of various courts in finding, generally, that federal law governs the FDIC's rights and defenses against it. See Linde Thomson v. RTC, 5 F.3d 1508, 1513 n.5 (D.C. Cir. 1993). The court cited several cases supporting that federal law controls the rights of the FDIC. For example, state law only guides federal courts after federal law has been exhausted, the notion that "federal law controls" is not merely jurisdictional; rather, federal courts are not bound by state law, federal law governs questions involving rights of the government arising under nationwide federal programs, and federal law governs the application of defenses against the FDIC. Id. (citing cases).

Within the specific context of Section 1821(d)(17), the statute plainly establishes a navigable framework. The FDIC "may avoid a transfer of *any interest* of an institution-affiliated party, or *any person who the Corporation or conservator determines* is a debtor of the institution." 12 U.S.C. § 1821(d)(17)(A) (emphasis added). Congress, in no uncertain terms, gave the FDIC the ability to classify a party as a debtor. "We have consistently held that when the plain meaning of a statute is clear, we are not to look beyond that text to discern legislative intent." Palmiere v. Nynex Long Distance Co., 437 F.3d 111, 115 (1st Cir. 2006). Because the court accepts as true all of the FDIC's well-pleaded allegations at this stage, and the FDIC sufficiently pleads facts indicating that Tamboer is a debtor, the FDIC's claims withstand the motion to dismiss. (See Docket No. 182 at 22, 31-32.)

Several courts agree that the plain meaning of the text grants the FDIC vast authority. "There is no requirement in [1821(d)(17)] that [the defendant] be a debtor with respect to any particular transfer. Rather, the FDIC may avoid an intentionally fraudulent transfer of *any person* who the FDIC determines is a debtor of the institution." Jahn v. FDIC, 828 F. Supp. 2d 305, 314 (D.D.C. 2011) (citing Section 1821(d)(17)(A)) (emphasis added). The Ninth Circuit held, "Subsection (17) explicitly authorizes the avoidance of fraudulent transfers involving banking institutions. It is

**Civil No. 11-2271 (GAG)**

obvious that the thrust of this provision is to recover transactions which defraud [the FDIC]," implying broad coverage under the statute. FDIC v. Garner, 125 F.3d 1272, 1278 (9th Cir. 1997). The Tenth Circuit stated, "The text of [Section] 1821(d)(17) . . . evidences Congress' clear intent to *augment* the [FDIC]'s ability to avoid fraudulent conveyances . . . ." RTC v. Cruce, 972 F.2d 1195, 1199 (10th Cir. 1992) (holding Section 1821(d)(17) broadened the FDIC's authority while expressing confusion over whether federal or state law applied) (emphasis added). The Second Circuit opined that Section 1821(d)(17) affords the FDIC expansive authority to prohibit fraudulent transfers. See In re Gimbel, 77 F.3d 593 602 (2d. Cir. 1996) ("The statute clearly authorizes the FDIC to avoid *any transfer* made by Gimbel with the intent to defraud the FDIC. Thus, the FDIC's investigative powers extend to *any* transfer.") (emphasis added). The Sixth Circuit interpreted Section 1821(d)(17) to read that the FDIC "has broad authority to operate institutions in a way that will place them on firm ground as quickly as possible." RTC v. Chesire Mgmt. Co., 18 F.3d 330, 335 (6th Cir. 1994). The court agrees with these perspectives. Although state law may assist a reviewing court with analyzing certain federal elements, see RTC v. Spagnoli, 811 F. Supp. 1005, 1016 (D.N.J. 1993), Section 1821(d)(17) is a distinct federal scheme. Requiring the FDIC to hold a due and payable claim against Tamboer before declaring him a debtor would "frustrate the purpose" of Section 1821(d)(17)(A). McClellan v. Chipman, 164 U.S. 347, 357 (1896).

      The FDIC seeks to recover the transfer of $3.55 million to Tamboer's family trust. It deemed Tamboer a debtor, claiming he lacks the requisite liquidity to satisfy his liability for allegedly grossly negligent loans he approved while leading Westernbank. (See Docket No. 182 at 22.) The FDIC alleges Tamboer transferred the funds on December 1, 2010, just seven months after the FDIC became Westernbank's receiver, slightly over a year before the FDIC filed this case, and after a separate case was filed alleging negligence against the Westernbank directors and officers. (See Docket No. 182 at 31-32); see also Wylie v. Stipes, 797 F. Supp. 2d 183 (D.P.R. 2012) The FDIC asserts that Tamboer transferred this money because he anticipated suit. (Id.) These allegations, taken as true, comprise a confluence of badges of fraud that plausibly entitle the FDIC to relief under Section 1821(d)(17)(A). See Anchor Props., 13 F.3d at 32 (identifying actual or threatened

**Civil No. 11-2271 (GAG)**

litigation, a purported transfer of all or substantially all property, insolvency or other unmanageable indebtedness, and a special relationship between debtor and transferee as badges of fraud). The Trustee's motion to dismiss the federal fraudulent transfer claim is **DENIED**.

### IV. Fraudulent Transfer Claims Under Puerto Rico Law

The FDIC's amended complaint alleges fraudulent transfer under Puerto Rico law as well. (See Docket No. 182 at 32.) As discussed in a prior opinion and order, ripeness questions persist. (See Docket No. 304 at 15-16.) The court refrains from adjudicating this claim at this time.

### V. Conclusion

For the abovementioned reasons, the court **DENIES** the Trustee's motion to dismiss at Docket No. 442.

**SO ORDERED.**

In San Juan, Puerto Rico this 8th day of May, 2013.

/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge

7