1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**W HOLDING CO., INC., et al.,**

**Plaintiffs,**

**v.**

**AIG INSUR. CO., et al.,**

**Defendants.**

**Civil No. 11-2271 (GAG)**

## MEMORANDUM OPINION

The Federal Deposit Insurance Corporation ("FDIC") brought a fraudulent transfer claim against Cornelius Tamboer ("Tamboer") and Ricardo Acosta-Martinez, Tamboer's family trust's trustee ("Acosta" or "Trustee").  (Docket No. 182.)  Acosta, but not Tamboer, moved to dismiss.  (Docket No. 442.)  The court denied the motion to dismiss.  (Docket No. 486.)  Acosta requests the court to certify the matter to the United States Court of Appeals for the First Circuit for interlocutory appeal.  (Docket No. 507.)  For the reasons stated below, the court **DENIES** Acosta's motion for certification at Docket No. 507.

## I.    Factual Background

The court discussed the underlying facts of this case when ruling on several motions to dismiss and regurgitates only the pertinent facts it used in denying Acosta's motion to dismiss.  (See Docket Nos. 304 at 1-4; 486 at 1-2.)  The specific details of Acosta's motion to dismiss concern Tamboer's allegedly fraudulent transfer of $3.55 million to the "CT Family Trust."  (See Docket No. 182 at 31.)  The FDIC claims Tamboer transferred the money "[o]n or about December 1, 2010, over seven months after FDIC was appointed Receiver of Westernbank . . . ."  (Id.)  The FDIC's

**Civil No. 11-2271 (GAG)**

1   complaint names "Jane Doe" as the CT Family Trust's trustee.  (See id.)  Acosta admits he serves

2   as trustee for the CT Family Trust, but asserts that he was not served with process until after the

3   court issued an opinion and order in October 2012 denying similar motions.  (See Docket No. 442

4   at 3.)

5          The FDIC alleges, "At the time of the asset transfers, Tamboer knew of his liabilities to FDIC

6   arising from his grossly negligent acts and breach of fiduciary duty as a former director of

7   Westernbank, and of his liabilities to other creditors."  (Id.)  The FDIC continues, "At the time of

8   the transfers, Tamboer was a debtor of FDIC and other creditors and was insolvent in that he lacked

9   assets sufficient to pay FDIC's claims against him.  Tamboer made the transfers in fraud of FDIC."

10  (Id.)  The FDIC claims it was "injured by the transfers because they are designed so as to hinder and

11  prevent FDIC from recovering on its claims against Tamboer.  FDIC has no other remedy to recover

12  on its claims against Tamboer."  (Id. at 32.)  The FDIC seeks judgment "invalidating, voiding, and

13  rescinding the transfers under both Puerto Rico and federal law."  (Id.)

14         The court also previously addressed the fraudulent transfer claims against other former

15  directors.  (See Docket No. 304 at 14-16) (ruling on Dominguez's and Stipes's motions to dismiss).

16  The court denied the motions to dismiss because the FDIC sufficiently alleged facts to plausibly state

17  a claim for relief under 12 U.S.C. § 1821(d)(17)(A), the FDIC's federal vehicle for challenging

18  purportedly fraudulent transfers. (Id.) Acosta claims the court should dismiss the fraudulent transfer

19  claims because the FDIC, pursuant to Puerto Rico law, does not hold the requisite "due and payable

20  claim" against Tamboer.  (See Docket No. 442 at 3.)  The court denied the motion to dismiss.

21  (Docket No. 486.)

22  **II.    Interlocutory Appeal**

23         Acosta seeks interlocutory appeal of the denial pursuant to 28 U.S.C. § 1292(b). The statutes

24  provides:

25              When a district judge, in making in a civil action an order not
26              otherwise appealable under this section, shall be of the opinion that
                such order involves a controlling question of law as to which there is
27              substantial ground for difference of opinion and that an immediate

28                                          2

**Civil No. 11-2271 (GAG)**

> appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).  The crux of the inquiry is whether there exists substantial ground for difference of opinion on an issue whose reduction determines a controlling question of law.

**III.    Acosta's Motion for Certification is Denied**

The court finds there exists no substantial ground for difference of opinion as to a controlling question of law.  See 28 U.S.C.  § 1292(b).  Acosta contends that interpreting 12 U.S.C. § 1821(d)(17), the FDIC's federal vehicle for pursuing fraudulent transfer claims, requires the court to follow state-based fraudulent transfer principles rather than a unique federal structure created by the statute itself.  If the court must follow state (i.e., Puerto Rico) fraudulent transfer law when interpreting Section 1821(d)(17), Acosta maintains, then the FDIC may not bring a fraudulent transfer claim until Acosta and the D&O's are formally adjudged to be debtors with a due and payable debt.[1]

Acosta asks the court to certify to the First Circuit the question of whether state law dictates interpretation of Section 1821(d)(17).  The court, however, concludes that this would be a frivolous exercise because Section 1821(d)(17)'s broad grant of authority, discussed in the court's denial of Acosta's motion to dismiss, forecloses reliance on Acosta's interpretation of Puerto Rico fraudulent transfer law.  No court has or should interpret the federal statute to prohibit the FDIC from pursuing an allegedly fraudulent transfer until after adjudication of the underlying gross negligence claims. (See Docket No. 486.)

---

[1]    The court notes the FDIC opposes this interpretation of Puerto Rico fraudulent transfer law.  (See generally Docket No. 524.)

3

**Civil No. 11-2271 (GAG)**

Whether a unique fraudulent transfer scheme exists under Section 1821(d)(17) or whether a court must rely principally on state fraudulent transfer law is a much closer question.  But even if the First Circuit were to decide that state law dictates interpretation of Section 1821(d)(17), it would be an error of law to find that Puerto Rico's fraudulent transfer laws are the correct laws to apply.  Because Acosta argues that application of Puerto Rico law would dictate the outcome of this case, and because the court finds no court should reconcile Section 1821(d)(17) with Acosta's interpretation, the court denies the motion to certify for interlocutory appeal at Docket No. 507.

**IV.    Conclusion**

      For the abovementioned reasons, the court **DENIES** the Trustee's motion for certification at Docket No. 507.

      **SO ORDERED.**

      In San Juan, Puerto Rico this 28th day of June, 2013.

/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge

4