IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF
WESTERNBANK PUERTO RICO,

Plaintiff intervenor,

v.

FRANK C. STIPES et al.

CIVIL ACTION NO. 11-2271-GAG

## MOTION TO QUASH SUBPOENA
## FOR TAKING OF DEPOSITION AND PRODUCTION OF DOCUMENTS

COMES NOW Banco Popular de Puerto Rico ("BPPR"), through the undersigned counsel, and, without submitting to the jurisdiction of the Court, moves to quash a subpoena for taking of deposition and production of documents served by a group of defendants in this lawsuit. The grounds for this motion are as follows:

### I. INTRODUCTION

On April 5, 2013, certain former directors and/or officers of Westernbank Puerto Rico ("Westernbank") – *i.e.*, Frank C. Stipes, Juan C. Frontera, Héctor L. del Río, William M. Vidal, César A. Ruiz, Pedro R. Domínguez, their spouses, conjugal partnerships and trustees (collectively, the "D&Os") – served upon BPPR's parent company, Popular, Inc. ("Popular"), a subpoena for production and documents in this action (the "First Subpoena," attached hereto as Exhibit A). Schedule A to the First Subpoena contained 52 individual requests, including but not limited to documents and information concerning Popular's interest in acquiring certain Westernbank assets; its communications with the FDIC and others concerning that interest; the assisted transaction (effective April 30, 2010) pursuant to which BPPR acquired certain assets and assumed certain deposit liabilities of Westernbank from the FDIC, as Receiver of Westernbank (the "Transaction"); Popular's internal valuation and analyses of the assets; and

its negotiations and agreements with the FDIC and others. The D&Os attached to the subpoena a copy of the Second Amended and Restated Complaint in Intervention ("SARCI") filed by the FDIC, as Receiver of Westernbank ("FDIC-R").

Popular timely objected to the First Subpoena. (See letter dated April 19, 2013, attached hereto as Exhibit B.) It noted that the FDIC's claims in the SARCI essentially concern the acts and omissions of the D&Os between January 28, 2004 and November 19, 2009, in connection with the approval and administration of four commercial real estate loans, ten construction loans and seven asset-based loans (collectively, the "Loss Loans"). SARCI ¶ 3. On April 30, 2010 – more than five months after the end of said period – BPPR acquired certain assets and assumed certain deposit liabilities of Westernbank from FDIC-R pursuant to the Transaction. However, most of the documents and information requested by the First Subpoena had no bearing on the claims against the D&Os relating to their approval and administration of the Loss Loans from January 28, 2004 through November 19, 2009. Thus, among other objections, the First Subpoena was grossly overbroad and sought documents that were not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Further, the response to the First Subpoena noted that, out of the 21 Loss Loans, BPPR had acquired only two: a construction loan to Plaza CCD Development Corporation ("Plaza CCD") and certain assets related to an asset-based loan to Intercoffee, Inc. ("Intercoffee"). Thus, Popular agreed to produce documents in its possession, custody or control created between January 28, 2004 and November 19, 2009 concerning the Plaza CCD loan or the relevant Intercoffee assets. In fact, Popular produced to the D&Os 5,835 pages of responsive documents. (See letter attached hereto as Exhibit C.)

The D&Os expressed their disagreement with Popular about the relevance of the other documents requested by the First Subpoena and insisted that they be produced. (See letter dated May 24, 2013, attached hereto as Exhibit D.) Popular replied, maintaining its position that the other documents requested were beyond the scope of the claims in the SARCI and that the

- 2 -

D&Os had failed to show the reasonableness of the subpoena or the relevance of each of the requests therein. See *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.RD. 44 (S.D.N.Y. 1996). (See letter dated June 6, 2013, attached hereto as Exhibit E.) The D&Os never responded to said letter, nor did they seek judicial intervention to compel production of the other documents requested.

Nonetheless, on September 11, 2013, the D&Os served BPPR with another subpoena, not only for production of documents, but also for video deposition (the "Second Subpoena," attached hereto as Exhibit F). The Second Subpoena seeks many of the same types of documents as the First Subpoena, despite the objections already raised thereto. (See id., Schedule B.) Indeed, many of the requests for documents are identical to requests in the First Subpoena.[1] Moreover, the D&Os now seek to depose one or more BPPR representatives with respect to purported matters that are described in substantially the same terms as the categories of documents requested. (Compare id., Schedules A and B.)

For the reasons set forth below, BPPR hereby moves to quash the Second Subpoena.

*First*, as noted above, BPPR acquired only two of the 21 Loss Loans at issue in this action. In response to the First Subpoena, it already produced to the D&Os all documents – 5,835 pages – created between January 28, 2004 and November 19, 2009 concerning the Plaza CCD loan and the relevant Intercoffee assets. Moreover, without waiving any of its objections to the First or Second Subpoenas, BPPR will produce documents created after

---

[1] Many of the requests in the Second Subpoena are identical or substantially similar to the requests in the First Subpoena. For example, request no. 3 in the Second Subpoena ("All documents relating to Project Themis") is almost identical to request no. 39 in the First Subpoena. Similarly, request no. 4 in the Second Subpoena ("All documents relating to any intentions, plans and communications relating to the closure, seizure, termination....of Westernbank or other banks in Puerto Rico...") seeks the same documents as requests nos. 38 and 40 in the previous one. Similarly, request no. 11 in the Second Subpoena ("All documents relating to any agreements and communications between Banco Popular and the FDIC, OCFI, or the Board of Governors, including, but not limited to, any Purchase and Assumption Agreements, Shared Loss Agreements, and Valuation Appreciation Instruments relating to Westernbank or any Property formerly held by Westernbank") is essentially a compilation of requests nos. 2,3,4,5,6,7,8,11,12,13,14,31,32 and 33 in the previous one.

November 19, 2009 concerning the Plaza CCD loan and the Intercoffee assets. This production will contain documents responsive to the First Subpoena and requests nos. 1, 2, 4, 6, 8, 9, 10, 11, 12, 14, 15 and 16 of the Second Subpoena. With this further production, BPPR will have produced to the D&Os all relevant non-privileged documents in its possession, custody and control concerning the two Loss Loans that it acquired from Westernbank.

Nothing more should be required from non-party BPPR in this case. BPPR acquired from Westernbank more than 50,000 loan accounts and more than 20,000 credit card accounts, and received more than 20,000 boxes of documents, 505 files and 30 computer servers. It would be an overwhelming task – particularly for a non-party – to review all that information. That kind of burden and expense by far outweighs the likely benefit of discovery, given that the claims in this action are limited to the Loss Loans and that BPPR acquired only two of them. The Second Subpoena should be quashed.

*Second*, several of the documents requested in the Second Subpoena (e.g., nos. 1-4 and 7) seek documents that were in Westernbank's files and databases, which documents the FDIC likely produced to the D&Os already. The undersigned counsel recently contacted counsel for the FDIC with respect to the documents produced to the D&Os in this case. The FDIC's counsel, George Denegre, informed the undersigned that his client had produced over two million documents from Westernbank's files and databases. While BPPR could have received the original or copy of some of those same documents in connection with the Transaction, it would be unduly burdensome and wholly unjustified for BPPR to have to devote potentially hundreds of hours to reviewing the records obtained from Westernbank in order to identify documents responsive to the D&Os' overbroad requests. Thus, BPPR should not have to produce any documents that the D&Os already obtained, or can obtain, from the FDIC or any other source. See Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery sought if determined to be "unreasonably cumulative duplicative" or that it "can be obtained from some other source that is more convenient, less burdensome, or less expensive"), (ii) (court must limit discovery

sought if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (affirming the district court's order quashing a non-party subpoena, stating that it would not allow the requesting party "to go on a 'fishing expedition,' with the mere 'hope' that it will obtain [the requested] information, without a "shown[ing] that the information sought from [the non-party] would be anything but cumulative or duplicative").

*Third*, to the extent that the documents pertaining to Westernbank are the property of FDIC in its corporate capacity, BPPR is barred by federal regulation from disclosing the same. See 12 C.F.R. § 309.6-.7.

*Fourth*, the requests seek information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and they are vague, ambiguous, overbroad, unduly burdensome, oppressive and/or harassing. For example, the Second Subpoena broadly defines "Property" as "any claim, loan, credit line, asset, liability, or interest." Eight of the seventeen documents requests (nos. 4, 8-13, 16) then use that term to require production virtually any and all documents relating to "Property formerly held by Westernbank" or BPPR's acquisition of "Westernbank Property." BPPR acquired from Westernbank more than 50,000 loan accounts and more than 20,000 credit card accounts – to name just two types of "Property" covered by the D&Os' requests. Clearly, said requests not only seek information that is irrelevant in this case, but they are grossly overbroad and it would be unduly burdensome and oppressive for BPPR to review tens of thousands of records to determine if there is some responsive information or documents. Again, BPPR acquired only two of the Loss Loans and should not have to produce documents concerning any loans that are not at issue here.

*Fifth*, the requests would encompass documents or information that are expressly or impliedly confidential or proprietary in nature, or that constitutes protected commercial, financial and/or trade secret information, or is protected from disclosure by the attorney-client privilege,

the attorney work-product doctrine, the certified public accountant-client privilege, or other applicable privilege or restriction upon discovery (e.g., nos. 4, 6, 8, 9, 10, 12, 15 and 16).

*Finally*, because the Second Subpoena describes the matters for examination (Schedule A) using essentially the same language as the requests for production (Schedule B), the deposition subpoena also should be quashed.

## II. ARGUMENT

### A. As to the Request for Production

Under Rule 45, a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). In determining whether a subpoena subjects a non-party to undue burden, courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; . . . (6) the burden imposed[; and (7)] the expense and inconvenience to the non-party." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). See also *LSI Corp. v. Vizio, Inc.*, 2012 WL 1926924 (D. Mass., May 24, 2012) (same); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs[.]") (citations omitted).

As shown below, essentially all of these factors are met here. Accordingly, BPPR respectfully submits, the Second Subpoena must be quashed.

#### Requests Nos. 1 and 2 Are Vague and Overbroad

Request No. 1 calls for "[a]ll documents relating to the facts and allegations in the Complaint." Ex. F, Sch. B, at 8. Similarly, Request No. 2 calls for "[a]ll documents relating to the facts, allegations, defenses, and responses in the Answers and Affirmative Defenses" of the six D&Os. *Id.* These boilerplate requests are improperly vague and overly broad, as they do

not comply with the reasonable particularity standard of Rule 34(b)(1)(A).[2] See *Sewell v. D'Alessandro & Woodyard, Inc.*, 2011 WL 843962, at *2 (M.D.Fla., Mar. 8, 2011) (ruling as overbroad a request for "[a]ll documents concerning any of the allegations set forth in the Complaint"); *Awad v. CICI Enterprises*, 2006 WL 4824477, *1 n.1 (M.D.Fla., Nov. 20, 2006) (holding that "[a] request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for . . . identification and production of responsive documents"). They must be quashed.

### Request No. 3 Is Overbroad

Request No. 3 calls for "[a]ll documents relating to Project Themis." Ex. F, Sch. B, at 8. On information and belief, Project Themis (a term not defined in the Second Subpoena) was the FDIC's project that culminated with the closure of Westernbank and other Puerto Rico banks and the sale of certain of their assets. Any such documents that BPPR may have in its possession would belong to FDIC in its corporate capacity and cannot be produced without its permission. Also, this request is grossly overbroad, as arguably it encompasses each and every document generated by any person or entity since the beginning of that project through the present which has to do with the project itself, the results thereof or otherwise involves, implicates or alludes to the project. Searching for such documents would be a monumental task. Thus, this request must be quashed. See Fed. R. Civ. P. 26(b)(1); *Wiwa*, 392 F.3d at 820 (noting that a subpoena is overbroad if it seeks the discovery of irrelevant information); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (same).

### Requests Nos. 4, 8, 9, 10, 12, 13 and 16 Are Overbroad and Unduly Burdensome

---

[2] The "reasonable particularity" standard of Rule 34(b)(1)(A) is applicable to a subpoena duces tecum pursuant to Rule 45(a)(1)(D). See *United States v. Santiago-Lugo*, 904 F. Supp. 43, 47 (D.P.R. 1995) ("Rule 45 is closely related to the discovery rules and is designed to work in synchronization with the civil discovery rules, whether it be depositions, Fed.R.Civ.P. 30, or requests for production of documents, Fed.R.Civ.P. 34, against parties and non-parties."); *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority*, 79 F.R.D 72, 82 (D.P.R. 1978) (applying Rule 34(b)'s "reasonable particularity" standard to a *subpoena duces tecum*); Fed. R. Civ. P. 45 advisory committee's notes (the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules").

Requests Nos. 4, 8, 9, 10, 12, 13 and 16 request different types of information concerning "Property" formerly held by Westernbank. See Ex. F, Sch. B, at 8-10. The Second Subpoena defines "Property" to mean "any claim, loan, credit line, asset, liability, or interest." Ex. F, Sch. B, at 5. Requests Nos. 4, 8, 9, 10, 12, 13 and 16 are clearly overbroad because they inquire into matters beyond the claims and defenses in this action. This action concerns acts and omissions of the D&Os in connection with the approval and administration of the Loss Loans from January 28, 2004 through November 19, 2009 and the resulting losses. The D&Os' defenses are addressed at the FDIC's claims relating to the Loss Loans, of which BPPR acquired only the Plaza CCD loan and the Intercoffee assets. Information concerning "any claim, loan, credit line, asset, liability, or interest" formerly held by Westernbank *unrelated to the Loss Loans* bears absolutely no relation to any of those claims or corresponding defenses, and are not reasonably calculated to lead to the discovery of admissible evidence. As such, Requests Nos. 4, 8, 9, 10, 12, 13 and 16 must be quashed. See Fed. R. Civ. P. 26(b)(1); *Wiwa*, 392 F.3d at 820; *Gonzales*, 234 F.R.D. at 680.

Request No. 4 also seeks "documents relating to any intentions, plans and communications . . . relating to the consolidation of the banking industry in Puerto Rico," for the period January 2004 and the present." Ex. F, Sch. B, at 8 & 6. This request is vague as the term "consolidation of the banking industry" is not defined anywhere in the Second Subpoena. To the extent that such term could be deemed to refer to the closing of FDIC-insured banks in Puerto Rico between January 2004 and the present, the request is also overbroad because it seeks information which clearly is not relevant to any claim or defense in this action, and not reasonably calculated to lead to the discovery of admissible evidence. For example, during the referenced time-period, three FDIC-insured banks closed in Puerto Rico, all on April 10, 2010: R-G Premier Bank of Puerto Rico, Eurobank and Westernbank. See http://www.fdic.gov/bank/individual/failed/banklist.html. This action bears absolutely no relation to R-G Premier Bank of Puerto Rico or Eurobank. Further, information concerning

"consolidation of the banking industry" in Puerto Rico after April 10, 2010 is wholly irrelevant, because no FDIC-insured banks have closed in Puerto Rico after that date.

Additionally, even if any information about the closing of Westernbank *unrelated to the Loss Loans acquired by BPPR* could be marginally relevant to any claim or defense in this action, the burden and expense to produce that information far outweighs its likely benefit. For example, any email forwarding news concerning the closing or consolidation of banks in Puerto Rico would be responsive to Request No. 4. A good amount of such news came out on or around April 30, 2010.[3] It is conceivable that some of BPPR's thousands of employees forwarded such news to co-workers and colleagues. This type of information clearly is not important for the resolution of any of the issues in this case, yet BPPR would be forced to gather that information and review it to comply with the D&Os' request. As such, Request No. 4 must be quashed. See Fed. R. Civ. P. 26(b)(2)(C) (the court must limit the extent of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of the discovery in resolving the issues")[4]; *City of Greenville v. Syngenta Crop Protection, Inc.*, 2011 WL 5118601, *3 (C.D. Illinois, October 27, 2011) ("To determine the existence of undue burden [under Rule 45], this Court compares the burden of compliance with the benefit of production of the material sought."); *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir 1989) (litigants "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up").

### Request No. 5 Is Overbroad and Irrelevant

---

[3] See, e.g. http://www.reuters.com/article/2010/04/29/puertorico-banks-idUSN2922269220100429; http://cbonlinepr.com/prnt_ed/news02.php?nw_id=4522&ct_id=3; http://www.elnuevodia.com/fdicordenaelcierrede3bancosdelpatio-695877.html.

[4] A subpoena pursuant to Rule 45 is subject to the limits imposed by Rule 26. See *Sterling Merchandising, Inc. v. Nestle, S.A.*, 2008 WL 1767092, at *1 (D. Puerto Rico, April 15, 2008) ("Fed.R.Civ.P. 45 must work in harmony with Rule 26, and in line with its purpose to discover all relevant information."); Fed. R. Civ. P. 45 advisory committee's notes (stating that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules").

Request No. 5 seeks "[a]ll documents relating to Banco Popular's plans, intentions and actions to eliminate or reduce competition from Westernbank." Ex. F, Sch. B, at 8. This request asks for information that is not germane to any claim or defense in this case and not reasonably calculated to lead to the discovery of admissible evidence. As such, it is overbroad. See Fed. R. Civ. P. 26(b)(1); Wiwa, 392 F.3d at 820; Gonzales, 234 F.R.D. at 680. Regardless, Banco Popular never had any "plans or intentions," and never took any "actions," "to eliminate or reduce competition from Westernbank."

### Requests Nos. 6, 7 and 11 Are Overbroad, Unduly Burdensome and Harassing

Requests Nos. 6, 7 and 11 contain the phrase "including, but not limited to." This phrase makes the requests overly broad and must be stricken. See Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 225 (D.C. 2005) (striking phrase "including, but not limited to" in a Rule 30(b)(6) topics designation, because "[l]isting several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all");[5] Dongguk Univ. v. Yale Univ., 270 F.R.D. 70, 76-77 nn. 1-2 (D. Conn. 2010) (same).

Striking the objectionable phrase does not make the requests proper, however, because BPPR would be left to try to determine what the redacted requests actually ask for. Accordingly, these requests should also be quashed. See Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 696 (D. Nevada 1994) (holding that non-party should not be forced to determine the intention behind a vague and ambiguous request in a subpoena). Alternatively, they must be quashed because they are overbroad and ask for information that is not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence.

---

[5] The court in Tri-State Hosp. based its decision on Rule 30(b)(6)'s purpose of giving "the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition." 226 F.R.D. at 125. This is the same purpose behind Rule 34(b)(1)(A)'s "reasonable particularity" requirement – which is also a requirement of Rule 30(b)(6). See Santiago-Lugo, 904 F. Supp. at 47 ("Rule 45 is closely related to the discovery rules and is designed to work in synchronization with the civil discovery rules, whether it be depositions, Fed.R.Civ.P. 30, or requests for production of documents, Fed.R.Civ.P. 34, against parties and non-parties.").

Request No. 6 – without the phrase "including, but not limited to" – could be read to ask for "[a]ll documents relating to Banco Popular's financial performance and the performance of [the] loans and assets . . . formerly held by Westernbank that Banco Popular held at any time between April 30, 2010 and the present." Ex. F, Sch. B, at 8. Because BPPR's "financial performance" has absolutely no bearing on the claims or the defenses in this action, such information is not relevant and, therefore, the D&Os' request for it is overbroad. See Fed. R. Civ. P. 26(b)(1); *Wiwa*, 392 F.3d at 820; *Gonzales*, 234 F.R.D. at 680. With respect to the performance of Westernbank's loans and assets that BPPR acquired, as previously stated, BPPR already produced to the D&Os all documents – 5,835 pages – created between January 28, 2004 and November 19, 2009 concerning the Plaza CCD loan and the relevant Intercoffee assets. Moreover, in response to the Second Subpoena – and without waiving any of its objections thereto – BPPR will produce documents created after November 19, 2009 concerning the Plaza CCD loan and the Intercoffee assets, subject to a confidentiality agreement.

The D&Os' request for information concerning the performance of Westernbank's loans and assets *unrelated to the Loss Loans acquired by BPPR* is also not relevant to any claim or defense in this action and not reasonably calculated to lead to the discovery of admissible evidence. Even if any information about Westernbank's loans or assets *unrelated to the Loss Loans acquired by BPPR* could be marginally relevant to any claim or defense in this action, the burden and expense of producing that information far outweighs its likely benefit. As part of the Transaction, BPPR acquired from Westernbank more than 50,000 loan accounts and more than 20,000 credit card accounts, and received more than 20,000 boxes of documents, 505 files and 30 computer servers. Of the thousands of loans and assets acquired by BPPR, only the Plaza CCD loan and the Intercoffee assets are at issue in this case. It would take months and a monumental amount of resources, human and economic, to review all that information for

relevance and privilege[6] and then for production. That kind of burden and expense by far outweighs the likely benefit of that discovery, when the claims in this action are limited to the Loss Loans identified in the SARCI. Therefore, the Court must quash the D&Os' request for information concerning the performance of Westernbank's loans and assets *unrelated to the Loss Loans acquired by BPPR*. See Fed. R. Civ. P. 26(b)(2)(C) (the court must limit the extent of discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving the issues"); *Syngenta Crop Protection, Inc.*, 2011 WL 5118601, at *3; *Mack*, 871 F.2d at 187.

Request No. 7 – without the phrase "including, but not limited to" – could be read to ask for "[a]ll documents relating to any assistance, financial or otherwise, provided by the Federal Government to any Banking Institution, including Banco Popular. Ex. F, Sch. B, at 8. As such, this request is overbroad because its scope is not restricted to the Loss Loans acquired by BPPR. It is also vague because the term "assistance" is not defined in the Second Subpoena. Therefore, the request must be quashed. See Fed. R. Civ. P. 26(b)(1); *Wiwa*, 392 F.3d at 820; *Gonzales*, 234 F.R.D. at 680; *Diamond State Ins. Co.*, 157 F.R.D. at 696. But when the subpoena's definitions are read into it, Request No. 7 additionally becomes harassing and unduly burdensome.

"Federal Government" is defined in the Second Subpoena as "(1) any person whose existence, authority or power is drawn or enumerated in (a) any article of, or amendment to, the Constitution of the United States of America, or (b) any statute enacted, or regulation adopted, pursuant to constitutional authority, and (s) such person's agents, affiliates, appointees, assignees, or corporations, *including, but not limited to*, the FDIC." Ex. F, Sch. B, at 3-4. Thus, the request asks for "all documents relating to any assistance, financial or otherwise, provided

---

[6] Indeed, a preliminary search for electronic communications involving in-house and/or external counsel for BPPR or related entities since March 2010 concerning the acquisition and/or administration of assets acquired from Westernbank produced more than 45,000 such communications.

by" *the entire Government of the United States of America*. But the request goes even further. It asks for such information with respect to the assistance provided to "any Banking Institution." The Second Subpoena defines "Banking Institution" as "any current or former FDIC-insured institution." Ex. F, Sch. B, at 1. Properly read, the D&Os request actually asks for "all documents relating to any assistance, financial or otherwise, provided by" the entire Government of the United States of America to all institutions currently or formerly insured by the FDIC, for the period between January 2004 and the present. Ex. F, Sch. B, at 8 & 6. This is absurd. As of September 19, 2013, there were 6,921 FDIC-insured institutions. See http://www2.fdic.gov/IDASP/. Even if Request No. 6 could somehow be read as seeking discoverable information – which it cannot – gathering, reviewing and preparing for production all the information sought would be an almost impossible task, which cost would be so high that it is not even worth estimating. Thus, the request must be quashed. See Fed. R. Civ. P. 26(b)(2)(C); *Wiwa*, 392 F.3d at 818 ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.").

Request No. 11 – without the phrase "including, but not limited to" – could be read to ask for "[a]ll documents relating to any agreements and communications between Banco Popular and the FDIC, OCFI or the Board of Governors [concerning] any Purchase and Assumption Agreements, Shared Loss Agreements, and Valuation Appreciation Instruments relating to Westernbank or any Property formerly held by Westernbank." Ex. F, Sch. B, at 9. Like the prior request, Request No. 11 is overbroad because its scope is not restricted to the Loss Loans. It is also vague because the terms "Purchase and Assumption Agreements," "Shared Loss Agreements," and "Valuation Appreciation Instruments" are not defined anywhere in the subpoena. Therefore, the request must be quashed. See Fed. R. Civ. P. 26(b)(1); *Wiwa*, 392 F.3d at 820; *Gonzales*, 234 F.R.D. at 680; *Diamond State Ins. Co.*, 157 F.R.D. at 696.

And like the prior request, Request No. 11 additionally becomes harassing and unduly burdensome when the subpoena's definitions are read into it. The Second Subpoena's

definitions of the terms "FDIC," "OCFI" (which stands for the Puerto Rico Office of the Commissioner of Financial Institutions) and "Board of Governors" (of the Federal Reserve System),[7] together with the lack of precision as to what the terms "Purchase and Assumption Agreements," "Shared Loss Agreements," and "Valuation Appreciation Instruments" mean, encompasses almost all information concerning the regulation of BPPR's business, for the period between January 2004 *and the present*. Ex. F, Sch. B, at 8 & 6. BPPR is regulated and supervised by all three entities – the FDIC, OCFI and the Board of Governors – and regularly communicates with them on a number of topics. Such a request not only asks for information that clearly is not relevant to any claim or defense in this action, but it is also grossly overbroad and harassing. Thus, it must be quashed. See Fed. R. Civ. P. 26(b)(2)(C); *Wiwa*, 392 F.3d at 818 ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.").

### Requests Nos. 14 and 15

As previously stated, BPPR already produced to the D&Os all documents – 5,835 pages – created between January 28, 2004 and November 19, 2009 concerning the Plaza CCD loan and the relevant Intercoffee assets. Moreover, in response to the Second Subpoena – and without waiving any of its objections thereto – BPPR will produce documents created after November 19, 2009 concerning the Plaza CCD loan and the Intercoffee assets.

---

[7] The subpoena defines these terms as follows: "FDIC" means "the Federal Deposit Insurance Corporation, in all capacities, including FDIC-Corporate and FDIC-Receiver, all affiliated entities, persons and employees, and all persons acting or purporting to act for, on behalf of, in concert with, or who are subject to the direction and control of the FDIC, **including, but not limited to,** any and all of its **present or former** agents, officers, employees, regulators, examiners representatives, attorneys, **predecessors, successors**, and assigns." Ex. F, Sch. B, at 3 (emphasis added). "OCFI" means "the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and any partner, subsidiary, affiliate, agent, or representative of the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, **including, but not limited to,** any attorney, accountant, contractor, employee, officer, director, shareholder, or consultant affiliated with the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico, and any person or entity acting or purporting to act on its behalf, or under its authority or control." *Id.* at 5 (emphasis added). "Board of Governors" means "the Board of Governors of the Federal Reserve System, any partner, subsidiary, affiliate, officer, director, shareholder, employee, agent, representative, or attorney for the Board of Governors, and any other person or entity acting for or on behalf of the Board of Governors, or under the authority or control of the Board of Governors." *Id.* at 2.

### Request No. 17 Is Premature

Request No. 17 asks for "[a]ll documents and communications [deponent] reviewed in preparation for the deposition . . . ." Ex. F, at 10. This request is premature, as no corporate representative has yet been designated.

### B.   As to the Request for Deposition Testimony

The D&O's request for deposition testimony should be quashed for the same reasons that warrant quashing their request for documents. See Fed. R. Civ. P. 30(b)(6) (deposition notice must describe the matters for examination with "reasonable particularity"); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581 (D. Kan. 2008) (for Rule 30(b)(6) to function properly, areas of inquiry must be designated with "painstaking specificity").

Additionally, request for deposition testimony should be quashed because the witness fees and reasonably estimated mileage allowed by law were not simultaneously tendered with the Second Subpoena. See Fed. R. Civ. P. 45(b)(1); *In re Dennis*, 330 F.3rd 696, 704-05 (5th Cir. 2003); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983); *Brown v. Hendler*, 2011 WL 321139, at *2 (S.D. New York, Jan. 31, 2011); *Strahan v. Hussey*, 2009 WL 1364758 (D. Mass., May 13, 2009); *Tribulak v. Minirth-Meier-Rice Clinic*, 111 F.3rd 135 (8th Cir. 1997) (unpublished opinion).

WHEREFORE, BPPR respectfully requests this Honorable Court to quash the Second Subpoena served by the D&Os and to award BPPR reasonable attorney's fees as a sanction to be imposed upon the D&Os pursuant to Rule 45(c)(1).

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 25th day of September, 2013.

I, Angélica Toro Lavergne, Counsel for Banco Popular de Puerto Rico, declare under penalty of perjury that, to the best of my knowledge and belief, the foregoing is true and correct.

Executed in San Juan, Puerto Rico, this 25th day of September, 2013.

Angélica Toro Lavergne
Counsel for Banco Popular de Puerto Rico

s/Roberto C. Quiñones-Rivera
USDC-PR No. 211512
rcq@mcvpr.com

s/ Eduardo A. Zayas-Marxuach
USDC-PR 216112
ezm@mcvpr.com

McCONNELL VALDÉS LLC
PO Box 364225
San Juan, PR 00936-4225
Telephone: (787) 250-2631
Fax: (787) 474-9201

Attorneys for Banco Popular de Puerto Rico

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record which are CM/ECF system participants at their corresponding e-mail addresses and which, pursuant to Local Civil Rule 5.1(b)(2), constitutes the equivalent service.

In San Juan, Puerto Rico, this 25th day of September, 2013.

s/Roberto C. Quiñones-Rivera
USDC-PR No. 211512
rcq@mcvpr.com