1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

W HOLDING COMPANY, et al.,

Plaintiffs,

v.

AIG INSURANCE COMPANY, et al.,

Defendants.

Civil No. 11-2271 (GAG)

OPINION & ORDER

The FDIC brought suit against several former directors and officers of Westernbank, a Puerto Rico bank that went into receivership on April 30, 2010, for making allegedly grossly negligent loans that resulted in over $176 million in losses. The officers[1] moved to dismiss the case against them based on the pleadings, claiming the FDIC failed to timely file. (Docket No. 556.) The directors did not move for dismissal, as the officers claim that a different cut-off time for filing applies to them. The court disagrees and the motion is **DENIED**.

**I.      Standard of Review**

"A motion for judgment on the pleadings is treated like a Rule 12(b)(6) motion to dismiss." Portugues-Santana v. Rekomdiv Int'l. Inc., 725 F.3d 17, 25 (1st Cir. 2013).

---

[1] The officers and their conjugal partnerships are: William Vidal, Gladys Barletta Segarra, Sharon McDowell-Nixon, Miguel A. Vazquez-Seijo, Mario A. Ramirez-Matos, Julia Fuentes del Collado, Elizabeth Aldebol de Cortina, and Ricardo Cortina-Cruz. Vidal alone originally filed Docket No. 556; however, all officers joined the motion periodically throughout the next few weeks. For the sake of clarity, the court refers to Vidal's motion as the Officers' Motion for Judgment on the Pleadings.

**Civil No. 11-2271 (GAG)**

1    "The general rules of pleading require a short and plain statement of the claim showing that

2  the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st

3  Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement

4  need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

5  rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

6         Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to

7  state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6).  To survive a Rule

8  12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is

9  plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint

10  alleges enough facts to "raise a right to relief above the speculative level." Id. at 555.  In so doing,

11  the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's

12  favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must

13  accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

14  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of

15  action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at

16  555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

17  of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to

18  relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

19         A plaintiff need not allege sufficient facts to meet the evidentiary *prima facie* standard. See

20  generally Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (1st Cir. 2013).  *Prima facie* elements

21  "are part of the background against which a plausibility determination should be made." Id. at 54

22  (external citations omitted).  "[T]he elements of a *prima facie* case may be used as a prism to shed

23  light upon the plausibility of the claim." Id. (emphasis added).

24  **II.    Discussion**

25         A.    Timely Filing Against Officers in Puerto Rico

26         The FDIC timely filed these claims pursuant to 12 U.S.C. § 1821(d)(14)(A)-(B). Subsection

27  (A) states: "[T]he applicable statute of limitations with regard to any action brought by the

28                                                         2

**Civil No. 11-2271 (GAG)**

1  Corporation as conservator or receiver shall be – in the case of any tort claim, the longer of – the

2  three-year period beginning on the date the claim accrues; or the period applicable under state law."

3  12 U.S.C. § 1821(d)(14)(A)(ii).  The officers argue that the period applicable under state law is one

4  year.  But this argument neglects to consider "the three-year period beginning on the date the claim

5  accrues" in subsection (A)(ii)(I).  The officers argue that the various claims against them accrued

6  throughout prior litigation and FDIC examinations from 2005 to 2008.  This may be true as a matter

7  of fact, but not as a matter of law.

8         Subsection (B) is titled: "Determination of the date on which the claim accrues."  The

9  subsection states: "For the purposes of subparagraph (A), the date on which the statute of limitation

10  begins to run on any claim described in such subparagraph shall be the later of – (I) the date of the

11  appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of

12  action accrues."  12 U.S.C. § 1821(d)(14)(B)(I)-(ii).  The officers claim that the FDIC knew or

13  reasonably should have known of the allegedly grossly negligent behavior through its various

14  examinations and prior litigation from 2005 to 2008.  This may be so.  However, the statute provides

15  that claims accrue as a matter of law on the later date of when: (1) they factually accrue, or; (2) the

16  FDIC is appointed as receiver.  Here, the later date was when the FDIC was appointed as receiver

17  on April 30, 2010, which is thus the date upon which the claims accrued.

18         Based on the above, the FDIC had a three-year period beginning on April 30, 2010 and

19  ending in April 2013 to file its claims.  The FDIC filed the initial Complaint in 2011 and the Second

20  Amended Complaint in 2012.  Therefore, the FDIC's claims were timely filed and the motion is thus

21  **DENIED.**

22         The court, in making the instant ruling, distinguishes this case from RTC v. Seale, 13 F.3d

23  850, 853 (5th Cir. 1994).  In said case, the Fifth Circuit noted that "this approach would permit the

24  [FDIC] to resurrect claims stale from [many years ago, and that t]he evidence that Congress intended

25  such a sweeping recovery right is not persuasive."  Id. (citing cases).  The timing of the Fifth

26  Circuit's opinion, however, is important.  It decided Seale in 1994 on the heels of FIRREA's 1989

27  codification, concerned with whether to apply FIRREA's FDIC-tilted limitation period retroactively.

28

**Civil No. 11-2271 (GAG)**

The opinion is narrowly tailored in that regard: "The FIRREA limitations period applies to claims that were alive on August 9, 1989, when FIRREA took effect, but not to claims that had expired before then." Id. The timeframe here, however, falls well after FIRREA's effective date. The allegedly grossly negligent loans were made and administered in the 2000's. The critical holding in Seale is that the "FIRREA limitations period applies to claims that were alive on August 9, 1989, when FIRREA took effect . . . ." Id. The claims in the case at bar were indeed alive after FIRREA's effective date.

Other courts have implied that all claims rendered stale under state limitations periods cannot be resuscitated through receivership, even those post-dating FIRREA's effective date. See FDIC v. Regier Carr & Monroe, 996 F.2d 222, 225-26 (10th Cir. 1993). The court disagrees. The plain meaning of subsections (A) and (B) indicates that the FDIC must be afforded at least three years from the date it assumes receivership to bring tort claims, regardless of the state limitations period.

B.      Genuine Issues of Material Fact

The deadline for discovery is still several months away. The parties may have discovered or eventually will discover dispositive evidence that compels the court to rule in favor of any of the parties. However, the court takes this opportunity to address its observations after reviewing several submissions and documents while considering the instant motion for judgment on the pleadings.

Based on the same, the court notes that there may already be genuine issues of material fact as to whether the D&O's were grossly negligent. The FDIC claims that years of examination reports yield evidence that must compel any reasonable trier of fact to determine that the D&O's brazenly disregarded its warnings and forged ahead with a devil-may-care attitude in their quest for the almighty dollar. The D&O's, as their numerous filings have made clear, counter that the economic recession and general downturn suffered in Puerto Rico and across the United States are to blame for Westernbank's troubles, and that the FDIC-C should have done more to prevent the D&O's from harming Westernbank. The FDIC's own reports substantiate this.

Although the court, to reiterate, does not assess the quality of evidence, the FDIC's

**Civil No. 11-2271 (GAG)**

examination reports and the FDIC Inspector General's  Material Loss Review Report of December

2010 (the "Report") attribute Westernbank's failure to **both** the D&O's lending practices **and** the

general state of the economy in Puerto Rico and the United States.  In the same Report, the FDIC

also admits it could have done more to prevent the bank's failure.  And finally, the Report recognizes

that the D&O's implemented some remedial measures.  While the Report details how the D&O's

continued their ostensibly bad practices despite the recession, its excerpts nonetheless demonstrate

that the FDIC believed that the recession played a role in the bank's downfall, and that the D&O's

indeed attempted to mitigate the damage:

> 1. In hindsight, initiating an informal enforcement action in response to the 2006 examination and imposing a stronger supervisory action in response to the 2007 examination findings may have been prudent because repeated weaknesses were identified in the underwriting and administration of the ABL portfolio at a time when the bank was increasing its emphasis on CRE and ADC and this increasing concentration made it vulnerable to declining economic conditions.  Report at Executive Summary.

> 2. The Board and management did not begin to address criticism of weak underwriting and credit administration practices in the ABL portfolio until the 2007 examination.  Id. at 5 (identifying efforts to address criticisms in 2007).

> 3. As Puerto Rico's economy sank into a severe recession, ABL, CRE, and ADC loans that were originated and renewed based on the bank's weak loan underwriting and deficient credit administration practices caused the precipitous deterioration of asset quality and increasingly high levels of adversely classified assets.  Id.

> 4. The bank curbed its ABL after examiners and external auditors identified significant problems with its Business Credit's Division's underwriting and monitoring procedures.  Id. at 7 (identifying remedial measure).

> 5. Weak and liberal loan underwriting standards exacerbated the risks undertaken by management and coupled with the declining economy, were a primary cause of Westernbank's loan losses.  Id. at 10-11.

> 6. Westernbank was considered *Well Capitalized* at its September 2008 joint examination.  Id. at 30.

To belabor the point, the court is not preemptively denying or granting a summary judgment

motion.  Nevertheless, the court's experience has lead it to observe that there may be issues of

material fact.  Discovery remains open for several months.  The parties will be afforded a fair,

thorough, just, and diligent process.  However, at this juncture and with the above observations in

**Civil No. 11-2271 (GAG)**

1   mind, it seems very possible that this case will proceed to trial.

2          The court strongly urges the parties to consider settlement at this time, rather than engage

3   in further time-consuming and costly discovery and motion practice.   The parties, if in said

4   disposition, shall so inform the court on or before December 2, 2013, via joint motion.   The court

5   then can proceed to appoint a settlement judge or mediator.

6          The attorneys for the D&O's and the FDIC shall inform their respective clients of this ruling.

7   **IV.    Conclusion**

8          For the abovementioned reasons, the court **DENIES** the officers' motion for judgment on

9   the pleadings at Docket No. 556.

10

11                 **SO ORDERED.**

12          In San Juan, Puerto Rico this 22nd day of November, 2013.

13                                                                    /S/ Gustavo A. Gelpí
                                                                      GUSTAVO A. GELPI
14                                                                    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                         6

**Civil No. 11-2271 (GAG)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28