**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WESTERNBANK PUERTO RICO,** | **Civil Action No. 11-02271-GAG/BJM** |
| **Plaintiff Intervenor,** | |
| v. | **DECLARATORY JUDGMENT** |
| **FRANK C. STIPES, *et al.*,** | |
| **Defendants.** | |
| **FRANK C. STIPES, WILLIAM VIDAL CARVAJAL, JUAN FRONTERA, HECTOR DEL RIO, CESAR RUIZ, AND PEDRO DOMINGUEZ, *et al.*,** | **TORT CLAIMS** |
| **Third-Party Plaintiffs,** | |
| v. | |
| **THE UNITED STATES AND THE FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,** | |
| **Third-Party Defendants.** | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW the United States of America on behalf of the Federal Deposit Insurance Corp. in its corporate capacity (FDIC-C), herein represented through the undersigned attorneys, and very respectfully states, alleges and prays:

1

## I.   INTRODUCTION

The United States submits that summary judgment should be entered in this case because this lawsuit is premised on the FDIC-C's failure to exercise or perform discretionary functions which are excepted[1] under the Federal Tort Claims Act (28 U.S.C. § 2671-2680, hereinafter "FTCA").

The Third-party Plaintiffs' allege that the FDIC-C breached various duties to the Directors and Officers of Westernbank (hereinafter "D&Os"). See, Third-party Complaint, ¶¶ 15-21. These alleged breaches of duties by FDIC-C are all barred under the discretionary function exception of the FTCA. See, *28 U.S.C. § 2680(a).*

## II. SUMMARY JUDGMENT STANDARD

Generally, "[s]ummary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). R*ichardson v. Friendly Ice Cream Corporation,* 594 F.3d 69, 74 (1st Cir. 2010). See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-325 (1986); *Thompson v. Coca-Cola, Inc.,* 522 F.3d 168, 175 (1st Cir. 2008).  "The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required'." *Dávila v. Corporación de Puerto Rico para la* Difusión *Publica,* 498 F.3d 9, 12 (1st Cir. 2007), citing from *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 7 (1st Circ. 2004),(quoting *Wynne v. Tufts Univ. Sch. OfMed.,* 976 F.2d 791, 794 (1st Cir. 1992).  In *Davila,* the Court held:

> For this purpose, an issue is genuine if a reasonable jury could resolve the point in favor of the nonmoving party. *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir. 2000). By like token, a fact is material if it has the potential to determine the

---

[1] See 28 U.S.C. § 2680(a).

outcome of the litigation. *See Calvi v. Knox Country,* 470 F.3d 422,426 (1st Cir. 2006). Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case "is ... not significantly probative, summary judgment may be granted." *Acosta,* 386 F.3d at 8 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250(1986)).

At the summary judgment stage, the Court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences". *Noviello v. City of Boston,* 398 F. 3d 76, 84 (1st Cir. 2005), citing *Cox v. Hainey,* 391 F. 3d 25, 27 (1st Cir. 2004). See also *Richardson v. Friendly Ice Cream Corporation,* 594 F.3d at 74. "[T]he nonmovant bears 'the burden of producing specific facts sufficient to defect the swing of the summary judgment scythe.'" *Noviello,* 398 F.3d at 84. "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, ' [e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on summary judgment." *Id.* at 84, citing *Vazquez v. Lopez-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998); accord *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990). "The evidence presented by the non-moving party may not be 'conclusory allegations, improbable inferences, [or] unsupported speculation."' *Torres-Negron v. Aferck & Company, Inc.,* 488 F.3d 34, 39, citing *Afedina-Muiioz v. R.J Reynolds Tobacco* Co., 896 F.2d 5, 8 (1st Cir. 1990).

Moreover,"[ a] fact is material if it might 'affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,247 (1986)." "Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment." *Id. See Emiabata d/b/a Nova Express v. The United States,* 90 Fed.Cl. 22, 27 (October 30, 2009).

In *Sanchez v. United States,* 671 F.3d 86, 97 (1st Cir.20 12), the Court held:

> The plaintiffs argue that their allegations are sufficient to raise disputed facts derived from pleadings, depositions, answers to interrogatories, admissions and affidavits." M*agee v. United States,* 121 F.3d 1, 2 (1st Cir.1997)." "As we have

> held, "[i]t is a long standing principle of this Circuit that bald assertions and unsupportable conclusions are not enough to create a genuine issue of material fact. *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutua y Beneficiencia de P.R.,* 394 F.3d 40,44 (1 81 Cir. 2005).

D&O's "bald assertions and unsupportable conclusions are not enough to create a genuine issue of material fact" that may warrant a trial[2]. *See Sanchez v. United States, supra.* "Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment." *Id. See also Emiabata d/b/a Nova Express v. Thee United States,* 90 Fed.Cl. 22, 27 (2009). *See also Colburn v. Parker HannUzn/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir. 2005). In *Colburn, supra,* the Court held:

> Colburn argues that the affidavit should not have been stricken because it was not creating a "sham fact issue." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). But the applicable standard in this circuit is not whether a sham issue of fact has been created. Our law is clear that "[ w ]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory" without providing "a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & sons,Inc.,* 44 F.3d 1, 4-5 (1st Cir. 1994) (citing 10A Charles Alan Wright,  Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726, at 30-31 (2d ed. Supp.l994)).

## III. ARGUMENTS

### A.  Discretionary Function Exception (DFE)

The Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671-2680, hereinafter "FTCA") is a very limited waiver of sovereign immunity.  Section 2680 provides thirteen (13) exceptions, including the discretionary function exception (See 28 U.S.C. § 2680(a)).

---

[2]  Under the Federal Tort Claims Act there is no right to jury trial (only a bench trial) 28 U.S.C. §2402. Plaintiff has no choice. <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

The scope of the waiver is quite narrow, mainly because of the discretionary function exception. This defense is not very well understood as it has been the most gaping and frequently litigated exception.  See, James R. Levine, Note, *The Federal Tort Claims Act: A proposal for Institutional Reform*, 100 Colum. L.Rev. 1538, 1541 (2000). It has also been called the most important, sweeping and troublesome exception.

> "The most sweeping of these exceptions bars claims "based upon the exercise or performance [of] or the failure to exercise or perform a discretionary function or duty."[8] <u>The intended scope of this provision has never been entirely clear</u>.[9] Some commentators have argued that sharp, well-defined tests for the application of discretionary immunity simply cannot be formulated.[10] Nevertheless, a federal "discretionary function" jurisprudence has gradually developed in the years since 1946,[11] and under current doctrine the government's immunity from tort claims for discretionary functions is formidable.[12] Since the Supreme Court's test was last modified in 1991,[13] the government's success rate in asserting the exception, as reflected in reported cases, has risen to approximately seventy-six percent.[14] The exception now bars claims arising not only from high-level planning decisions or agency regulations, but also from routine, low-level actions such as a postal official's decision where to place a mailbox,[15] a Forest Service ranger's decisions about how to maintain a campsite,[16] and a mass transit official's decisions about when and how station floors should be mopped.[17] Some federal judges and commentators have concluded that the exception has nearly swallowed the FTCA's general rule of government responsibility for the torts of its agents.[18] " (Emphasis added).

See, Jontahan R. Bruno, *Note- Immunity for "Discretionary" Functions: A proposal to Amend the Federal Tort Claims Act,* Harvard Journal on Legislation Vol. 49, 411-450 (2012)[3], pages 412-413.

The government's waiver does not include policy making because "the purpose of the discretionary function exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in 'social, economic, and political policy.'" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio*

---

[3] This Law Journal article argues that Congress should eliminate the discretionary function exception.

*Grandense* (*Varig Airlines*), 467 U.S. 797, 814 (1984)). For if judicial second-guessing is allowed, it would create constitutional problems regarding the separation of powers doctrine. For a more detailed discussion of this history, see David S. Fishback & Gail Killefer, *The Discretionary Function Exception to the Federal Tort Claims Act: From Dalehite to Varig to Berkovitz*, 25 IDAHO L. REV. 291 (1989).

If the discretionary function applies, then the district court does not have jurisdiction over the case.  That is, the district court is barred from hearing the case if the alleged negligence arises within the ambit of the discretionary function exception. See David S. Fishback, *The Federal Tort Claims Act II*, United States Attorneys' Bulletin, Vol. 59, Number 1, January 2011, pages 1-57, at page 28, and the cases cited therein.

Since jurisdiction is crucial or a threshold issue, the district court must resolve the discretionary function issue first, rather than deferring the issue to trial. See, Fishback, *Op. Cit.*, at page 28, citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) which quotes *Ex Parte McCardle*, 74 U.S. 506, 515 (1868).

Most circuit courts have concluded that the burden of proof for establishing that the discretionary function does not apply is on the plaintiff. See, Fishback, *Op. Cit.*, at page 29, citing *Irving v. United States*, 162 F.3d 154, 168 (1st Cir. 1998).

When the government is exercising its discretionary functions it does <u>not</u> waive its immunity. 28 U.S.C. § 2680; discretionary function:

> "(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, <u>whether or not the discretion involved be abused</u>." (Emphasis added).

6

The FTCA should not be broadly applied and it should be construed in favor of the federal government as stated under *Carroll v. U.S.*, 661 F.3d 87, 99 (1st Cir. 2011), "[T]he FTCA must be construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires.' " *Bolduc,* 402 F.3d at 56 (quoting *United States v. Horn,* 29 F.3d 754, 762 (1st Cir.1994)).

The discretionary function exception in *United States v Gaubert*, 499 U.S. 315, 323 (1991) the Court held that the discretionary function is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy", *U.S. v Varig Airlines*, 467 U.S. 797, 814 (1984).  In *Gaubert*, the Supreme Court established a two prong test to apply.  The exception test known as Prong One.

Prong One it is whether the agency did not violate a pertinent self-imposed statute, regulation or policy that prescribed a specific course of action.  In the case at bar, the FDIC-C fully complied with its statutes, regulations and policies.  The claim of the D&O's that the FDIC-C owed duties to them by maintaining a safe and sound institution is far from any reality.  Allowing the D&O's that failed argument would mean a distorted reality that Westernbank was owned by the FDIC-C and regulated by the D&O's.  On the contrary, it is the D&O's duty to maintain a safe and sound institution. But the fact here is that the D&O's ignored all the warnings and findings that the FDIC-C reported annually in the Reports of Examination ("ROE").  The FDIC-C does not owe a duty to the D&O's.  It is the D&O's duty to oversee Westernbank operations.  The FDIC-C duties are regarding its insured depositaries.  The D&O's cannot pretend to shift their responsibility to the FDIC-C.  Even more   when it was the D&Os

own negligence which created the unsafe and unsound operation of the bank culminating with its closing.

Notwithstanding, in deciding the discretionary function exception the court should disregard any issues of negligence as they are "simply irrelevant to the discretionary function inquiry", *Kennewick Irrigation Dist. v. U.S.*, 880 F.2d 1018, 1029 (9th Cir. 1989).

The Second Prong, is whether the action or omission was susceptible to policy analysis involving a "social, economic or political" policy consideration. <u>Gaubert</u>, 499 U.S. at 322-23, set us for the rule that the discretionary function is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." Also, see *U.S. v S.A. Empresa de Viacao Aerea Rio Grandese (Varig Airlines)*, 467 U.S. 797, 814 (1984) and *FDIC v. Mijalis*, 15 F.3d 1314 at 1323-24 (5th Cir., 1994).

The FTCA and current case law explain that "even where the government conduct would create state tort liability in a suit against a private party, the FTCA provides that sovereign immunity is not waived if the challenged governmental action involved the exercise of discretion. Now, "if the discretionary function exception applies, the jurisdictional grant of section 1346(b) does not, such that "the [government] is completely immune from suit, and the claim must be dismissed for lack of subject matter jurisdiction…" *Santoni v. Potter,* 369 F.3d 594, 602 (1st Cir.2004) (*citing Kelly v. United States,* 924 F.2d 355924 F.2d 355, 360 (1st Cir.1991))". 28 U.S.C. § 2680(a)", *Abreu v. United States*, 468 F.3d 20, 23 (1st Cir. 2006).

The FDIC follows the policies adopted by the FDIC Board in 1992, Statement Concerning the Responsibilities of Bank Directors and Officers, which can be found at http://www.fdic.gov/regulations/laws/rules/5000-3300.html#fdic5000statementct, and require

Board approval before actions are brought against directors and officers.  See FDIC Statement Concerning the Responsibilities of Bank Directors and Officers ("FDIC Policy 5000-3300") attached as Exhibit A. D&Os have duties owed to their institution, to the shareholders and creditors of their institutions, and to comply with federal and states statutes, rules and regulations, including the duties of loyalty and care. "The duty of loyalty requires directors and officers to administer affairs of the bank with candor, personal honesty and integrity. They are prohibited from advancing their own personal or business interests, or those of others, at the expense of the bank." See Exhibit A.

**B.   The "DFE" divests this Court of jurisdiction over the  D&O's claims.**

The United States reincorporates herein by reference the discussion of the discretionary function exception advanced by FDIC-C, in its motion for Summary Judgment (Docket 917), pages  19-26. The United States will add the arguments that follow.

This exception "immunizes conduct of government employees that arises from legislative and administrative decisions grounded in social, economic, and political policy, protecting against liability that would seriously handicap efficient government operations." *Carroll v. United States*, 661 F.3d 87, 99 (1st Cir. 2011); see *Varig Airlines,* 467 U.S. at 808; *Abreu v. United States,* 468 F.3d 20, 25 (1st Cir. 2006).

"Under *United States v. Gaubert,* 499 U.S. 315 (1991), the discretionary function exception applies if the conduct underlying an FTCA claim both (1) involves an element of judgment or choice, and (2) was susceptible to policy-related analysis." *Sanchez ex rel. D.R.-S.,* 671 F.3d at 93 (1st Cir. 2012) (citations and quotations omitted).  Thus, a court must first identify the conduct alleged to have caused the harm and then determine whether the conduct can be

fairly described as discretionary, and if so, decide whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations. *Carroll*, 661 F.3d at 100. If the challenged conduct is both discretionary and policy-based, there is no subject-matter jurisdiction for the claim. *Id*. "[T]he burden [is] on the plaintiffs to show the discretionary conduct was not policy-driven and, thus falls outside the exception." *Timmerman v. United States*, Civ. No. 11-1816 , 2012 WL 2052149, *3 (D.P.R. June 5, 2012) (citing *Carroll*, 661 F.3d at 100 n. 15). FDIC-C's supervisory decisions in this case clearly fall within the discretionary function exception under established case law in the banking regulatory context. *Gaubert*, *supra* (holding that a claim alleging negligent regulatory actions by a federal banking agency was barred by the FTCA's discretionary function exception); *FDIC v. Irwin*, 916 F.2d 1051, 1053-54 (5th Cir. 1990) (OCC's insolvency determination and decision to close a bank are protected discretionary functions under the FTCA); *Emch v. United States,* 474 F. Supp. 99 (E.D. Wis. 1979), *aff'd*, 630 F. 2d 523 (7th Cir. 1980), *cert. denied*, 450 U.S. 966 (1981) ("[N]umerous cases have held, that § 2680(a) precludes suits based on negligence by agencies of the United States in the regulation and examination of banks"). These decisions are consistent with First Circuit case law, which establishes that claims of negligent supervision in other contexts are barred under the discretionary function exception to the FTCA. *See Bolduc*, 402 F.3d at 60-62; *Attallah v. United States*, 955 F.2d 776, 784-85 (1st Cir. 1992). Here, allegations of improper supervision of a bank cannot overcome the application of the discretionary function exception. FDIC-C decisions concerning a bank's supervision lie primarily within the realm of public policy. Accordingly, the Court lacks jurisdiction over the Complaint's allegations against FDIC-C concerning failure to properly supervise the Bank.

The actions by the FDIC Corporate entity which are being looked to for discretionary function exception (DFE) coverage are the supervisory decisions, the alleged improper supervision as mentioned in the third-party complaint.

FDIC's challenged conduct is policy based. FDIC's supervisory decisions in this case clearly fall within the discretionary function exception under established case law in the banking regulatory context. Allegations of improper supervision of a bank cannot survive application of the DFE.  FDIC's decisions concerning a bank's supervision lie primarily within the realm of public policy.

The actions by the FDIC Corporate entity which are being looked to for DFE coverage are the supervisory decisions, the alleged improper supervision as mentioned in the third-party complaint.

## C.  D&Os Argue that they can sue the FDIC under the sue and be sued clause.

Section 1819(a) of the Federal Banks and Banking Laws (12 U.S.C. § 1819(a)) grants the FDIC the power to "sue and be sued". The FDIC has two separate and distinct capacities, (1) its corporate capacity as an insurer of deposits and a regulator of member banks and (2) in its receivership capacity as a receiver of failed banks (FDIC-R). *FDIC v. Harrison*, 735 F.2d 408, 412 (1984); *Resolution Trust Corp. v. Youngblood*, 807 F. Supp. 765, 771 (N.D. Ga. 1992).

FDIC-R is the arm of the FDIC that can sue former D&Os for their demonstrated failure to satisfy the duties of loyalty and care, discussed above. An example would be where the board failed to heed warnings from regulators or professional advisors, or where officers failed to adhere to such policies or otherwise engaged in improper extensions of credit. See Exhibit A, *Nature of Suits Filed,* at page 2. In the instant case not only did the FDIC-C warn the D&Os of

their unsafe and unsound banking practices but also their external auditors as well, Deloitte & Touche and BDO.

Because FDIC-C and FDIC-R are discrete legal entities, Corporate FDIC is not liable for wrongdoings by Receiver FDIC and vice versa, *FDIC v. Roldan Fonseca*, 795 F. 2d 1102, 1109 (1ˢᵗ Cir. 1986). In consequence, the D&Os in this case cannot sue the FDIC-C under the FDIC clause of sue and be sued [4].

**D.  No Duty Rule**

The United States reincorporates herein by reference the "No Duty" Rule arguments advanced by FDIC-C, in its motion for Summary Judgment (Docket 917), pages 28-50. The United States will add the arguments that follow.

If this Honorable Court would still agree with the D&O's argument that the discretionary function exception does not apply, still then, the FDIC-C does not have a duty with the D&O's. The no duty rule precludes the D&O's as a matter of law from bringing this suit for a discretionary conduct of the FDIC-C. As previously asserted the FDIC has two separate roles. As receiver, the FDIC-R manages the assets of the failed bank on behalf of the bank's creditors and

---

[4] But, professionals may be sued for either gross or simple negligence. The Supreme Court has ruled that the FDIC-R may pursue simple negligence claims against directors and officers if state law permits. See, *Atherton v. FDIC*, 519 U.S. 213 (1997) (the unanimous Court concluded that "state law sets the standard of conduct as long as the state standard is stricter than that of the federal statute." The opinion by Justice Stephen Breyer held that the federal "gross negligence" statute was only intended to set a "floor" or minimum standard for state laws governing negligent conduct. The Court also ruled that "[t]here is no federal common law that would create a general standard of care applicable to this case.") Federal law preempts state law that insulates directors and officers from gross negligence or worse conduct. Bank directors are allowed to exercise business judgment without incurring legal liability.

shareholders.  In its corporate capacity, the FDIC-C as a bank insurer is responsible for insuring the failed bank's deposits[5].

Congress created two distinct entities with two entirely different purposes[6].  Our concern here is the duty that the FDIC-C has.  The FDIC-C duty as enacted by congress is to insure the failed bank deposits.  These duties are created to guarantee depositors of their monies not the D&O's claims.  The duties created by congress are performed in a clear policy establishing a system in which the people trust and bring stability to the banking system; this creation was not performed pretending to create defense for negligent D&O's.  These duties were clearly created to bring stability to the financial system.

FDIC-C has no standing to sue the banks' Auditors on behalf of creditors. In the case of *FDIC v. Deloitte & Touche*, 834 F. Supp. 1129, 1146 (.E.D. Ark. 1992), the federal district court of Arkansas held that the FDIC in its corporate capacity cannot sue a bank's auditor on behalf of creditors. Under that decision FDIC can only sue if it is performing its duties, <u>only, as receiver</u>. S*ee also, FDIC v. Ernst & Young, LLP*, 256 F.Supp.2d 798 (N.D. Ill. 2003) (the FDIC in its corporate capacity had no standing to sue the bank's auditor, although it could sue as receiver). Now it would only be fair that if the FDIC-C doesn't have standing to sue it should as well be free from being sued.  In the case at hand the D&O's are claiming FDIC-C was negligent. However, it is our contention that this Honorable Court lacks jurisdiction under the discretionary function exception.

---

[5]   *See Roldan-Fonseca*, 795 F.2d 1102, 1109 (1st Cir. 1986) ("'Corporate' FDIC and 'Receiver' FDIC are separate and distinct legal entities. . . . Corporate FDIC is not liable for wrongdoings by Receiver FDIC. "); *FDIC v. De Jesus Velez*, 678 F.2d 371, 374 (1st Cir. 1982) ("[T]he FDIC must be permitted to operate in a dual capacity simultaneously, as a receiver and an insurer, to carry out its functions as a receiver, liquidator, and insurer.").

[6]   *Bullion Services, Inc., Plaintiff-Appellee, v. Valley State Bank*, 50 F.3d 705 (9th Cir. 1995).

In summary, the D&O's have not been able to establish that the conduct of the FDIC-C was not exempted from the discretionary function of the agency or that acted in such manner to be excluded from such exemption.  And the Third-Party Plaintiffs have that burden of proof as discussed above.

The FDIC-C duties are exclusively to insure individual depositors.  If the act or omission did not involve a mandatory self-imposed obligation, the first prong of the analysis is met. See Fishback, *Op. Cit.*, page 19 and the cases cited therein, *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1178 (10th Cir. 2008). "…[E]ven if there is a specific and mandatory obligation, the first prong is satisfied if the United States did not violate it.  See, e.g. Abreu v. United States, 468 F.3d 20, 26-27 (1[st]. Cir. 2006); Elder v. United States, 312 F.3d 1172, 1177 (10th Cir. 2002) (plaintiffs must, to prevail on the first prong, 'show that [federal] employees violated a federal statute, regulation, or policy that is both 'specific and mandatory.'" Id.

The Second Prong is whether the action or omission was susceptible to policy analysis involving a "social, economic or political" policy consideration.  <u>Gaubert</u>, 499 U.S. at 322-23, set us for the rule that the discretionary function is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." And obviously the FDIC-C has a social, and economic policy.

## IV. CONCLUSION

The Third-Party Plaintiffs have the burden of proof  for establishing that the discretionary function does not apply.  *Irving, supra* at page 168 (1st Cir. 1998).  Also, the The Third-Party Plaintiffs have the burden to proof  that <u>the discretionary conduct was not policy-driven and, thus falls outside the exception</u>." See,   *Timmerman, supra* 2012 WL 2052149, *3 (D.P.R. June 5, 2012). Accordingly,  summary judgment shall be entered for the United States and the FDIC-C.

WHEREFORE, the United States respectfully requests from this Honorable Court to grant summary judgment  and dismiss with prejudice.

I HEREBY CERTIFY that on this date a true and  correct copy of the foregoing memorandum

In San Juan, Puerto Rico, this 2nd day of April, 2014.

I HEREBY CERTIFY:   that on this same date the foregoing document was filed with the Clerk of the Court using CM-ECF system and will send notification of such filing to all attorneys of record.

ROSA EMILIA RODRÍGUEZ VÉLEZ
United States Attorney


s/ *Agnes I. Cordero*
Agnes I. Cordero
Assistant United States Attorney
USDC-PR 126101
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Telephone: 787-766-5656 & Fax:787- 766-6219
Agnes.Cordero@usdoj.gov