## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WESTERNBANK PUERTO RICO,** | |
| **Plaintiff Intervenor,** | **Civil Action No. 11-02271 (GAG) (BJM)** |
| **v.** | |
| **FRANK C. STIPES,** *et al*., | |
| **Defendants.** | |
| **FRANK C. STIPES, WILLIAM VIDAL CARVAJAL, JUAN FRONTERA, HECTOR DEL RIO, CESAR RUIZ, AND PEDRO DOMINGUEZ,** | |
| **Third-Party Plaintiffs,** | |
| **v.** | |
| **THE UNITED STATES OF AMERICA AND THE FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,** | |
| **Third-Party Defendants.** | |

**REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT ON LEGAL SUFFICIENCY OF THIRD-PARTY COMPLAINT BY FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY**

## TABLE OF CONTENTS

ARGUMENT .............................................................................................................. 1

I.   THE COURT HAS NO JURISDICTION. ..................................................... 1

    A.   The FDIC Cannot Be Sued on a Tort Theory Under the Sue-and-be-Sued Clause. ...................................................................................................... 2

        1.   Contribution Claims Are Cognizable Under the FTCA. ............................ 2

        2.   Contribution Claims Are Based in Tort. ................................................... 4

    B.   The D&Os' New "Setoff" Theory Has No Merit. ...................................... 8

        1.   Setoff Claims Are Cognizable Under the FTCA. ...................................... 8

        2.   The D&Os' Claims in the Third-Party Complaint Are Not for Setoff. .... 10

        3.   FDIC-R is Not FDIC-C's Assignee in this Suit........................................ 11

        4.   FDIC-R Did Not Sue "On Behalf of" FDIC-C......................................... 14

        5.   FDIC-C's Creditor Status is Irrelevant. .................................................. 15

        6.   The D&Os' Setoff Theory is Untimely. ................................................... 17

II.  FDIC-C'S OTHER "DUTIES" ARE IRRELEVANT. ................................. 17

III. FDIC-C HAS NO DUTIES UNDER PUERTO RICO LAW.................................... 18

IV.  THE "NO DUTY" RULE BARS THE D&OS' CLAIMS............................................ 18

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Adams v. Zimmerman*, 73 F.3d 1164 (1st Cir. 1996) .................................................. 13
*Agostini v. Felton*, 521 U.S. 203 (1997) ...................................................................... 4
*Aviles v. United States*, 2013 WL 3227926 (D.P.R. June 25, 2013)........................... 7
*Bowen v. Massachusetts*, 487 U.S. 879 (1988)............................................................ 6
*Branch v. FDIC*, 825 F. Supp. 384 (D. Mass. 1993) .................................................. 6
*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981 ................................ 23
*Colon v. Rinaldi*, 2006 WL 3421862 (D.P.R. Nov. 28, 2006)..................................... 5
*Corbin v. Federal Reserve Bank*, 458 F. Supp. 143 (S.D.N.Y. 1978) ........................ 6
*Credit Life Ins. Co. v. FDIC*, 870 F. Supp. 417 (D.N.H. 1993)................................ 18
*Depositors Trust Co. v. Frati Enters., Inc.*, 590 F.2d 377 (1st Cir. 1979).................. 19
*Dominguez v. FDIC*, 90 F.R.D. 595 (D.P.R. 1981) .................................................... 13
*Drake v. Raymark Indus.*, 772 F.2d 1007 (1st Cir. 1985)............................................ 8
*Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008) ..................................... 21
*Emhart Indus., Inc. v. United States Dep't of the Air Force*, 2011 WL 5184192 (D.R.I.
    Nov. 1, 2011) .......................................................................................................... 10
*FDIC v. Bernstein*, 944 F.2d 101 (2d Cir. 1991) ...................................................... 23
*FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364 (7th Cir. 1979)....................... 11, 13
*FDIC v. de Jesus Velez*, 514 F. Supp. 829 (D.P.R. 1981) ......................................... 18
*FDIC v. De Jesus Velez*, 678 F.2d 371 (1st Cir. 1982)............................................. 19
*FDIC v. Ernst & Whinney*, 1992 WL 535605 (E.D. Tenn. May 19, 1992)................ 11
*FDIC v. FSSS*, 829 F. Supp. 317 (D. Alaska 1993) .................................................. 11
*FDIC v. Haines*, 3 F. Supp. 2d 155 (D. Conn. 1997) ................................................ 21
*FDIC v. La Rambla Shopping Center, Inc.*, 791 F.2d 215 (1st Cir. 1986)........... 15, 16, 18
*FDIC v. Meyer*, 510 U.S. 471 (1994) ........................................................................... 3
*FDIC v. O'Melveny & Myers*, 969 F.2d 744 (9th Cir. 1992) .................................... 22
*FDIC v. Ornstein,* 73 F. Supp. 2d 277 (E.D.N.Y. 1999) ........................................... 23
*FDIC v. Roldan-Fonseca*, 795 F.2d 1102 (1st Cir. 1986) ..................................... 18, 19
*FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013).................................................. 18, 21, 22
*FDIC v. URDECO*, 653 F. Supp. 144 (D.P.R. 1986) ............................................... 10
*FDIC v. Vogel*, 437 F.Supp. 660 (E.D. Wis. 1977) .................................................. 13
*First Nat'l Bank v. Genina Marine Servs.*, 136 F.3d 391 (5th Cir. 1998) ................. 11
*García Méndez v. Vázquez Bruno*, 440 F. Supp. 985 (D.P.R. 1977)........................ 13
*Gen. Elec. Co. v. Cuban Am. Nickel Co.*, 396 F.2d 89 (5th Cir. 1968) ..................... 9
*Globig v. Greene & Gust Co.*, 184 F. Supp. 530 (E.D. Wis. 1960).............................. 8
*Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676 (S.D.W.Va. 2007) ............... 21, 23
*Hercules Inc. v. United States*, 516 U.S. 417 (1996)................................................... 8
*Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476 (10th Cir. 1991) ......................... 9

*In re Franklin Sav. Corp.*, 385 F.3d 1279 (10th Cir. 2004)........................................... 12

*In re N-500L Cases*, 691 F.2d 15 (1st Cir. 1982) ....................................................... 7

*In re SemCrude, L.P.*, 399 B.R. 388 (Bankr. D. Del. 2009) ......................................... 18

*In re Supreme Beef Processors, Inc.*, 468 F.3d 248 (5th Cir. 2006).............................. 12

*Koken v. Stateco Inc.*, 2007 WL 2141298 (N.D. Cal. July 25, 2007)............................ 19

*Lloyds' London v. Blair*, 262 F.2d 211 (10th Cir. 1958) ............................................. 8

*Loeffler v. Frank*, 486 U.S. 549 (1988).................................................................. 2, 4

Matter of United Sciences of America, Inc., 893 F.2d 720 (5th Cir. 1990) ............... 17

*Moon v. Takisaki*, 501 F.2d 389 (9th Cir. 1974)........................................................ 5

*NCUA v. First Union Capital Markets Corp.*, 189 F.R.D. 158 (D. Md. 1999) .......... 21

*Newport Air Park v. United States*, 419 F.2d 342 (1st Cir. 1969) ............................... 7

*O'Melveny & Myers v. FDIC*, 512 U.S.C. 79 (1994) ......................................... 21, 23

*Pesnell v. United States*, 64 F. App'x 73 (9th Cir. 2003) ............................................ 6

*Rehoboth McKinley Christian Healthcare Servs., Inc. v. United States Dep't of Health & Human Servs.*, 853 F. Supp. 2d 1107 (D.N.M. 2012) ..................................................... 6

*Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731 (5th Cir. 2010) ............ 9

*RTC v. Sands*, 863 F. Supp. 365 (N.D. Tex. 1994)................................................... 23

*S.L.G. Szendrey v. Hospicare, Inc.* 158 P.R. Dec. 648 (2003) .................................... 5

*Smith v. Williams Hospitality Mgmt. Corp.*, 950 F. Supp. 436 (D.P.R. 1996) ............ 20

*Stingley v. Raskey*, 1995 WL 696591 (D. Alaska Nov. 20, 1995)................................. 6

*Syms v. Olin Corp.*, 408 F.3d 95 (2d Cir. 2005) ....................................................... 9

*Talbert v. United States*, 932 F.2d 1064 (4th Cir. 1991) ............................................ 5

*Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 950 F. Supp. 1217 (D.P.R. 1996)......... 5

*United States v. American Nat'l Bank & Trust Co.*, 443 F. Supp. 167 (N.D. Ill. 1977)......... 6

*United States v. Baden Plaza Assocs.*, 826 F. Supp. 294 (E.D. Mo. 1993) ................. 12

*United States v. Gaubert*, 499 U.S. 315 (1991) ..................................................... 21

*United States v. Griffin*, 84 F.3d 912 (7th Cir. 1996). ............................................... 1

*United States v. Shaner*, 1992 WL 154618 (E.D. Pa. June 15, 1992) .......................... 8

*United States v. Texas*, 507 U.S. 529 (1993) ......................................................... 23

*United States v. Yellow Cab Co.*, 340 U.S. 543 (1951 ............................................... 3

*United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996 (1st Cir. 1993)......... 10, 13

*Verderber v. Perry*, 181 F.3d 81, 1999 WL 525953 (1st Cir. Mar. 8, 1999)............... 13

*Villafane Neris v. Citibank, N.A.*, 845 F. Supp. 930 (D.P.R. 1994)............................ 13

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), ..................................................... 6

*Wenfang Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012)............................................... 18

*Wojciechowicz v. United States*, 582 F.3d 57 (1st Cir. 2009)................................... 20

*Wojciechowski v. United States*, 474 F. Supp. 2d 291 (D.P.R. 2007) ........................ 11

# STATUTES

5 U.S.C. § 702 ................................................................................................... 5

12 U.S.C. § 1819 .......................................................................................... 1, 2

12 U.S.C. § 1821 ........................................................................... 12, 14, 15, 20

28 U.S.C. § 2679 .......................................................................................... 2, 4, 9

28 U.S.C. § 2680 ............................................................................................ 10

28 U.S.C. § 1346 .......................................................................................... 2, 3

31 L.P.R.A. § 3221 ........................................................................................ 11

31 L.P.R.A. § 3222 ........................................................................................ 11

Act of Sept. 21, 1950, ch. 967, 64 Stat. 881 .................................................. 20

Pub. L. 101-73, 103 Stat. 216 (Aug. 9, 1989) ................................................. 2

Pub. L. 89-695, 80 Stat. 1055 (Oct. 16, 1966 .................................................. 2

# LEGISLATIVE HISTORY

H.R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945) ...................................... 4

# OTHER AUTHORITIES

Black's Law Dictionary 1230 (5th ed. 1979) .................................................. 9

The D&Os'[1] opposition to FDIC-C's motion for summary judgment is long on rhetoric,[2] but short on relevant legal authority. Conspicuously absent from the D&Os' brief are:

- A single case holding that claims for contribution or apportionment cannot proceed under the Federal Tort Claims Act (FTCA), or suggesting that this proposition, settled five times over, at least, by the Supreme Court and the First Circuit, is no longer good law.
- A single case holding that tort claims can be filed under a "sue and be sued" clause.
- A single case holding the "no duty" rule is inapplicable to FDIC-C.
- A single case holding that the FDIC's separate corporate and receivership capacities may be ignored.
- A single case holding that FDIC-C's duties to the Deposit Insurance Fund confer standing on third parties to sue FDIC-C for negligence.
- A discussion—indeed, even a mention—of Puerto Rico law on the duties *vel non* of government regulators to regulated entities, despite the Court's specific request that the parties brief that issue. *See* Docket Nos. 934, 938, 967.

The D&Os ask this Court to disregard binding and well-settled law, creating causes of action and legal duties where none presently exist. The Court should ignore the D&Os' overheated rhetoric, reject their invitation to create new law, and grant summary judgment to FDIC-C.

## ARGUMENT

### I.   THE COURT HAS NO JURISDICTION.

Tacitly conceding that the "discretionary function" exception to the FTCA bars their FTCA claim against the United States, the D&Os have now abandoned their FTCA theory and rest the Third-Party Complaint on two (apparently alternative) jurisdictional bases: the FDIC's "sue and be sued" clause, 12 U.S.C. § 1819(4), and an implied waiver of sovereign immunity arising from a theory of setoff. Neither theory has merit.[3]

---

[1] The Third-Party Complaint was filed by Frank C. Stipes, William Vidal Carvajal, Juan Frontera, Hector Del Rio, Cesar Ruiz, and Pedro Dominguez. Other defendants have joined the Third-Party Complaint. *See* Docket Nos. 666, 832, 848, 849, 852, 859. For present purposes, all of the above are referred to as the "D&Os."

[2] A well-known legal aphorism instructs: "If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table." *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996). The D&Os give that table a mighty pounding, but the silences and omissions in their opposition speak louder than their hyperbolic accusations.

[3] As the D&Os have voluntarily dismissed the United States, FDIC-C need not further address the applicability of the "discretionary function" exception to the FTCA, or the constitutional roots of that exception.

**A.** **The FDIC Cannot Be Sued on a Tort Theory Under the Sue-and-be-Sued Clause.**

FDIC-C has shown that the D&Os cannot sue under 12 U.S.C. § 1819(4),[4] the FDIC's sue-and-be-sued clause, because, as controlling authorities have held, the FTCA expressly preempts such clauses and permits tort claims against federal agencies only under the FTCA, whether or not such agencies have sue-and-be-sued clauses. Docket No. 917 at 12-13; *see* 28 U.S.C. § 2679(a).[5] The D&Os suggest that the Court should ignore binding precedents and construe their contribution and apportionment claims against FDIC-C as something other than a tort claim. Docket No. 1018 at 10-19. The Court should reject this invitation.

1.    Contribution Claims Are Cognizable Under the FTCA.

As FDIC-C has shown, binding Supreme Court and First Circuit authorities make claims for contribution or apportionment cognizable under the FTCA; the FTCA therefore trumps the

---

[4] The D&Os make the puzzling assertion that Congress "inserted" the clause "into FIRREA in 1989." Docket No. 1018 at 11. The clause long predated FIRREA. *See, e.g.*, Pub. L. 89-695, 80 Stat. 1055 (Oct. 16, 1966). The only change made in FIRREA was to separate the "sue and be sued" authorization from the federal question provision and move the latter to a new subsection (b) of section 1819. Pub. L. 101-73, 103 Stat. 216 (Aug. 9, 1989).

[5] The D&Os argue that it is "presumed" that an agency with a sue-and-be-sued clause is "'not less amenable to judicial process than a private enterprise under like circumstances would be,'" Docket No. 1018 at 11 (quoting *Loeffler v. Frank*, 486 U.S. 549, 556 (1988)), but neglects to note that the Court in *Loeffler* cited the FTCA as creating an exception to that presumption:

> [W]hen Congress intends the waiver of sovereign immunity in a new cause of action directed against federal entities to be exclusive--in effect, to limit the force of "sue-and-be-sued" clauses--it has said so expressly. Congress' waiver of the sovereign immunity of the United States for certain torts of federal employees, in the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680, provides an example. . . . Congress expressly limited the waivers of sovereign immunity that it had previously effected through "sue-and-be-sued" clauses and stated that, in the context of suits for which it provided a cause of action under the FTCA, "sue-and-be-sued" agencies would be subject to suit only to the same limited extent as agencies whose sovereign immunity from tort suits was being waived for the first time. . . . [*See*] 28 U.S.C. § 2679(a).

*Id.* at 561-62. The Supreme Court has therefore recognized that § 2679(a) limits the reach of agencies' sue-and-be-sued clauses, and the "presumption" has no force here.

FDIC's "sue and be sued" clause. Docket No. 917 at 14-15. The D&Os offer no persuasive basis for ignoring those authorities.

First, the D&Os argue that these cases did not expressly consider whether the contribution and apportionment theories were for "money damages," Docket No. 1018 at 17, but as each of these cases found such claims actionable under the FTCA, and as "money damages" has been an element of an FTCA claim since 1948,[6] the only reasonable inference is that those decisions did, in fact, deem contribution claims to be for "money damages"—indeed, that they found the point too obvious to bother making explicitly. The D&Os invite the Court to hold, by way of alternative, that the Supreme Court and the First Circuit, in rendering five separate decisions holding that contribution claims were actionable under the FTCA, simply did not notice that "money damages" was an element of an FTCA claim, an improbable theory at best.[7]

It is no answer for the D&Os to assert that *Yellow Cab* and its progeny did not involve agencies with "sue and be sued" clauses. Docket No. 1018 at 19. FTCA claims against "sue and be sued" agencies require precisely the same elements as FTCA claims against other agencies; there is only one FTCA sovereign immunity waiver, it appears at 28 U.S.C. § 1346(b) (and has appeared there since 1948), and it includes "money damages" as an element. The Court should reject the D&Os' attempt to create two separate FTCAs as directly contrary to Congress's intent. *Loeffler*, 486 U.S. at 562 ("Congress wished to 'place torts of "suable" agencies of the United

---

[6] Between 1946 and 1948, the FTCA required that claims be for "money"; in 1948, the present version of the statute, requiring "money damages" and making other "minor changes . . . in phraseology," was enacted. 28 U.S.C. § 1346(b); *see United States v. Yellow Cab Co.*, 340 U.S. 543, 547 n.4 (1951). The Supreme Court has held that the change was not material. *Id.* ("We rely on the meaning of the language in the original Act and read the revised language as carrying it out.").

[7] The D&Os cite *FDIC v. Meyer*, 510 U.S. 471 (1994), for the proposition that "a cognizable FTCA claim must allege all six of the statute's elements," Docket No. 1018 at 19. It is not clear whether the D&Os intend to argue that this was an interpretive breakthrough in the history of the FTCA, but at any rate it is safe to say that courts were already aware of this requirement.

States upon precisely the same footing as torts of "nonsuable" agencies.'") (quoting H.R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945)).

The D&Os also argue that the *Yellow Cab* line of cases did not expressly state that the FTCA was the exclusive vehicle for contribution claims against suable agencies, Docket No. 1018 at 18, but it did not have to. Congress had left no doubt on that point. *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases *shall be exclusive*.") (emphasis added).

Finally, the D&Os suggest that the Supreme Court in *Yellow Cab* "overstated the case" in deeming contribution claims actionable under the FTCA. Docket No. 1018 at 19 n.28. The D&Os are free to believe that, but lower courts are not free to so hold. *Agostini v. Felton*, 521 U.S. 203, 237 (1997). *Yellow Cab* is the law unless and until overruled by the Supreme Court.

### 2.   Contribution Claims Are Based in Tort.

The D&Os' argument that contribution and apportionment claims are not within the bounds of the FTCA is therefore a nonstarter, as the question has long been settled, and at any rate this assertion is unpersuasive. The theory of *nivelación*, or contribution, on which the D&Os rely applies solely and specifically to tort theories, as this Court has explained:

> In the event that [a] joint tortfeasor is not a party to the proceedings, a defendant may implead him by way of a third-party complaint to seek a determination of specific percentages of negligence among the tortfeasors and secure a judgment for contribution, or bring a separate suit for "nivelación" to collect a proportionate share of the impleaded party's degree of negligence.

*Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 950 F. Supp. 1217, 1221 (D.P.R. 1996); *see also Colon v. Rinaldi*, 2006 WL 3421862 (D.P.R. Nov. 28, 2006) (noting "'the right of contribution between joint tortfeasors'") (quoting *S.L.G. Szendrey v. Hospicare, Inc.* 158 P.R.

4

Dec. 648, 654 (2003)). To prove that FDIC-C is liable for contribution or apportionment, therefore, the D&Os will need to show that FDIC-C is a "joint tortfeasor"—i.e., that it is liable in tort. To say that the D&Os' claim against FDIC-C is not a tort claim simply ignores the nature of the action.[8]

Equally unpersuasive is the D&Os' insistence that contribution and apportionment claims are outside the ambit of the FTCA because they are simply a matter of equity. *See* Docket No. 1018. The First Circuit has stated in the same breath that "the waiver contained in the Federal Tort Claims Act, FTCA, extends to claims for contribution when the government is a joint tortfeasor" and that "contribution . . . is a right based upon equitable fairness," *see Newport Air Park v. United States*, 419 F.2d 342, 346 (1st Cir. 1969), so plainly it is not the rule in this

---

[8] The D&Os' reliance on cases finding certain types of claims not actionable under the FTCA is simply misplaced, as those cases did not involve contribution or apportionment claims. Rather, they stand for the unexceptional proposition that injunctive and declaratory relief are not available under the FTCA, *see Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991); *Moon v. Takisaki*, 501 F.2d 389, 390 (9th Cir. 1974); *United States v. American Nat'l Bank & Trust Co.*, 443 F. Supp. 167, 171 (N.D. Ill. 1977); or simply involve different types of claims. *See, e.g., Pesnell v. United States*, 64 F. App'x 73, 74 (9th Cir. 2003) (unjust enrichment claim); *Rehoboth McKinley Christian Healthcare Servs., Inc. v. United States Dep't of Health & Human Servs.*, 853 F. Supp. 2d 1107, 1115 (D.N.M. 2012) (same); *Branch v. FDIC*, 825 F. Supp. 384, 419 (D. Mass. 1993) (fraudulent conveyance claim in bankruptcy proceeding); *Corbin v. Federal Reserve Bank*, 458 F. Supp. 143 (S.D.N.Y. 1978) (breach of trustee's duty). As for *Stingley v. Raskey*, 1995 WL 696591 (D. Alaska Nov. 20, 1995), that case, contrary to the D&Os' theories (and consistent with *Yellow Cab* and its progeny) allowed an apportionment claim to proceed under the FTCA. *Id.* at *7.

The D&Os also cite a discussion of the term "money damages" in the context of the Administrative Procedures Act, 5 U.S.C. § 702, in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), arguing that *Bowen* redefined that term in ways that bear on the FTCA. Not so. The Court in *Bowen* concluded that the reference to "money damages" in the APA (permitting "[a] person suffering legal wrong because of agency action" to "seek[] relief other than money damages") was intended to invoke "the time-honored distinction between damages and specific relief." *Id.* at 897. "Specific relief," the Court explained, meant injunctive or declaratory relief, sometimes in the form of compelled agency action (such as "the reinstatement of an employee with backpay," or for "the recovery of specific property or monies*,* ejectment from land, or injunction either directing or restraining the defendant officer's actions." *Id.* (citations omitted). The distinction drawn in *Bowen* has no relevance here: the D&Os are not seeking injunctive or declaratory relief, nor are they attempting to compel FDIC-C to take specific action. Thus, under *Bowen*'s terms, they are seeking "money damages" and the FTCA governs. Furthermore, it is questionable whether the meaning of the term "money damages" as it appears in the APA has any relevance here; the doctrine of *in pari materia* allows consideration of statutory language across statutes "addressing the same subject matter," *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006), but it is a stretch, as best, to view the FTCA and the APA as addressing the "same subject matter," as they deal with entirely different types of claims.

Circuit that claims that could be characterized as having an "equitable" basis are not actionable under the FTCA.[9]

It is noteworthy as well that the First Circuit, when it considered whether a contribution claim is "legal," entitling the third-party defendant to a jury trial, or "equitable," decided that it was "legal":

> At the heart of the original plaintiffs' claims against appellants and of appellees' contribution claims are allegations of appellants' negligence liability towards the plaintiffs and a claim for damages. Logically, the claim for contribution is derivative of the original plaintiffs' right to sue appellants directly for their negligence. . . . It arises out of the tort and turns on the legal relationship between the injured plaintiffs and the contribution defendants-the duty owed the former by the latter-and not on any relationship between the parties to the contribution action. . . . Unless and until appellants are found liable for the plaintiffs' injuries, it cannot be determined to what extent, if any, they are liable in damages to appellees. We conclude, as did the Ninth Circuit, that these underlying issues of negligence liability and damages are legal in nature and entitled appellants to a jury trial of the contribution claims.

*In re N-500L Cases*, 691 F.2d 15, 20-21 (1st Cir. 1982). In this Circuit, then, contribution claims are "legal" rather than "equitable," even if their roots are in equity.[10]

---

[9] As for *Aviles v. United States*, 2013 WL 3227926 (D.P.R. June 25, 2013), the Court had no occasion in that case to consider on the merits whether a contribution claim could be pursued despite statutory immunity to damages claims. (The United States sought only declaratory relief. *See* Exhibit 1.) The parties settled the case; contrary to the D&Os' assertion, *see* Docket No. 1018 at 10, the United States did not "prevail" on anything. At any rate, even assuming *arguendo* that Puerto Rico courts deem contribution claims something other than tort claims, and thus exempt from the immunity conferred by the workers' compensation statute, any such decisions have no relevance here. This case is governed by the FTCA, not Puerto Rico workers' compensation law, and controlling authorities have permitted contribution claims to proceed under the FTCA.

[10] Indeed, the D&Os' misunderstanding of the term "equitable" has been rejected before. A court explained why contribution claims are actionable under the FTCA shortly after *Yellow Cab*:

> It is plain that the obligation of a joint tort-feasor to contribute arises out of the tort and the fact that the one seeking contribution has paid more than his fair and just share. The word "equitable" as mentioned in the decision does not mean a matter for chancery. It does not mean "equity" as opposed to "law." It is founded upon natural justice, and when the words "equitable" or "equity" are used, reference is made to an attempt to do right and to deal fairly between the parties. Nonetheless, it is a legal right enforced in actions at law where the parties have a right to jury trial. Basically it is founded upon the same principles as the right to indemnification in tort situations . . . . [I]t clearly lies under the Federal Tort Claims Act as a right in law, not a right in equity.

*Globig v. Greene & Gust Co.*, 184 F. Supp. 530, 534 (E.D. Wis. 1960); *see also United States v. Shaner*, 1992 WL 154618, *3 (E.D. Pa. June 15, 1992) (contribution claims are legal rather than equitable).

Common sense supports this conclusion. The D&Os are asking the Court to hold that FDIC-C is a tortfeasor and must pay a portion of any judgment. Such a request sounds in tort, and should be adjudicated under the Federal Tort Claims Act. *See Hercules Inc. v. United States*, 516 U.S. 417, 421 (1996) (noting petitioners' suit "under tort theories of contribution and noncontractual indemnification"); *Drake v. Raymark Indus.*, 772 F.2d 1007, 1011 n.2 (1st Cir. 1985) (indemnity action "appears to be based on tort theory . . . and is in effect only a more extreme form of contribution"); *Lloyds' London v. Blair*, 262 F.2d 211, 213 (10th Cir. 1958) (noting that, in *Yellow Cab*, "the cause of action pleaded against the defendant was one sounding in tort and the basis of the third-party proceeding against the United States was of like character").

Furthermore, the distinction between theories that are based on equity and those that sound in tort is not as rigid as the D&Os would have it; many different types of actions rest both on equitable and tort principles. *See, e.g.*, *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 737 (5th Cir. 2010) (plaintiff "claims personal injury for which she seeks monetary damages and/or equitable relief. This claim also sounds in tort."); *Syms v. Olin Corp.*, 408 F.3d 95, 110 (2d Cir. 2005) (noting "the availability of injunctive relief in equity under a continuing tort theory"); *Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1487 (10th Cir. 1991) ("[T]he court's adoption of a direct claim sounding in tort was derived from, and expanded upon, the same equitable concerns that motivated adoption of an equitable subrogation remedy."); *Gen. Elec. Co. v. Cuban Am. Nickel Co.*, 396 F.2d 89, 90 (5th Cir. 1968) ("Indemnity may arise . . . by equitable concepts based on the tort theory of indemnity."). Even assuming that contribution and apportionment claims could be considered "equitable" in some sense, then that would not make them something other than tort actions.

7

At bottom, however, the D&Os' notions about which types of actions are "equitable" are academic. Nowhere do the D&Os cite a single contribution or apportionment decision in which the court declined to follow *Yellow Cab* or its successor cases. Given that, it would be error for the Court to adopt the D&Os' theory that contribution and apportionment claims are not cognizable under the FTCA. And as those claims are cognizable, FDIC-C is not a proper defendant in this action. Summary judgment is therefore appropriate.[11]

### B.      The D&Os' New "Setoff" Theory Has No Merit.

The D&Os argued on April 22, 2014—for the first time, more than 15 months after filing their Third-Party Complaint—that the claims in the Third-Party Complaint are not third-party claims at all, and reiterate that new argument in their opposition. Docket No. 966 at 3-6; Docket No. 1018 at 7-10. Specifically, the D&Os now suggest that the Court has jurisdiction over their claims because they are "setoff" claims against FDIC-R as the plaintiff in this matter, and thus they are not subject to the jurisdictional limitations of the Federal Tort Claims Act. The Court should reject this novel theory.

### 1.      Setoff Claims Are Cognizable Under the FTCA.

The D&Os have not moved for leave to amend their Answers to include their new setoff theories, but any such motion would be futile because the discretionary function exception to the FTCA bars those claims.[12] The D&Os appear to be assuming that the FTCA can be avoided if

---

[11] FDIC-C notes that the Third-Party Complaint contains a request for declaratory relief (in the form of a declaration that FDIC-C was negligent and that its negligence caused the damages alleged in FDIC-R's complaint), along with requests for contribution or apportionment. Docket No. 415 at 9-10. Declaratory relief is not within the purview of the FTCA. FDIC-C is skeptical that the substantive limitations of the FTCA are so easily avoided, *see Emhart Indus., Inc. v. United States Dep't of the Air Force*, 2011 WL 5184192, *2 (D.R.I. Nov. 1, 2011) (dismissing for lack of jurisdiction request for declaratory judgment on indemnity claim), but the Court need not reach that issue, as the request for declaratory relief assumes duties to Westernbank that FDIC-C did not owe.

[12] Setoffs are generally asserted as permissive counterclaims. *See, e.g.*, *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 998 (1st Cir. 1993) (setoff is a "'counter-claim demand which defendant holds *against*

8

they can characterize their claims as setoff claims, and that premise is wrong: setoff claims must

be pursued under the FTCA. As one court has explained:

> The Federal Tort Claims Act (FTCA) controls, to the exclusion of other bodies of
> law, the assertion of tort liability against FDIC in its corporate capacity. 28 U.S.C.
> § 2679(a) ("The authority of any federal agency to sue and be sued in its own
> name shall not be construed to authorize suits against such federal agency on
> claims which are cognizable under section 1346(b) of this title, and the remedies
> provided by this title in such cases shall be exclusive."). **This is true even with
> respect to assertions of tort liability made in counterclaims or by way of set-
> off, the only exception being a narrow one for matters in recoupment.**
> *Federal Deposit Insurance Corporation v. Citizens Bank & Trust Company,* 592
> F.2d 364 (7th Cir.), *cert. denied,* 444 U.S. 829 (1979).

*FDIC v. Ernst & Whinney*, 1992 WL 535605, *2 (E.D. Tenn. May 19, 1992) (emphasis added).[13]

Having found the FTCA applicable, the court applied the discretionary function exception and

dismissed the case. *Id.* at *4; *see Citizens Bank & Trust*, 592 F.2d at 371 (setoff claim and

counterclaim exclusively governed by FTCA); *FDIC v. FSSS*, 829 F. Supp. 317, 322 (D. Alaska

1993) ("permissive counterclaims for setoff" subject to FTCA's requirements); *United States v.

Baden Plaza Assocs.*, 826 F. Supp. 294, 298 (E.D. Mo. 1993) (setoff claim subject to FTCA and

barred by "discretionary function" exception); *see also In re Supreme Beef Processors, Inc.*, 468

F.3d 248 (5th Cir. 2006) (en banc) (provision for setoff in bankruptcy matters does not trump

FTCA's limitations); *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1289 (10th Cir. 2004) (same).

Thus, whether the D&Os' theories are directed against FDIC-R as a setoff or counterclaim or

against FDIC-C as a third-party claim, they are within the purview of the FTCA and are subject

---

*plaintiff,* arising out of a transaction extrinsic of plaintiff's cause of action'") (emphasis added) (quoting
Black's Law Dictionary 1230 (5th ed. 1979)); *FDIC v. URDECO*, 653 F. Supp. 144, 147 (D.P.R. 1986).
[13] FDIC-C has already explained that the recoupment exception is inapplicable here because FDIC-C is not the
plaintiff. Docket No. 917 at 21-23. None of the recoupment cases the D&Os cite, *see* Docket No. 1018 at 8,
involves recoupment claims against third-party defendants; recoupment applies only to claims against the
plaintiff. The D&Os' characterization of contribution as "the modern version of recoupment" is incorrect;
recoupment is directed at the plaintiff, whereas contribution is directed at third parties (either within the
original suit or in a subsequent suit). *Compare First Nat'l Bank v. Genina Marine Servs.*, 136 F.3d 391 (5th
Cir. 1998) (recoupment doctrine inapplicable to third-party claims) *with Wojciechowski v. United States*, 474
F. Supp. 2d 291, 295 (D.P.R. 2007), *aff'd*, 582 F.3d 57 (1st Cir. 2009).

to the discretionary function exception, 28 U.S.C. § 2680(a). As FDIC-C has shown, the discretionary function exception is fully applicable here, and the Court therefore has no jurisdiction over the D&Os' setoff claims.

2.     The D&Os' Claims in the Third-Party Complaint Are Not for Setoff.

Furthermore, the D&Os' claims for contribution or apportionment are not "setoff" claims because they are directed at FDIC-C, not FDIC-R. As FDIC-C has previously explained, FDIC-C and FDIC-R are separate entities, with separate rights and obligations, and it is improper to conflate them. *See* Docket No. 917 at 33-34. The theory in the Third-Party Complaint is that FDIC-C, as Westernbank's primary federal regulator, (1) failed to warn Westernbank and the D&Os that the D&Os' conduct was harming the bank, and (2) caused the closure of Westernbank by thwarting the bank's efforts to raise capital. Those theories have no factual merit, but in any event they address the pre-failure conduct of FDIC-C in its regulatory capacity, not the post-failure conduct of FDIC-R. (FDIC-R, of course, did not exist as such until the failure; it inherits certain liabilities arising from the *bank's* pre-failure conduct, but obviously none of the theories in the Third-Party Complaint are directed at the bank's acts.)

The D&Os cannot turn these claims against FDIC-C into setoff claims against FDIC-R. Setoffs can only be pursued where there is mutuality between the claims. This Court has recognized as much in a suit involving a claim against FDIC-C, an FDIC-C counterclaim, and the plaintiff's attempt to set off an FDIC-R obligation against the counterclaim:

> Plaintiff alleged a set-off of the debentures against the note, but this was not possible since the obligations are not mutually extinguishable. Even if the debentures were due the same date as the note, there is no mutuality since the note is payable to the FDIC in its corporate capacity, whereas the debentures are payable by the Receiver of the Bank. Whatever claim plaintiff could assert against the Bank is enforceable only against its Receiver. *FDIC v. Vogel*, 437 F. Supp. 660, 665 (E.D. Wis. 1977). Compensation or set-off cannot take place either

under the law of Puerto Rico, 31 L.P.R.A. §§ 3221, 3222; *García Méndez v. Vázquez Bruno*, 440 F. Supp. 985 (D.P.R. 1977), or under federal law.

*Dominguez v. FDIC*, 90 F.R.D. 595, 598 (D.P.R. 1981); *Villafane Neris v. Citibank, N.A.*, 845 F. Supp. 930, 934 (D.P.R. 1994) ("Under Puerto Rico law, a setoff can take place when two persons, in their own right, are mutually creditors and debtors of each other."); *see also Verderber v. Perry*, 181 F.3d 81, 1999 WL 525953, *4 (1st Cir. Mar. 8, 1999) (setoff applied "'where the parties have reciprocal or mutual obligations to one another'") (quoting *Adams v. Zimmerman*, 73 F.3d 1164, 1173 (1st Cir. 1996)); *United Structures*, 9 F.3d at 998 (setoff is a "'counter-claim demand which defendant holds *against plaintiff,* arising out of a transaction extrinsic of plaintiff's cause of action'") (emphasis added) (citations omitted)); *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368-69 (7th Cir. 1979) (setoff claim and counterclaim directed at FDIC-R conduct cannot be asserted against FDIC-C, even though FDIC-C was acting as FDIC-R's assignee, because setoff was unrelated to assigned claim). This Court recognized in *Dominguez* that FDIC-R obligations cannot be set off against an FDIC-C claim; the reverse is equally true.

### 3.    FDIC-R is Not FDIC-C's Assignee in this Suit.

The D&Os attempt to evade the distinction between FDIC-C and FDIC-R, recognized by the First Circuit on numerous occasions, *see* Docket No. 917 at 33-34, by characterizing FDIC-R as FDIC-C's "assignee," *see* Docket No. 966 at 8, but that is simply false.

The D&Os cite an FDIC-R interrogatory response for the proposition that FDIC-C assigned claims to FDIC-R. Docket No. 956 at 7; Docket No. 1018 at 7. FDIC-R said no such thing. Rather, it stated, by way of explaining who the creditors of a receivership are, that FDIC-C is subrogated by operation of law to any claims of *depositors*, as the statute cited in the interrogatory response reflects:

11

> Notwithstanding any other provision of Federal law, the law of any State, or the constitution of any State, the Corporation, upon the payment to any depositor as provided in subsection (f) of this section in connection with any insured depository institution or insured branch described in such subsection or the assumption of any deposit in such institution or branch by another insured depository institution pursuant to this section or section 1823 of this title, shall be subrogated to all rights of the depositor against such institution or branch to the extent of such payment or assumption.

12 U.S.C. § 1821(g)(1). Here, Westernbank had a substantial volume (over $3 billion) of brokered deposits at the time of failure. While Banco Popular assumed the non-brokered deposits, FDIC-C paid the deposit brokers the insured amounts of their deposits upon Westernbank's failure, consistent with FDIC policy. Upon payment of the insured amounts from the Deposit Insurance Fund, FDIC-C acquired a subrogated claim regarding those deposits, entitling it to seek to recover the amounts paid to the deposit brokers. (FDIC-C could also, in theory, pursue any claims regarding the bank's mishandling of those brokered deposits, though it has not done so to date.) FDIC-R, for its part, brought this suit as part of an effort to marshal assets to pay creditors of the receivership, including, but not limited to, FDIC-C.

FDIC-C is at a loss to understand how this subrogation could be relevant to anything in this case. FDIC-R did not sue the D&Os over the mishandling of brokered deposits; it sued the D&Os for their mismanagement of the bank's lending. The FDIC-R is not *anyone's* "assignee" or "subrogee" in this lawsuit; it sued the D&Os as the receiver of Westernbank, contending that the D&Os' conduct harmed the bank. FDIC-R's complaint clearly states as much:

> [P]ursuant to 12 U.S.C. § 1821(d)(2)(A) and § 1823(d)(3)(A), the Receiver succeeded to all rights, claims, titles, powers, privileges, and assets of Westernbank and its stockholders, members, account holders, depositors, officers, or directors of Westernbank with respect to the institution and the assets of the institution, including the right to bring this action against the former officers and directors of Westernbank.

12

Docket No. 182, ¶ 21. Even if FDIC-R were FDIC-C's "assignee" as to some theoretical claim regarding brokered deposits—and it is not—that would not make FDIC-R an "assignee" of FDIC-C as to *every conceivable lawsuit FDIC-R could file*, as the D&Os appear to be assuming. Even in that "assignment" scenario, it would not be proper to bring a setoff claim against FDIC-R for FDIC-C conduct unrelated to the "assigned" claim.

The First Circuit has explained this very point. In *FDIC v. La Rambla Shopping Center, Inc.*, 791 F.2d 215 (1st Cir. 1986), following the failure of a bank, FDIC-C purchased some of the failed bank's assets from FDIC-R and brought suit for collection on one of the purchased notes. The defendant attempted to assert a counterclaim against FDIC-C based on a different transaction with the failed bank—i.e., properly asserted against FDIC-R, not FDIC-C. The court recognized that no such counterclaim could be asserted: "That receiver, however, even though it is the FDIC, is not a party to this lawsuit; and we do not see how it can be made a party in respect to La Rambla's counterclaim." *Id.* at 220. The claim could not be treated as "pendent" or "ancillary" because, to so characterize it, "we should have to treat the FDIC in its corporate capacity and the FDIC as receiver as a single entity, called the 'plaintiff in this lawsuit,' which we shall not do." *Id.* In other words, even though FDIC-C as the plaintiff in that suit *was* acting as FDIC-R's assignee (whereas there is no such assignment here), the First Circuit rejected the defendant's attempt to conflate FDIC-C and FDIC-R, as FDIC-C is not responsible for FDIC-R's acts or vice versa. Here, likewise, the D&Os are now, for the first time, citing the alleged conduct of FDIC-C, as the bank's regulator, as a setoff against their liability to FDIC-R, and *La Rambla* rejects that theory of setoff.

13

4.      FDIC-R Did Not Sue "On Behalf of" FDIC-C.

The D&Os also cite an FDIC-R interrogatory answer stating that FDIC-R "brings claims"

against directors and officers of failed banks "for the benefit of the FDIC," Docket No. 956 at

12; apparently attempting to turn that anodyne statement into a dramatic admission that FDIC-R

is working at FDIC-C's behest. Docket No. 1018 at 7. The D&Os' entire argument rests on a

misleadingly truncated quote. FDIC-R was citing the Federal Deposit Insurance Act, which

provides that such suits may be filed for the benefit of FDIC as *receiver*, or *its* assignee:

> A director or officer of an insured depository institution may be held personally
> liable for monetary damages in any civil action by, on behalf of, or at the request
> or direction of the Corporation, **which action is prosecuted wholly or partially
> for the benefit of the Corporation**--
>
> > **(1)** **acting as conservator or receiver of such institution**,
> >
> > **(2)** acting based upon a suit, claim, or cause of action purchased
> > from, assigned by, or otherwise conveyed by such receiver or
> > conservator, or
> >
> > **(3)** acting based upon a suit, claim, or cause of action purchased
> > from, assigned by, or otherwise conveyed in whole or in part by an
> > insured depository institution or its affiliate in connection with
> > assistance provided under section 1823 of this title,
>
> for gross negligence, including any similar conduct or conduct that demonstrates a
> greater disregard of a duty of care (than gross negligence) including intentional
> tortious conduct, as such terms are defined and determined under applicable State
> law.

12 U.S.C. § 1821(k) (emphasis added). Nothing about this provision deems FDIC-R suits against

former directors and officers to be for the benefit of FDIC-C.

Equally wrong is the D&Os' suggestion that the only beneficiary of FDIC-R's suit will

be FDIC-C. Docket No. 1018 at 8. FDIC-R has the right to pursue claims under FIRREA, and is

required to distribute the proceeds of any recoveries to its creditors in accordance with a

statutory priority scheme. 12 U.S.C. § 1821(d)(2)(A), (d)(11)(A). That priority scheme requires

that administrative expenses be paid first, then the FDIC-C's deposit liabilities, then other

14

creditors, subordinated liabilities, and shareholder claims. *Id.* § 1821(d)(11)(A). FDIC-R therefore brought this claim as receiver for the ultimate benefit of all claimants or potential claimants of the receivership, not on behalf of any single creditor, and administrative expenses take priority over FDIC-C's deposit liability claims. *Id.*; *see also* Docket No. 866-2 at 9.

5.     FDIC-C's Creditor Status is Irrelevant.

The D&Os appear to be asserting as well that because FDIC-C (due to its payment of deposit insurance claims) is one of FDIC-R's primary creditors, FDIC-C "assigned" its claims to FDIC-R. Docket No. 966 at 7; Docket No. 1018 at 7. That is wrong too. Creditor-debtor relationships are not the same as assignor-assignee relationships; a debtor does not stand in the shoes of its creditor, such that it is liable for setoff claims directed against the creditor's conduct, simply because it has an obligation to pay that creditor. The D&Os cite no cases for that proposition, and courts have rejected "triangular setoffs" as inconsistent with the requirement of mutuality. *See, e.g.*, *Matter of United Sciences of America, Inc.,* 893 F.2d 720, 723 (5th Cir. 1990) ("The mutuality requirement is designed to protect against 'triangular' set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party."); *In re SemCrude, L.P.*, 399 B.R. 388, 393-94 (Bankr. D. Del. 2009).

The Court should therefore ignore the D&Os' various assertions about the impermissibility of allowing FDIC-R to proceed without allowing the D&Os to assert setoff rights. Docket No. 966 at 6-7; Docket No. 1018 at 9 n.16.[14] The D&Os cannot assert a setoff

---

[14] The D&Os' citation of *FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013), for the proposition that setoff claims based on FDIC-C conduct may be asserted against FDIC-R is predictably meritless. Docket No. 1018 at 8-9. As FDIC-C has previously noted, Docket No. 917 at 30 n.15, FDIC-R brought the suit in *Skow*; the affirmative defenses considered by the Eleventh Circuit all pertained to "the FDIC's post-receivership conduct in its role as receiver," and the court expressly noted that the district court had stricken "affirmative defenses based on the FDIC's pre-receivership conduct performed in its regulatory capacity." *Id.* at 1345 & n.5. That decision, the court stated, was "no part of this appeal." *Id.* at 1345 n.5. *Skow* simply underscores that setoff theories are not properly asserted without mutuality.

claim here without conflating FDIC-C and FDIC-R, and the First Circuit has repeatedly, and unequivocally, rejected such a conflation. *La Rambla*, 791 F.2d at 220; *see also FDIC v. Roldan-Fonseca*, 795 F.2d 1102, 1109 (1st Cir. 1986) (dismissing counterclaim against FDIC-C because claim alleged conduct of FDIC-R, not FDIC-C: "'Corporate' FDIC and 'Receiver' FDIC are separate and distinct legal entities. . . . Corporate FDIC is not liable for wrongdoings by Receiver FDIC."); *Credit Life Ins. Co. v. FDIC*, 870 F. Supp. 2d 417, 421 (D.N.H. 1993) ("FDIC–Corporate and FDIC–Receiver are distinct entities. . . . FDIC–Corporate may come into possession of the failed bank's assets, but cannot be held responsible for the failed bank's liabilities or the receivership's actions. . . . Therefore, FDIC–Corporate is not responsible for Amoskeag's liability on the LOC . . . or for FDIC–Receiver's actions in disaffirming the LOC."); *FDIC v. de Jesus Velez*, 514 F. Supp. 829 (D.P.R. 1981) (dismissing counterclaim in suit brought by FDIC-C, because counterclaim is "enforceable only against the Receiver but not against the FDIC in its corporate capacity. . . . The fact that the FDIC is acting in two capacities does not affect the outcome."), *aff'd*, 678 F.2d 371 (1st Cir. 1982).[15]

---

Equally inapposite is *Wenfang Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012). *See* Docket No. 1018 at 10. That case involved a statute governing aliens seeking admission to the United States; because aliens who are "likely at any time to become a public charge" cannot be admitted, individuals sponsoring such admissions enter into a contract with the United States by operation of law under which the sponsor agrees to provide for the alien's support, and any public entities ultimately compelled to provide the alien support are entitled to sue the sponsor. 686 F.3d at 420. This case involves no such third-party beneficiary relationship.

[15] The D&Os also assert that it is proper to assert claims regarding FDIC-C conduct against FDIC-R because FDIC-C is FDIC-R's "corporate parent." Docket No. 1018 at 7. That is not the case, *see* Docket No. 917 at 33 n.19; the FDIC's two capacities are simply separate. Many courts have so described them with no finding of an "ownership," or any other affiliation. *See, e.g.*, *Roldan-Fonseca*, 795 F.2d at 1109 ("'Corporate' FDIC and 'Receiver' FDIC are separate and distinct legal entities. . . . Corporate FDIC is not liable for wrongdoings by Receiver FDIC."); *FDIC v. De Jesus Velez*, 678 F.2d 371, 374 (1st Cir. 1982) ("[T]he FDIC must be permitted to operate in a dual capacity simultaneously, as a receiver and an insurer, to carry out its functions as a receiver, liquidator, and insurer."). This Court need not, and should not, create a relationship that does not legally exist.

At any rate, this "parent" theory would not save the D&Os' setoff theory even if it were true, as parents and subsidiaries cannot be substituted for each other, for purposes of setoff, absent an express agreement. *See, e.g.*, *Koken v. Stateco Inc.*, 2007 WL 2141298, *7 (N.D. Cal. July 25, 2007) ("In the absence of an express mutual agreement that the subsidiary would be deemed a mutual debtor-creditor to the parent, the setoff doctrine does

6.    The D&Os' Setoff Theory is Untimely.

Finally, even assuming *arguendo* that the D&Os' new "setoff" theory is not precluded by controlling precedent, it is far too late for the D&Os to discover that they can set off their supposed claims against FDIC-C against their liability to FDIC-R. The D&Os filed their Third-Party Complaint more than 15 months ago, forcing both FDIC-C and the United States to litigate this matter as third-party defendants at a substantial cost. They identify no pertinent change in the law or new discoveries of fact in the interim. Now, with summary judgment motions already filed, they claim that it was not necessary to name the United States as a defendant in the first place—and, by extension, that it was not necessary to name FDIC-C either, as the logic of their new theory is that FDIC-R is fully answerable for all of FDIC-C's acts. The D&Os should not be permitted to subject innocent parties to costly, intrusive discovery and then realize that there was no reason to include them in the case in the first place. At a minimum, FDIC-C and the United States should each be awarded the costs and fees they have incurred in defending this case.

## II.    FDIC-C'S OTHER "DUTIES" ARE IRRELEVANT.

Again ignoring the Court's Order, *see* Docket No. 934, the D&Os assert that FDIC-C owed duties to itself, to the Deposit Insurance Fund, and to FDIC-R. Docket No. 1018 at 22-25. All three theories have no merit. The idea that a plaintiff "owes itself a duty to mitigate" has no bearing on the Third-Party Complaint, as FDIC-C is not the plaintiff; the D&Os are not the DIF and have no standing to speak for the DIF; and FDIC-C, as regulator, owed Westernbank no duties while Westernbank was operating, and hence there are no duties that FDIC-R, Westernbank's receiver, can enforce now.

---

not extend to the debts between a parent company and its subsidiaries.") (citations omitted). Corporate affiliations do not make affiliated companies a unitary body for purposes of setoff claims. *See, e.g., Depositors Trust Co. v. Frati Enters., Inc.*, 590 F.2d 377, 379 (1st Cir. 1979) ("[O]ne subsidiary may not set off a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary.").

III.    **FDIC-C HAS NO DUTIES UNDER PUERTO RICO LAW.**

As the D&Os cannot point to any federal duties that could be enforced via the Third-Party Complaint, it is noteworthy that they ignore Puerto Rico tort law. Despite the Court's specific requests for briefing from both FDIC-C and the D&Os on whether banking regulators have duties to regulated entities under Puerto Rico law, *see* Docket Nos. 934, 938, and despite FDIC-C's brief on the subject, *see* Docket No. 967, the D&Os bypass the issue completely, tacitly acknowledging that Puerto Rico law does not, in fact, impose any such duties. That acknowledgment renders the "no duty" rule irrelevant: even assuming that the D&Os were correct that *O'Melveny* abrogated federal common law for these purposes, the D&Os still could not prevail because FDIC-C had no duties under local law either. *See, e.g.*, *Wojciechowicz v. United States*, 582 F.3d 57, 67 (1st Cir. 2009) (in contribution matter under FTCA, plaintiff required to show elements of tort liability, including breach of duty of care); *Smith v. Williams Hospitality Mgmt. Corp.*, 950 F. Supp. 436, 439 (D.P.R. 1996) ("[W]e do not find that third party defendants violated any duty of care which may have contributed to Holly Phillips' injury, and thus [they] were not negligent"). Summary judgment is therefore warranted.

IV.    **THE "NO DUTY" RULE BARS THE D&OS' CLAIMS.**

Assuming that the Court has occasion to consider the federal "no duty" rule, summary judgment is appropriate because the D&Os cannot show any FDIC-C duty to Westernbank, or to its directors and officers, under federal common law. Despite the Court's express request, *see* Docket No. 934, the D&Os still do not, because they cannot, cite a single case declining to apply the "no duty" rule to pre-receivership conduct. Instead, they offer quibbles about the cases FDIC-

C has cited, none of which is persuasive. Docket No. 1018 at 27 n.37.[16] The Court should follow the unanimous holdings of every case to consider the matter and apply the "no duty" rule.

In particular, the D&Os gamely try to rewrite the Eleventh Circuit's recent decision in *FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013), but that decision clearly supports FDIC-C here. The court in *Skow* noted that the rule "bars tort actions brought by a bank's directors and officers against the FDIC," and stands "for the proposition that a bank's officers and directors cannot assert tort claims against the FDIC because the FDIC owes them no duty." 741 F.3d at 1348. The D&Os attempt to transmute this clear holding into one they would prefer, characterizing *Skow* as recognizing a "rule immunizing the FDIC from direct claims for money damages based on allegedly negligent regulation," Docket No. 1018 at 25, but no part of the "direct claims for money damages based on allegedly negligent regulation" qualification appears in the opinion. "Tort claims" against FDIC-C, the *Skow* court held, are barred by the "no duty" rule, and the D&Os are asserting "tort claims" here.[17]

---

[16] The D&Os argue, for instance, that *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676 (S.D.W.Va. 2007), is "no longer good law" because the Fourth Circuit reversed the trial court, but the reversal addressed an entirely separate issue and never mentioned the "no duty" rule or *O'Melveny & Myers v. FDIC*, 512 U.S.C. 79 (1994). *Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008). The D&Os also cite *FDIC v. Haines*, 3 F. Supp. 2d 155 (D. Conn. 1997), arguing that the court reconsidered earlier "no duty" rule decisions in the case, but the court in *Haines* was not addressing the rule as applied to pre-receivership conduct of federal regulators; it was addressing the post-receivership conduct of FDIC-R. *Id.* at 165 (distinguishing *United States v. Gaubert*, 499 U.S. 315 (1991), in discussion of discretionary function exception, because "the FDIC's role as the regulator is substantially different from its role as the receiver"). And whether the D&Os agree that the discovery requested in *NCUA v. First Union Capital Markets Corp.*, 189 F.R.D. 158 (D. Md. 1999) was irrelevant does not change the Court's holding there, namely that *O'Melveny* has no application to the rule as applied to regulators' pre-receivership acts.

[17] The D&Os also assert, in response to FDIC-C's showing that the "no duty" rule was "long established" prior to FIRREA, that *Skow* somehow demonstrates otherwise. Docket No. 1018 at 30. In fact, the court in *Skow* cited circuit court decisions going back 35 years for the proposition that "a bank's officers and directors cannot assert tort *claims* against the FDIC because the FDIC owes them no duty," 741 F.3d at 1348 (emphasis in original), and went on to explain that the rule "bars tort actions brought by a bank's directors and officers against the FDIC." *Id.* Applying the rule in those situations, the court found, would simply constitute "following precedent." In the *Skow* court's view, therefore, the rule as applied to FDIC-C was long-established, and continuing to apply it following *O'Melveny* did not require "creating" federal common law.

19

The D&Os' arguments regarding *O'Melveny* have devolved into incoherence. First, in response to FDIC-C's showing that *O'Melveny* is not relevant because nothing in FIRREA (or any other statute) addresses claims and defenses pertaining to FDIC-C, the D&Os assert that this case is "governed by FIRREA," Docket No. 1018 at 27. That is true in the sense that FDIC-R brought suit under 12 U.S.C. §§ 1821(d)(2)(A) and 1823(d)(3)(A), both of which were rewritten in 1989 as part of FIRREA. Pub. L. No. 101-73, 103 Stat. 225, 256. But FIRREA has nothing to do with the D&Os' claims against FDIC-C; no FIRREA provision governs the Third-Party Complaint or any defenses that FDIC-C may assert. The D&Os also assert that FDIC-C "is governed by FIRREA," citing section 1819's definition of FDIC-C's powers, Docket No. 1018 at 28, but that definition long predated FIRREA, *see* Act of Sept. 21, 1950, ch. 967, 64 Stat. 881; FIRREA did not materially affect section 1819(a). Pub. L. No. 101-73, 103 Stat. 216. The D&Os appear to be confusing FIRREA with the Federal Deposit Insurance Act of 1933.[18]

Even more puzzlingly, the D&Os acknowledge FIRREA's silence on the "no duty" rule (in contrast to the "extensive framework of rules" cited in *O'Melveny* as to FDIC-R claims, *see* 512 U.S. at 86-87), but argue that this silence *favors* a finding of preemption. Docket No. 1018 at 28 n.39. That is directly contrary to the Supreme Court's consistent holdings, *see, e.g.*, *United States v. Texas*, 507 U.S. 529, 534 (1993) (Congress "abrogate[s] a common-law principle" only when it "speak[s] directly to the question addressed by the common law"), and would, if it were the law, generate all sorts of bizarre outcomes. By this logic, every statute Congress enacts would have to explicitly preserve every conceivable federal common-law principle, lest

---

[18] As for the concerns expressed in *O'Melveny* about the "creation" of federal common law, the D&Os assert that *O'Melveny* involved an "allegedly pre-existing federal common law rule." Docket No. 1018 at 29. In fact, the Ninth Circuit was quite clear that it was creating a rule from scratch. *FDIC v. O'Melveny & Myers*, 969 F.2d 744, 751 (9th Cir. 1992) (stating that "we are not bound by state law, but must instead establish federal law" and referring to analysis as "fashioning a federal rule of decision"). "Creation" of a rule was therefore squarely at issue in *O'Melveny*.

Congress's silence be taken as a failure to retain those principles. Fortunately, no court has ever suggested such a perverse approach to preemption.[19]

The remainder of the D&Os' argument regarding the "no duty" rule rests on their characterization of the Third-Party Complaint as consisting of "affirmative defenses." Docket No. 1018 at 25-29. Affirmative defenses are asserted against the plaintiff and involve the plaintiff's conduct, not a third party's acts. FDIC-C did not file this suit, and FDIC-C has already explained that it is improper to conflate FDIC-C and FDIC-R. Any attempt to recast the Third-Party Complaint as consisting of affirmative defenses would be entirely without merit. At any rate, the D&Os cite no case law for the proposition that the rule does not apply to affirmative defenses, and indeed many courts have applied it in that setting. *See* Docket No. 917 at 29-30.[20]

## CONCLUSION

The D&Os' elaborate theories about regulators conspiring to shut down Westernbank do not belong in this case. This lawsuit is about whether the D&Os were grossly negligent in the performance of their duties to the bank. The Court should not permit the D&Os to distract a jury from that central question, and turn the proceeding into a circus, by instead putting the regulators on trial. Responding to the allegations of the Third-Party Complaint has already cost FDIC-C and the United States considerably in the discovery process; there is no reason to prolong and

---

[19] The D&Os' reliance on *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981), for the "preemption by silence" proposition is misplaced. The Supreme Court explicitly reiterated the "speaks directly" principle in *City of Milwaukee, see* 451 U.S. at 315, and noted in passing that this standard, while demanding, was not as onerous as the "clear and manifest purpose" requirement for preemption of state law.

[20] Courts have often rejected attempts to assert affirmative defenses against FDIC-R when those defenses are based on FDIC-C conduct. *See, e.g., FDIC v. Bernstein*, 944 F.2d 101, 106 (2d Cir. 1991); *Grant Thornton*, 535 F. Supp. 2d at 722 ("Courts have uniformly held that claims or defenses based upon pre-receivership actions of regulators are legally insufficient."); *RTC v. Sands*, 863 F. Supp. 365, 372-73 (N.D. Tex. 1994) (in suit brought by conservator, striking "affirmative defenses that were based upon the pre-conservatorship conduct of . . . regulators"); *FDIC v. Ornstein,* 73 F. Supp. 2d 277, 281 (E.D.N.Y. 1999) (striking affirmative defense based on pre-receivership conduct).

multiply this needless drain on resources by allowing this wild goose chase to consume months of the Court's and the parties' time.

There are sound policy reasons as well for rejecting the D&Os' theories. As courts have often explained in formulating and applying the "no duty" rule, banking regulators, including FDIC-C, are charged with protecting the Deposit Insurance Fund. That obligation often means that banks in poor condition must be closed, lest further poor performance increase the ultimate loss to the Fund. Imposing a "duty" to save a failing bank—making FDIC-C serve two masters—would render banking regulators' jobs impossible. For that reason, and because directors and officers of failed banks are not permitted to shift their responsibilities to regulators, courts have consistently recognized that FDIC-C and other banking agencies owe no duties to banks and their management.

The "no duty" rule is consistent with the general recognition that government regulators are not subject to tort liability for their discretionary decisionmaking. Both federal and Puerto Rico law recognize that subjecting government agencies to liability for policy decisions would materially handicap agency action by turning every decision into an assessment of who is likely to sue. This immunity is likewise rooted in the Constitution's separation of powers: when issues are entrusted by the legislature to the executive branch, courts are not permitted to second-guess executive agencies' decisionmaking. And there are equally sound reasons not to open up the closure of Westernbank to an extrastatutory challenge procedure more than four years later.

It is time for this prolonged, expensive process to end. The Court should grant summary judgment to FDIC-C on the D&Os' claims for contribution and apportionment, and dismiss the Third-Party Complaint with prejudice, together with such other and further relief as the Court may find appropriate, including awarding FDIC-C its fees and costs.

22

RESPECTFULLY SUBMITTED. In San Juan, Puerto Rico this 2nd day of May, 2014.

FEDERAL DEPOSIT INSURANCE
CORPORATION
Barbara Katron
Acting Senior Counsel

s/Duncan N. Stevens
Duncan N. Stevens
Counsel
Government Attorney # G01809
Herbert G. Smith II
Counsel
Government Attorney # G01807
Larry L. Goodman
Counsel
Government Attorney # G01607
Tel.: (703) 562-2402
Fax: (703) 562-2477
Email: dstevens@fdic.gov
3501 Fairfax Drive, D-7028
Arlington, VA 22226-3500

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 2, 2014, I electronically filed the foregoing

Memorandum in Support of Motion for Summary judgment with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to all counsel and parties of record.

s/Duncan N. Stevens
Duncan N. Stevens